**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
                                                         :
JITENDRA VEKARIA,                                        :        Case No. 1:22-cv-03197-JPC
                                                         :
                    Plaintiff,                           :
                                                         :
        -against-                                        :
                                                         :
MTHREE CORPORATE CONSULTING, LTD.,                       :
JOHN WILEY & SONS, INC., ECI PARTNERS                    :
LLC, ALEX HEADLEY, BENJAMIN TOWN,                        :
THOMAS SEYMOUR, and RICHARD                              :
CHAPMAN,                                                 :
                                                         :
                    Defendants.                          :
------------------------------------------------------------------X

### DEFENDANTS JOHN WILEY & SONS, INC. AND MTHREE CORPORATE CONSULTING, LTD.'S MEMORANDUM IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS

Kevin H. Kim
John Wiley & Sons, Inc.
111 River Street
Hoboken, New Jersey 07030
Phone:  (201) 748-5809
Fax:  (201) 748-6500
kkim2@wiley.com

*Attorney for Defendants John Wiley & Sons, Inc.*
*and Mthree Corporate Consulting, Ltd.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ..................................................................................................................... 4

   I.    STANDARD OF REVIEW ................................................................................. 4

   II.    COUNTS THREE AND FOUR – THE MTHREE EQUITY WAS NOT "WAGES" UNDER THE NEW YORK LABOR LAW .......................................................... 4

   III.    COUNT SEVEN – THE EXCHANGE ACT CLAIM IS NOT TIMELY AND FAILS TO STATE A CAUSE OF ACTION ................................................................. 5

      A.   Mr. Vekaria's Securities Claim Is Not Timely ......................................... 6

      B.   Mr. Vekaria Did Not "Purchase Securities" from Mthree ........................ 7

   IV.    COUNT EIGHT – MR. VEKARIA HAS NOT ADEQUATELY PLED WILEY'S INTERFERENCE WITH THE OFFER LETTER ................................................ 8

   V.   COUNT NINE – MR. VEKARIA'S CONVERSION CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM ........................................................ 10

CONCLUSION ............................................................................................................... 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*AD Rendon Communications, Inc. v. Lumina Americas, Inc.*,
   No. 04-CV-8832 (KMK), 2007 WL 2962591 (S.D.N.Y. Oct. 10, 2007) ................................. 11

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 4

*DeLeonardis v. Credit Agricole Indosuez*,
   No. 00 CIV. 0138(HB), 2000 WL 1718543 (S.D.N.Y. Nov. 15, 2000) ................................... 5

*Dubin v. E.F. Hutton Group Inc.*,
   695 F. Supp. 138 (S.D.N.Y. 1988) ........................................................................................ 8

*Lankau v. Luxoft Holdings, Inc.*,
   266 F. Supp. 3d 666 (S.D.N.Y. 2017) ............................................................................... 8, 10

*Matter of Lerner v. Credit Suisse Securities (USA) LLC*,
   193 A.D.3d 649 (1st Dep't 2021), *leave to appeal denied*, 38 N.Y.3d 902 (2022) .................. 5

*Merck & Co. v. Reynolds*,
   559 U.S. 633 (2010) ................................................................................................................ 6

*Northern Shipping Funds I, L.L.C. v. Icon Capital Corp.*,
   No. 12 Civ. 3584(JCF), 2013 WL 1500333 (S.D.N.Y. Apr. 12, 2013) ............................... 9, 10

*Prospect Funding Holdings, LLC v. Vinson*,
   256 F. Supp. 3d 318 (S.D.N.Y. 2017) .................................................................................... 9

*Spanierman Gallery, PSP v. Love*,
   No. 03 CIV.3188 VM, 2003 WL 22480055 (S.D.N.Y. Oct. 31, 2003) .................................. 11

*State Street Global Advisors Trust Co. v. Visbal*,
   431 F. Supp. 3d 322 (S.D.N.Y. 2020) .................................................................................... 9

*Truelove v. Northeast Capital & Advisory Inc.*,
   268 A.D.2d 648 (3d Dep't 2000), *aff'd*, 95 N.Y.2d 220 (2000) ................................................ 5

*Wallace v. BMO Nesbitt Burns Corp.*,
   No. 01 CIV 7998(JGK), 2002 WL 32063120 (S.D.N.Y. Nov. 25, 2002) ................................ 5

