**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
:
JITENDRA VEKARIA, : Case No. 1:22-cv-03197-JPC
:
               Plaintiff, :
:
  -against- :
:
MTHREE CORPORATE CONSULTING, LTD., :
JOHN WILEY & SONS, INC., ECI PARTNERS :
LLC, ALEX HEADLEY, BENJAMIN TOWN, :
THOMAS SEYMOUR, and RICHARD :
CHAPMAN, :
:
              Defendants. :
-----------------------------------------------------------------X

**DEFENDANTS JOHN WILEY & SONS, INC. AND MTHREE CORPORATE CONSULTING, LTD.'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

Kevin H. Kim
John Wiley & Sons, Inc.
111 River Street
Hoboken, New Jersey 07030
Phone:  (201) 748-5809
Fax:  (201) 748-6500
kkim2@wiley.com

*Attorney for Defendants John Wiley & Sons, Inc. and Mthree Corporate Consulting, Ltd.*

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................................................... ii
**PRELIMINARY STATEMENT** ............................................................................................ 1
**ARGUMENT** ............................................................................................................................ 1
   **I.   WILEY'S LEGAL ARGUMENTS DO NOT RELY ON ANY STATEMENTS OR FACTS OUTSIDE OF THE COMPLAINT** ........................................................... 1
   **II.   VEKARIA'S LABOR LAW CLAIMS FAIL BECAUSE THE EQUITY WAS NOT GIVEN IN EXCHANGE FOR LABOR AND SERVICES** ....................................... 2
   **III.   VEKARIA'S SECURITIES LAW CLAIMS FAIL BECAUSE HE DID NOT USE REASONABLE DILIGENCE AND THE EQUITY OFFER WAS NOT CONSUMMATED INTO A PURCHASE OR SALE** ........................................................... 3
      A.   Vekaria's Claim Is Time-Barred .......................................................................... 3
      B.   There Was No Purchase or Sale of a Security ................................................... 6
   **IV.   VEKARIA'S TORTIOUS INTERFERENCE CLAIM FAILS BECAUSE HE FAILED TO PLEAD INTENT OR ACTUAL MALICE** ........................................................ 8
   **V.   VEKARIA'S CONVERSION CLAIM FAILS BECAUSE THE ALLEGED ACTIONS ALL RELATE TO CONTRACTUAL PERFORMANCE BY MTHREE** ....... 9
**CONCLUSION** ....................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**

*Bracken v. MH Pillars Inc.*,
   290 F. Supp. 3d 258 (S.D.N.Y. 2017) ............................................................................... 10

*DeLeonardis v. Credit Agricole Indosuez*,
   No. 00 CIV. 0138(HB), 2000 WL 1718543 (S.D.N.Y. Nov. 15, 2000) ................................ 3

*Dubin v. E.F. Hutton Group, Inc.*,
   695 F. Supp. 138 (S.D.N.Y. 1988) ...................................................................................... 7

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
   837 F. Supp. 2d 162 (S.D.N.Y. 2011) ............................................................................... 10

*Fuqua v. Ernst & Young LLP*,
   33 Fed Appx. 569 (2d Cir. 2002) ........................................................................................ 4

*Hallet v. Stuart Dean Co.*,
   481 F. Supp. 3d 294 (S.D.N.Y. 2020) ................................................................................. 3

*Kosovich v. Metro Homes, LLC*,
   No. 09 Civ. 6992 (JSR), 2009 WL 5171737 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 405 Fed. Appx.
   540 (2d Cir. 2010) ............................................................................................................... 6

*LC Capital Partners, LP v. Frontier Insurance Group Inc.*,
   318 F.3d 148 (2d Cir. 2003) ...................................................................................... 4, 5, 6

*Lankau v. Luxoft Holding, Inc.*,
   266 F. Supp. 3d 666 (S.D.N.Y. 2017) ............................................................................. 6, 7

*Masefield AG v. Colonial Oil Industries*,
   No. 05 Civ. 2231 (PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006) ............................ 8, 9

*Moon Joo Yu v. Premiere Power LLC*,
   14 Civ. 7588 (KPF), 2018 WL 456244 (S.D.N.Y. Jan. 17, 2018) ....................................... 5