*Wechsler v. Hunt Health Systems, Ltd.*,
   330 F. Supp. 2d 383 (S.D.N.Y. 2004) .................................................................................. 11

**Statutes**

N.Y. Labor Law § 190(1) .............................................................................................................. 4

## PRELIMINARY STATEMENT

Defendant Mthree Corporate Consulting, Ltd. ("Mthree") hired Plaintiff Jitendra Vekaria to become its head of North American Sales in January 2019.  Just under a year later, Mthree was acquired by John Wiley & Sons Limited, a subsidiary of Defendant John Wiley & Sons, Inc. ("Wiley").  After resigning from Mthree in April 2020, Mr. Vekaria claimed that he was entitled to a percentage of the sale of Mthree to Wiley because a clause in his offer letter dated January 7, 2019 (the "Offer Letter") granted him equity in the company.  Mr. Vekaria had not previously demanded or otherwise received grant awards or share certificates from Mthree during the term of his employment, either before or after the acquisition by Wiley.

Mr. Vekaria now alleges (among other claims) that Mthree and Wiley's purported failure to issue equity or share certificates in Mthree constituted unlawful withholding or deduction from "wages" under New York Labor Laws (the "Labor Law Claims").  He further claims that Mthree and Wiley violated the Securities Exchange Act of 1934 and Rule 10b-5 by making untrue statements of material fact when it offered him equity in Mthree (the "Securities Claims").

Mr. Vekaria's Labor Law Claims and Securities Claim must be dismissed.  He effectively claims that the commitment to provide Mr. Vekaria with equity was a signing bonus, without which he would not have become an Mthree employee.  The purported equity grant does not constitute compensation for labor or services, and as such it is not considered a "wage" under New York Labor Law.  Likewise, a grant of equity upon joining a new company is not a "purchase or sale" of a security under the Securities Exchange Act of 1934.  Moreover, the Securities Claim must be dismissed because the statute of limitations lapsed in January 2022.

1

Mr. Vekaria's claim that Wiley interfered with his contractual right to equity in Mthree under the Offer Letter must also be dismissed.  Mr. Vekaria has not sufficiently pled how or why Wiley would have intentionally procured Mthree's alleged failure to provide his equity.  Indeed, Wiley could not have interfered with any effort to provide equity to Mr. Vekaria upon joining Mthree.  Wiley did not acquire Mthree until nearly a year after Mr. Vekaria began his employment with the company.  The price Wiley paid to acquire Mthree would have been the same, regardless of whether a certain percentage were allocated to Mr. Vekaria.

Finally, Mr. Vekaria's claim for conversion of his equity in Mthree must be dismissed – the underlying basis for this claim is the Offer Letter, and as such it duplicates his breach of contract claim against Mthree.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Mthree and Wiley respectfully submit this memorandum setting forth the reasons the Court should dismiss (1) Counts Three and Four of the Complaint, the Labor Law Claims; (2) Count Seven of the Complaint, the Securities Claims; (3) Count Eight of the Complaint, Mr. Vekaria's claim for interference with a contractual right; and (4) Count Nine of the Complaint, Mr. Vekaria's conversion claim.

## STATEMENT OF FACTS

Plaintiff alleges in his Complaint filed April 19, 2022 (Dkt. No. 1) that, on or about January 2019, Mthree offered Mr. Vekaria a certain percentage of equity upon beginning his employment (the "Initial Equity") with Mthree as their Head of North American Sales, and an additional award of equity to be granted upon certain conditions being met in the future (the "Additional Equity," together with the Initial Equity, the "Mthree Equity").[1]  Compl. ¶ 2.  Mr.

---

[1] Mr. Vekaria claims that the Offer Letter granted him 1% equity immediately upon joining Mthree, and either (1) an additional 2% equity if Mthree was acquired by another company; or (2) additional awards of 1% equity upon the first and second anniversaries of his employment at Mthree.  Compl. ¶¶ 24-25.  Neither Wiley nor Mthree has been

Vekaria further alleges that he would not have left his previous employment had he not been promised the Mthree Equity. *Id.* ("The Mthree [Equity] was a fundamental and material inducement to Mr. Vekaria's agreement to join Mthree . . . .")  Plaintiff does not allege that he demanded or otherwise complained about Mthree's failure to issue stock certificates to him during his time as an Mthree employee.