*Wallace v. BMO Nesbitt Burns Corp.*,
   No. 01 CIV 7998 (JGK), 2002 WL 32063120 (S.D.N.Y. Nov. 25, 2002) ........................... 2

*WMW Machinery Co., Inc. v. Koerber AG*,
   240 A.D.2d 400 (2d Dep't 1997) ........................................................................................ 8

**Statutes**

N.Y. Labor Law § 190(1) .......................................................................................................... 2

**PRELIMINARY STATEMENT**

Plaintiff Jitendra Vekaria's memorandum of law in opposition (the "Opposition," Dkt. No. 36) to the motion to dismiss and memorandum in support (the "Motion," Dkt. Nos. 30 and 31) filed by Defendants Mthree Corporate Consulting, Ltd ("Mthree") and John Wiley & Sons, Inc. ("Wiley") (collectively, "Defendants") does not refute the Defendants' argument that he has failed to plead claims for which relief may be granted under New York Labor Law (Counts Three and Four, the "Labor Law Claims") and the Exchange Act (Count Seven, the "Securities Claim"), or for tortious interference with contract (Count Eight) or conversion (Count Nine).

**ARGUMENT**

**I.   WILEY'S LEGAL ARGUMENTS DO NOT RELY ON ANY STATEMENTS OR FACTS OUTSIDE OF THE COMPLAINT**

Vekaria first claims that the Motion is "fundamentally flawed" because it raises facts not found in the complaint. Opp'n at 9-10. Vekaria points to four quotes from the "Preliminary Statement" and "Statement of Facts" in Defendants' brief and suggests that their inclusion "severely prejudice[s]" his opposition to the motion. Opp'n at 11. But Defendants do not ask the Court to "consider" or rely on the substance of these quotes in its review of their arguments for dismissal. The facts underlying their legal arguments were limited to those found in the Complaint.[1] Vekaria cannot and does not point to any instance in the Motion when Wiley actually relies on the substance of the cited quotes in any legal argument. Instead, he speculates when Wiley might be doing so. *See, e.g.*, Opp'n at 13, 18. In every such instance, he is wrong.

---

[1] For example, in footnote 1 of the brief, Defendants simply note that it will operate under the assumption that Mr. Vekaria will be able to produce a version of the Offer Letter that they have not otherwise seen before. At no point do Defendants suggest that the Court should rely on or enforce terms other than those described in the Complaint. Defendants refer to the award of equity conditioned on the acquisition as the "Additional Equity" throughout its legal arguments. Defendants' Br. at 5, 7. The "Mthree Equity" is likewise defined as including the "Additional Equity." These are the terms of the Offer Letter Vekaria describes in the Complaint.

1

Vekaria does not offer legal support for the bold proposition that the mere inclusion in a brief of facts not otherwise referenced in the Complaint necessarily requires the Court to deny the Motion. No such case law exists, because this is a motion to dismiss and not a jury trial. The Court is more than capable of determining what documents or information the movants are asking it to consider.

## II.  VEKARIA'S LABOR LAW CLAIMS FAIL BECAUSE THE EQUITY WAS NOT GIVEN IN EXCHANGE FOR LABOR AND SERVICES

Vekaria's Labor Law claims fail because the awards of both the initial equity he claims he was entitled to upon joining Mthree (the "Initial Equity") and the equity he claims he was entitled to upon an acquisition of Mthree (the "Additional Equity," together with the Initial Equity, the "Mthree Equity") were not tied to the "labor or services rendered" under N.Y. Labor Law § 190(1). Despite his attempts now to suggest otherwise, Vekaria described the Mthree Equity as a sign-on bonus offered in exchange for his agreement to become an Mthree employee. ("The Mthree [Equity] was a fundamental and material inducement to Vekaria's agreement to join Mthree"; "Vekaria informed Mthree . . . [he] would not leave his employment with J.P. Morgan and join Mthree unless he received a meaningful equity position in Mthree.") Compl. ¶¶ 2, 28. Vekaria claims that the Additional Equity was due to him after an acquisition of Mthree. At most, he offers only a conclusory assertion that these bonuses constituted "wages." New York Labor Law is clear that where a bonus is not based on work performed, it is not a protected "wage." *Wallace v. BMO Nesbitt Burns Corp.*, No. 01 CIV 7998 (JGK), 2002 WL 32063120, at *5 (S.D.N.Y. Nov. 25, 2002).[2]