On December 31, 2019, John Wiley & Sons, Limited (a wholly-owned subsidiary of Defendant Wiley) entered into an agreement (the "Acquisition Agreement") to acquire 100% of the shares of Mthree from Defendants ECI Partners, Alex Headley, Benjamin Town, and nonparty Andrew Vaughan (collectively, the "Mthree Sellers") (excepting Mr. Vaughan, the "Defendant Mthree Sellers").[2]  *Id.* ¶ 3.  The Mthree Sellers warranted in the Acquisition Agreement that they were the sole beneficial owners of the shares and that they sold them free of any security interests or the need for consent of any third parties.  Moreover, Defendants Headley and Town each warranted that Mthree "did not have and is not proposing to introduce any share incentive scheme, share option scheme or profit-sharing bonus for any director, officer, Employee or Consultant."  Mr. Vekaria resigned from Mthree in April 2020, just a few months after Wiley completed the acquisition of Mthree.  *Id.* ¶ 41.  Mr. Vekaria did not ask about or otherwise demand that he receive the cash equivalent of his Mthree Equity, either before or after the sale of Mthree to Wiley.  But despite knowing about Wiley's purchase of Mthree at the time

---

able to locate a draft or execution version of the Offer Letter dated January 7, 2019 that contains these specific terms.  The Offer Letter dated January 7, 2019 that Mthree and Wiley have in their files contemplates that an additional award of equity will be issued to Mr. Vekaria at Mthree's discretion.  Mr. Vekaria declined Wiley and Mthree's request to provide a copy of the executed Offer Letter containing the specific terms reflected in the Complaint.  For purposes of this Partial Motion to Dismiss, Mthree and Wiley will assume Mr. Vekaria will eventually be able to produce an executed version of the Offer Letter with the terms he claims are contained therein.

[2] Mr. Vekaria alleged in his Complaint that Defendants Thomas Seymour and Richard Chapman were also sellers; this is untrue.

it was announced, Mr. Vekaria suggests he did not realize that he did not receive the cash value

of his Mthree Equity from the Acquisition until 2021.  *Id.* ¶ 91.

## ARGUMENT

### I.     STANDARD OF REVIEW

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must state a

claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007).

The factual allegations in the complaint must be sufficient to raise a right to relief above the

speculative level; it cannot otherwise rely on a formulaic recitation of the elements of a cause of

action.  *Id.* at 555.

### II.    COUNTS THREE AND FOUR – THE MTHREE EQUITY WAS NOT "WAGES" UNDER THE NEW YORK LABOR LAW

Mr. Vekaria claims that Mthree violated the New York Labor Law's prohibition of the

nonpayment of "wages" under Articles Six and Nineteen by failing to issue his Mthree Equity

under the terms of the Offer Letter.  He also claims in Count Four that this alleged failure was a

violation of § 193 of the New York Labor Law, which prohibits the "unlawful deduction" of

"wages."  Mr. Vekaria claims that these violations of the New York Labor Law entitle him to

recover his unpaid "wages," attorney's fees and costs, liquidated damages, and pre-judgment and

post-judgment interest.

Under the New York Labor Law, the Mthree Equity at the center of Mr. Vekaria's Labor

Law claims does not constitute a "wage" and as such these claims must be dismissed.  The New

York Labor Law defines "wages" as "***the earnings of an employee for labor or services***

***rendered***, regardless of whether the amount of earnings is determined on a time, piece,

commission or other basis."  N.Y. Labor Law § 190(1) (emphasis added).  New York courts have

held that equity-based compensation does not constitute "wages" within the statutory definition,

4

as its ultimate value is dependent on the future market value of the company stock. *Matter of Lerner v. Credit Suisse Sec. (USA) LLC*, 193 A.D.3d 649, 650 (1st Dep't 2021), *leave to appeal denied*, 38 N.Y.3d 902 (2022). As such, the Mthree Equity does not meet the definition of "wages" and his New York Labor Law claims necessarily fail.