---

[2] Vekaria attempts to mischaracterize Mthree's argument as suggesting that the Mthree Equity award was "discretionary." Mthree did not argue this. Rather Mthree described the Mthree Equity Award as an incentive sign-on bonus that was unrelated to his labor or services. Vekaria points to footnote 1 of Mthree's brief, wherein Mthree mentions that the version of the Offer Letter it has in its records describes the award as discretionary before then

2

Vekaria's reliance on *Hallet v. Stuart Dean Co.* is unavailing, as that case dealt with an equity award that was actually tied to labor or services. 481 F. Supp. 3d 294, 310 (S.D.N.Y. 2020). In *Hallet*, the plaintiff argued his equity bonus was a wage. Unlike here, it was actually connected to the plaintiff CEO's job performance. Specifically, 25% of the bonus was tied to "Board Specified objectives" that related to the CEO's labor or services, the company's performance, or a combination of the two. The remaining 75% of the bonus was tied to the company's overall performance, but the court held that as CEO of the company it could be said to reflect on the plaintiff's performance as CEO. *Id*. By contrast, Vekaria contends that his entitlement to the Initial Equity was triggered by his mere acceptance of the Offer Letter, before he did any work for Mthree. He claims that his entitlement to the Additional Equity was triggered by an acquisition of Mthree.

### III. VEKARIA'S SECURITIES LAW CLAIMS FAIL BECAUSE HE DID NOT USE REASONABLE DILIGENCE AND THE EQUITY OFFER WAS NOT CONSUMMATED INTO A PURCHASE OR SALE

#### A. Vekaria's Claim Is Time-Barred

Vekaria erroneously contends that the statute of limitations for the Securities Claims only commences at "the end of a reasonable investigation into fraudulent activity." Opp'n at 13. Vekaria suggests that a victim of securities fraud can ignore all signs of fraud so long as they eventually begin an investigation, and that only at the end of that investigation does the statute of limitations begin to run. *Id.* In doing so, Vekaria asks the court to ignore the well-established rule of inquiry notice, which provides that the date of discovery for purposes of statute of limitations is the date that the plaintiff, having been put on inquiry notice, in the exercise of

---

making clear that it will operate on the assumption that Vekaria can produce a document with the terms he describes in the Complaint. Vekaria's misunderstanding could also stem from Mthree's citation to a case stating that the presence of a fixed wage negates an inference that a separate incentive payment or a purely discretionary bonus are also considered wages. Defendants' Br. at 5 (citing *DeLeonardis v. Credit Agricole Indosuez*, No. 00 CIV. 0138(HB), 2000 WL 1718543 (S.D.N.Y. Nov. 15, 2000)).

3

reasonable diligence, should have discovered the facts underlying the alleged fraud. *Fuqua v. Ernst & Young LLP*, 33 Fed Appx. 569, 571 (2d Cir. 2002).

> [A] motion to dismiss based on a statute of limitations defense rooted in inquiry notice is evaluated under an objective standard, and where "the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint . . . resolution of the issue on a motion to dismiss is appropriate."

*Id.* (quoting *Dodds v. CIGNA Sec., Inc.*, 12 F.3d 346, 352 n. 3 (2d Cir. 1993)). Once the duty to investigate arises, **the plaintiff's knowledge is imputed to that date regardless of whether or not they actually begin an investigation**. *LC Capital Partners, LP v. Frontier Ins. Grp. Inc.*, 318 F.3d 148, 154 (2d Cir. 2003).

The allegations in the Complaint make it abundantly clear that Vekaria had all the information needed to uncover the alleged misrepresentations by no later than January 2020. As alleged in the Complaint, the Offer Letter specifies when he was allegedly entitled to the Mthree Equity: (1) upon agreeing to become an Mthree Employee in January 2019; and (2) upon an acquisition of Mthree in January 2020. Vekaria claims he did not receive his equity upon the occurrence of either event. This was sufficient to put him on inquiry notice.