Even if the Mthree Equity was awarded as a cash bonus, i.e., the cash equivalent of the Mthree Equity, Mr. Vekaria's Labor Law claims would still fail. Mr. Vekaria alleges that he was entitled to receive the Initial Equity when he began his employment, and that he was entitled to the Additional Equity upon the acquisition of Mthree by Wiley. As such, neither part of the Mthree Equity served as compensation for labor or services rendered by Mr. Vekaria, *i.e.*, his wages. His compensation for his "labor or services rendered" was instead the annual salary he received. New York courts have held that the receipt of a fixed wage generally negates any inference that a separate incentive payment or purely discretionary bonus constitutes wages. *DeLeonardis v. Credit Agricole Indosuez*, No. 00 CIV. 0138(HB), 2000 WL 1718543, at *10-11 (S.D.N.Y. Nov. 15, 2000); *Truelove v. Ne. Capital & Advisory Inc.*, 268 A.D.2d 648, 649-50 (3d Dep't 2000), *aff'd*, 95 N.Y.2d 220 (2000). Indeed, Mr. Vekaria alleges in the complaint that the Mthree Equity was effectively given to him as a sign-on bonus – specifically, he stated that he would not have left his previous employment had this not been included in the Offer Letter. Under the New York Labor Law, sign-on bonuses are not considered "wages." *Wallace v. BMO Nesbitt Burns Corp.*, No. 01 CIV 7998(JGK), 2002 WL 32063120, at *6 (S.D.N.Y. Nov. 25, 2002). As such, Mr. Vekaria's claims under the New York Labor Law must be dismissed.

## III.   COUNT SEVEN – THE EXCHANGE ACT CLAIM IS NOT TIMELY AND FAILS TO STATE A CAUSE OF ACTION

Mr. Vekaria claims that Mthree violated § 10 and Rule 10b-5 of the Securities Exchange Act of 1934 (the "Exchange Act") by making untrue statements of material facts or omitting to

state material facts to induce him to "purchase" the Mthree Equity by leaving his previous employer and joining Mthree.

### A. Mr. Vekaria's Securities Claim Is Not Timely

Mr. Vekaria did not file his complaint until April 19, 2022. Claims under the Exchange Act have a statute of limitations of two years after the discovery of the alleged misrepresentation, and no later than five years after the alleged misrepresentation occurred. *Merck & Co. v. Reynolds,* 559 U.S. 633, 638 (2010). The statute of limitations begins to run when the plaintiff discovers, or with reasonable diligence, could have discovered the facts constituting the fraud. *Id.* at 644-48.

A reasonably diligent plaintiff would have discovered the facts constituting the alleged violation of the Exchange Act by no later than January 2020. Mr. Vekaria claims that he was entitled to but did not receive the Initial Equity when he began his employment with Mthree in January 2019. Compl. ¶ 24. And he of course knew that Mthree had been acquired by Wiley approximately a year later, having received a transaction bonus shortly after the sale was announced. *Id.* ¶ 39. Indeed, he acknowledged that Wiley publicly announced the Acquisition in a press release, noting the purchase price of approximately $129 million in exchange for 100% of the equity in Mthree. *Id.* ¶¶ 34-35.

Incredibly, Mr. Vekaria claims that he "did not discover these misrepresentations and omissions ***until 2021***." *Id.* ¶ 91 (emphasis added). Mr. Vekaria presumably recognized after the announcement of the Acquisition that he did not receive the cash equivalent of the Mthree Equity that he now claims he was entitled to receive. "Reasonable diligence" in this case required nothing more than looking at his bank account to see that he did not have the $3.8 million he

claims he was entitled to receive or asking the Mthree Sellers when he could expect to receive his share of the sale.

Mr. Vekaria could have discovered the alleged misrepresentation with respect to the Initial Equity in 2019. He claims that under the Offer Letter, he was entitled to receive the Initial Equity upon becoming an Mthree employee. *Id.* ¶ 24. But by his own admission, Mr. Vekaria did not first inquire about either the Initial Equity or the Additional Equity until after he resigned from the company in April 2020. *Id.* ¶ 42.

As such, there is no excuse for Mr. Vekaria's failure to timely file the Securities Claim against Mthree and it must therefore be dismissed with prejudice.