Critically, Vekaria argues that his consent was required for Mthree to agree to the acquisition by Wiley but that Mthree did not ask for it. Compl. ¶ 40 ("At no time did Vekaria agree to sell or transfer his equity in Mthree to Wiley in conjunction with the Putative Wiley Acquisition, nor did Vekaria sign any documents to any such effect."); Opp'n at 18 ("Mthree did not have full authority or consent to the sale of its entire stock"). He knew that the sale occurred based on the January 6, 2020 press release. Compl. ¶ 34. He should have realized then that Mthree did not recognize his entitlement to the Mthree Equity because it completed the transaction without his consent, selling the very equity he now sues to recover.

4

Vekaria cites *Moon Joo Yu v. Premiere Power LLC*, but that case is plainly distinguishable. The court in that case denied the motion to dismiss the securities fraud claims because "the record [did] not clearly show that [plaintiff] expected to receive her first payments in January 2012," at which time the claims would have been time-barred. *Moon Joo Yu v. Premiere Power LLC*, 14 Civ. 7588 (KPF), 2018 WL 456244, at *7 (S.D.N.Y. Jan. 17, 2018). No such ambiguity exists here. As alleged in the Complaint, Vekaria knew of the occurrence of the events that supposedly triggered his entitlement to the Mthree Equity, and yet he failed to conduct a timely investigation after he did not receive it.

Furthermore, the plaintiff in *Moon Joo Yu* alleged that the defendants gave her verbal assurances that she would eventually receive the payments. *Id.* By contrast, Vekaria does not plead any actions by Defendants that would have acted to "dissipate" the "storm warnings." *LC Capital Partners*, 318 F.3d at 155. Vekaria's laundry list of excuses for not investigating sooner is uncompelling. He suggests that the mere fact that he was employed by Mthree somehow stayed his duty of inquiry, even though he does not allege that Mthree made any "reliable words of comfort" during this time that prevented his duty of inquiry from emerging. *Id*. Incredibly, he claims that the bonus payment he received after the acquisition led him not to investigate, even though he explicitly argues in the Complaint that it was unrelated to the Mthree Equity. Compl. ¶ 39.

Moreover, Vekaria claims he was entitled to receive over $3.8 million after the acquisition by Wiley. No reasonable person with an immediate entitlement to such a large amount of money would let months pass without investigating. The very fact that he didn't receive the monetary equivalent of the Mthree Equity and was not otherwise asked to approve of the sale to Wiley was a sufficient "storm warning" to give rise to his duty of inquiry. *LC Capital*

5

*Partners*, 318 F.3d at 156; *see also Kosovich v. Metro Homes, LLC*, No. 09 Civ. 6992 (JSR), 2009 WL 5171737, at *5 (S.D.N.Y. Dec. 30, 2009), *aff'd*, 405 Fed. Appx. 540 (2d Cir. 2010) ("a reasonable investor in such circumstances would have made inquiries as to why the promised interest payments for the year were not received in full . . . .")

### B. There Was No Purchase or Sale of a Security

The Securities Claim also fails because Vekaria does not allege that there was a misrepresentation with respect to a security purportedly sold to him. Vekaria effectively concedes that no purchase or sale of a security occurred because he did not actually own the Mthree Equity. He claims instead that he was merely a "constructive owner" of the Mthree Equity. Compl. ¶ 46; Opp'n at 17 ("he constructively possessed the equity throughout his employment and even to this day.")[3] The acknowledged lack of actual ownership is consistent with his claims that Mthree *misrepresented his entitlement* to the Mthree Equity. Compl. ¶ 89. By alleging that Mthree misrepresented his entitlement to own the Mthree Equity, Vekaria necessarily concedes that he did not actually purchase it, and thus no purchase or sale of a security occurred for purposes of the Exchange Act.

Despite his attempts to suggest otherwise, Vekaria's claim is indistinguishable from the one dismissed in *Lankau v. Luxoft Holding, Inc.* Like Vekaria, the plaintiff in *Lankau* alleged that his employer promised to grant him stock options as consideration for his agreement to join the company. Just as Vekaria alleges that the Mthree Defendants misrepresented his "entitlement" to the Mthree Equity pursuant to the Offer Letter, the plaintiff in *Lankau* claimed that his employer failed to grant the stock options in accordance with his employment agreement. 266 F. Supp. 3d 666, 679 (S.D.N.Y. 2017). The court dismissed the Exchange Act claims in

---

[3] Vekaria offers no legal support for the premise of "constructive ownership" or even a "constructive purchase" of a security under the Exchange Act.