### B. Mr. Vekaria Did Not "Purchase Securities" from Mthree

Mr. Vekaria contends that he "purchased" securities in Mthree by agreeing to leave his previous employer in order to join Mthree. *Id.* ¶ 90. But Mr. Vekaria does not contend that Mthree misrepresented or omitted material facts about the Mthree Equity itself. Instead, he alleges that Mthree and its employees misrepresented *his entitlement* to the Mthree Equity. *Id.* ¶ 89 ("[T]he representations made by Mr. Headley in email correspondence that Mr. Vekaria would be entitled to receive the Mthree Stock if Mr. Vekaria joined Mthree as an employee, and the very terms of the Employment Agreement confirming such understandings, in which each of the Defendants materially participated, and Mr. Seymour executed on behalf of Mthree."[3]

---

[3] Mr. Vekaria contends in his breach of contract claim against Mthree that he is entitled to the Mthree Equity. By contrast, he claims that Mthree, the Defendant Mthree Sellers, and Defendants Seymour and Chapman made "untrue statements" or "omit[ted] material facts" in telling Mr. Vekaria that he ***would be entitled*** to receive the Mthree Stock if [he] joined Mthree as an employee . . . ." *Id.* If Mr. Vekaria is actually entitled to the Mthree Equity, as he suggests in his breach of contract claim, then it cannot be the case that Mthree made a misrepresentation about this fact as well. Mr. Vekaria failed to plead the Securities Claim in the alternative to the breach of contract claim. To the extent the Securities Claim survives dismissal, Mr. Vekaria should be required to amend his complaint to plead it in the alternative to his breach of contract claim.

The Exchange Act does not create a cause of action where the alleged misrepresentation is made with respect to the defendant's willingness to comply with an agreement to transfer a security. In *Lankau v. Luxoft Holdings, Inc.*, the court dismissed a claim brought under the Exchange Act against a former employer, who the plaintiff alleged had promised to grant him equity as consideration for his agreement to join the company. 266 F. Supp. 3d 666, 678-79 (S.D.N.Y. 2017). The court held that the plaintiff did not state a cause of action under the Exchange Act because the plaintiff was not a "purchaser" of a security, and the allegedly fraudulent statements were not in connection with the sale of a security; instead, the plaintiff only alleged that the employer failed to provide shares in accordance with his employment agreement. *Id.* at 679.

Likewise, the Court must dismiss Mr. Vekaria's Securities Claim – Mr. Vekaria alleges that Mthree misrepresented its intention to grant him equity in the company, meaning he never actually owned or held the equity. Put differently, Mr. Vekaria does not allege that Mthree misrepresented anything about the "security" at issue, e.g., its value. Instead, he only alleges that Mthree misrepresented its intention to comply with the Offer Letter. Such a claim is not actionable under the Exchange Act. *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 145 (S.D.N.Y. 1988) (discussing the distinction between misrepresentations with respect to the value of a security, and misrepresentations with respect to a party's intention to comply with a particular agreement) (citing *Niederhoffer, Cross & Zeckhauser, Inc. v. Telstat Sys., Inc.*, 436 F. Supp. 180 (S.D.N.Y. 1977)).

## IV.   COUNT EIGHT – MR. VEKARIA HAS NOT ADEQUATELY PLED WILEY'S INTERFERENCE WITH THE OFFER LETTER

Mr. Vekaria claims that Wiley "improperly interfered with Mr. Vekaria's contractual agreement with Mthree" by intentionally "procur[ing] the breach of [the Employment

Agreement], including, but not limited to, denying his equity in Mthree or offer[ing] any compensation whatsoever in connection with his equity." Compl. ¶¶ 96, 100.  In order to state a claim for tortious interference with contract, Mr. Vekaria must establish (1) the existence of a valid contract between the plaintiff and a third party (here, Mthree); (2) Wiley's knowledge of the contract; (3) Wiley's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *State St. Global Advisors Trust Co. v. Visbal*, 431 F. Supp. 3d 322, 348 (S.D.N.Y. 2020) (quoting *Rich v. Fox News Network, LLC*, 939 F.3d 112, 126-27 (2d Cir. 2019)).

With respect to the "intentional procurement" of the breach, courts have held that "it is not enough that a defendant engaged in conduct with a third-party that happened to constitute a breach of the third party's contract with the plaintiff; instead a plaintiff must allege facts showing that the defendant's objective was to procure such a breach." *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 327-28 (S.D.N.Y. 2017) (internal quotation marks omitted). Moreover, "interference that is merely an intrusion that is negligent or incident to some other lawful purpose is not enough." *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, No. 12 Civ. 3584(JCF), 2013 WL 1500333, at *4 (S.D.N.Y. Apr. 12, 2013) (internal quotation marks omitted).