6

*Lankau* because the only misrepresentation was with respect to the employer's willingness to honor the employment agreement and grant the options. Likewise, the only misrepresentation Vekaria alleges in the Complaint is the Mthree Defendants' willingness to transfer the Mthree Equity pursuant to the Offer Letter.

Vekaria's attempts to align his case with *Dubin v. E.F. Hutton Group, Inc.* are unavailing. 695 F. Supp. 138 (S.D.N.Y. 1988). He first cites *Dubin* for the broad proposition that an offer "to induce plaintiff into employ of [defendant]" in exchange for stock options is necessarily a covered transaction under the Exchange Act. Opp'n at 16. The Court need only read *Lankau* to understand that this is plainly untrue. *Lankau* discussed *Dubin* at length and distinguished it by noting that in *Dubin*, the plaintiff actually (not constructively) owned the securities at issue after purchasing them. *Lankau*, 266 F. Supp. 3d at 679. Specifically, the plaintiff in *Dubin* received written notice after beginning his employment that he had been given stock options. *Dubin*, 695 F. Supp. at 141. By contrast, Vekaria acknowledges that he did not actually own the Mthree Equity (only "constructively"). He claims that when he discussed his equity ownership with Defendants, they denied that he was a stockholder. Compl. ¶¶ 43, 46. And he explicitly alleges that he never received confirmation of ownership, i.e., a stock certificate. *Id.* ¶ 45.[4]

*Dubin* is also distinguishable with respect to the nature of the misrepresentation – there, the misrepresentation was not simply whether the security would vest, but on what conditions. *Dubin*, 695 F. Supp. at 146. The court held that the complaint "state[d] facts sufficient to show justifiable reliance on the representations about the Plan['s vesting conditions] made to plaintiff, prior to his employment" and that the vesting conditions changed thereafter. *Id.* at 147. Like the

---

[4] Vekaria does not and cannot articulate why the plaintiff in *Lankau* was not likewise a "constructive" owner when he was promised but did not receive the securities at issue.

7

claim in *Lankau*, the alleged misrepresentations relate only to the willingness to award the Mthree Equity.

Vekaria complains that "Defendants' mere refusal to acknowledge his equity ownership would defeat his claim, which interpretation would not only be unsound, but unjust." Opp'n at 17. But Mthree has not moved to dismiss Vekaria's breach of contract claim, which effectively duplicates the Securities Claim.

### IV. VEKARIA'S TORTIOUS INTERFERENCE CLAIM FAILS BECAUSE HE FAILED TO PLEAD INTENT OR ACTUAL MALICE

Vekaria suggests that dismissal of his tortious interference claim is presumptively unavailable on the basis of the "lawful purpose" or "economic interest" defense to a claim of tortious interference. Opp'n at 19. This is untrue where, as here, the plaintiff's own allegations reflect that the defendant acted to protect its interest in the party that allegedly breached the contract. *Masefield AG v. Colonial Oil Indus.*, No. 05 Civ. 2231 (PKL), 2006 WL 346178, at *5 (S.D.N.Y. Feb. 15, 2006). Vekaria of course recognizes that Wiley acquired Mthree. He thus cannot dispute that Wiley had an economic interest in that company. *See WMW Machinery Co., Inc. v. Koerber AG*, 240 A.D.2d 400, 401 (2d Dep't 1997) ("defendants, as either the parent or a subsidiary of the Manufacturers, have an economic interest in the Manufacturers sufficient to support a defense of economic justification.")

Moreover, if the Complaint makes it clear that the defendant had a lawful purpose or economic interest, then under New York Law the plaintiff's burden to plead intent is in fact heightened. In *Masefield AG*, the court held that in such instances, "courts will impose liability only where a plaintiff can show that the interference was either malicious or involved conduct rising to the level of criminality or fraud." *Masefield*, 2006 WL 346178, at *5. The court **granted the defendants' motion to dismiss**, as the plaintiffs alleged that defendants had an

8

economic interest in the contract at issue, but failed to articulate that defendants acted with malice and not merely for economic profit. *Id.* at *5-6.