Mr. Vekaria has offered only a conclusory statement that Wiley intentionally procured Mthree's alleged breach of the Offer Letter.  The closest he gets to pleading an intention to procure a breach of the Offer Letter is by suggesting that Wiley somehow benefited from the alleged breach in the Acquisition.  But Mr. Vekaria claims that he owned 3% of the equity in Mthree that Wiley purchased and that he was therefore entitled to that percentage of the total price Wiley paid.  As such, Mr. Vekaria effectively concedes that Wiley would have paid the

9

same total price regardless of whether the $3.8 million he claims he is now entitled to went to him instead of the other Mthree Sellers.  There was thus no benefit to Wiley from the alleged breach – it paid $129 million to acquire 100% of the equity in Mthree, and it would have paid that same price regardless of whether Mr. Vekaria had been granted the Mthree Equity.  Furthermore, this acquisition was a "lawful purpose" to which the alleged "interference" was at most incidental and is therefore not actionable.  *Id.*

In order to plead a claim for tortious interference, a plaintiff must also show "that the third party would not have breached the contract ***but for*** the activities of the defendant and that the defendant used wrongful means to induce the third party to breach the contract."  *Lankau*, 266 F. Supp. 3d at 683 (emphasis added) (internal quotation marks omitted).  Again, Mr. Vekaria has only offered conclusory allegations that Wiley, the Defendant Mthree Sellers, and Defendants Seymour and Chapman "intentionally" procured the alleged breach of the Offer Letter.  Compl. ¶ 100.  He has not specifically pled that Mthree would have committed this alleged breach ***but for*** Wiley's activities alone.  Nor can he, with respect to the Initial Equity.  Mr. Vekaria contends that he was entitled to at least the Initial Equity when he joined the company in January 2019.  *Id.* ¶ 24.  This was nearly a year prior to Wiley's acquisition of Mthree.  Wiley did not have any involvement with his hiring or Mthree generally at that time.  As such, Wiley was not in a position to have procured the alleged breach.

## V.    COUNT NINE – MR. VEKARIA'S CONVERSION CLAIM IS DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM

Mr. Vekaria brings a claim for conversion against all defendants alleging that they acted "to deprive Mr. Vekaria of his equity interest or any payment in connection with the Putative Wiley Acquisition on account of his equity interest," thereby depriving him of "the full benefits of his ownership interest."  *Id.* ¶ 106.  But New York law is clear that "[a] conversion claim . . .

10

that merely duplicates a breach of contract claim is not actionable." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 431 (S.D.N.Y. 2004) (citing *Richbell Info. Servs. v. Jupiter Partners*, 309 A.D.2d 288, 306 (1st Dep't 2003); *see also AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, No. 04-CV-8832 (KMK), 2007 WL 2962591, at *8 (S.D.N.Y. Oct. 10, 2007); *Spanierman Gallery, PSP v. Love*, No. 03 CIV.3188 VM, 2003 WL 22480055, at *3 (S.D.N.Y. Oct. 31, 2003). Here, Mr. Vekaria's claim to the Mthree Equity, which he alleges has been unlawfully converted by all of the defendants, is based on the Offer Letter. As such, his conversion claim is duplicative of his claim that Mthree breached the Offer Letter by failing to award him or otherwise compensate him for the Mthree Equity, and it must therefore be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Wiley and Mthree request that the Court dismiss Counts Three, Four, Seven, Eight, and Nine of Mr. Vekaria's Complaint.

Dated: Hoboken, New Jersey
         July 22, 2022

                                        Respectfully submitted,

                                  By:   /s/ Kevin H. Kim
                                        Kevin H. Kim
                                        John Wiley & Sons, Inc.
                                        111 River Street
                                        Hoboken, New Jersey 07030
                                        Phone:  (201) 748-5809
                                        Fax:  (201) 748-6500
                                        kkim2@wiley.com

                                        *Attorney for Defendants John Wiley & Sons, Inc.
                                        and Mthree Corporate Consulting, Ltd.*