Vekaria has failed to plead malice or criminal or fraudulent intent beyond conclusory allegations. Compl. ¶ 101. As Wiley argued in the Motion, he barely pleads intent at all. At best, he alleges that Wiley's interference with his employment contract was done for the purpose of benefiting its own economic interest in Mthree. This falls far short of his heightened burden to plead that Wiley acted with actual malicious, criminal, or fraudulent intent.

Vekaria also challenges Wiley's assertion that he failed to plead intent to interfere with the Offer Letter because Wiley would have paid the same amount to acquire Mthree regardless of whether or not Vekaria received the Mthree Equity. He suggests this is "speculation in its purest form." Opp'n at 18. But Wiley's argument is based on Vekaria's own allegations in the Complaint. In Paragraph 36 of the Complaint, he valued his alleged ownership interest based on the actual purchase price Wiley paid. ("Based on this purchase price, Vekaria's Mthree Stock, comprising a 3% ownership interest, is valued at approximately $3,858,000.00.") Only in assertions made for the first time in his Opposition does Vekaria suggest that if he had received his equity, then Wiley would have paid a higher purchase price (increasing the value of his alleged ownership interest) due to "increased transaction costs associated with multiple equity-holders," "potential fluctuations in price for holdout sellers or other objectants," or the exercise of "bargaining power and leverage." Opp'n at 18. The Court need not consider these new allegations because they do not appear anywhere in the Complaint.

### V. VEKARIA'S CONVERSION CLAIM FAILS BECAUSE THE ALLEGED ACTIONS ALL RELATE TO CONTRACTUAL PERFORMANCE BY MTHREE

Vekaria's conversion claims against Mthree and Wiley are duplicative of his breach of contract claim and must be dismissed. "[I]n determining whether a conversion claim is

9

duplicative of a breach of contract claim, courts look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (internal quotation marks omitted). In Vekaria's breach of contract claim and conversion claim, he alleges that the Defendants denied him his equity interest or payment pursuant to the Offer Letter and that he suffered the same damages as a result. Compl. ¶¶ 51, 106.

Vekaria suggests that the conversion claim against Wiley does not duplicate the breach of contract claim because he did not bring the latter against Wiley. But the material facts and damages align regardless of whether the claims brought against Wiley or its corporate subsidiary Mthree. Allowing Vekaria's conversion claim to proceed (against Wiley or any of the other defendants) would allow him to potentially double his recovery based on the same alleged injury.

Vekaria also fails to distinguish his conversion claim against Mthree from the breach of contract claim. "A conversion claim may only succeed, however, if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington*, 837 F. Supp. 2d at 204. Vekaria suggests his pre-employment discussions with Mthree employees give rise to a separate conversion claim. But these discussions on their own did not create a legal duty independent of the Offer Letter. *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 265-66 (S.D.N.Y. 2017) (dismissing conversion claim where there was no source of the duty to compensate other than the contract.)

## **CONCLUSION**

For the reasons set forth above, the Court should grant Defendants Mthree and Wiley's Partial Motion to Dismiss the Complaint.

Dated: Hoboken, New Jersey
       September 23, 2022

                                Respectfully submitted,

By:  /s/ Kevin H. Kim
     Kevin H. Kim
     John Wiley & Sons, Inc.
     111 River Street
     Hoboken, New Jersey 07030
     Phone: (201) 748-5809
     Fax: (201) 748-6500
     kkim2@wiley.com

*Attorney for Defendants John Wiley & Sons, Inc. and Mthree Corporate Consulting, Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2022, a copy of the foregoing Defendants John Wiley & Sons, Inc. and Mthree Corporate Consulting, Ltd.'s Reply Memorandum of Law in Support of Their Partial Motion to Dismiss were served upon the following counsel of record by the Court's CM/ECF system:

Travis Tatko
Capell Barnett Matalon & Schoenfeld LLP
1385 Broadway, 12th Floor
New York, NY 10018
212-661-1144
Fax: 888-419-0650
Email: travistatko@nysbusinesslaw.com

    /s/ Kevin H. Kim
    Kevin H. Kim