# Capell Barnett
# Matalon & Schoenfeld LLP
### ATTORNEYS AT LAW

1385 Broadway, 12ᵗʰ Floor
New York, New York 10018
Phone: (212) 661-1144
Fax: (646) 589-0098

487 Jericho Turnpike
Syosset, New York 11791
Phone: (516) 931-8100
Fax: (516) 931-8101

www.cbmslaw.com

September 30, 2022

**VIA ECF**

United States District Court
Southern District of New York
Honorable John P. Cronan
500 Pearl St., Room 1320
New York, NY 10007

**Re:**   *Vekaria v. MThree Corporate Consulting, Ltd. et al.*
Case Number: 1:22-cv-03197-JPC-JLC

Letter of Supplemental Briefing for Alternative Means of Service to Serve MThree
Individual Defendants

Further to the Court's order on September 26, 2022 (ECF Doc No. 42), Plaintiff Jitendra
Vekaria hereby submits this supplemental briefing with regard to his request to serve Defendants
Alex Headley, Benjamin Town, and Thomas Seymour (the "MThree Individual Defendants") via
alternative means of service. This Supplemental Briefing incorporates those allegations and
arguments contained in Plaintiff's prior letters under ECF Doc Nos. 34, 38, and 40.

## INTRODUCTION

The alternative service requested by Plaintiff satisfies the standard for a Rule 4(f)(3)
request set forth in *Stream SICAV v. Wang*, 989 F.Supp.2d 264, 278 (SDNY 2013) and its
progeny where this Court has routinely permitted alternative service on individual defendants
living abroad when they have not been able to be served by other means of service.  However,
*Wang* firmly establishes that there is no hierarchy of methods of service under Rule (4)(f)(3), and
an application for its use "is neither a last resort nor extraordinary relief."  *Id.*  Here, the facts
closely resemble the *Wang* case, and Plaintiff's request should be granted for the same reasons as
this Court granted the plaintiff's motion for alternative service in *Wang* and subsequent cases.

As further detailed below:

1. The proposed means of service are not prohibited by international agreement. *See Baskett v. Autonomous Research LLP*, 2018 WL 4757962 at *12-14 (SDNY 2018) (holding that service by a processer server in the United Kingdom is not prohibited by the Declarations of the United Kingdom on the Hague Convention).

2. The proposed service comports with constitutional notions of due process. Plaintiff wishes to serve the MThree Individual Defendants in multiple forms – via their last known email addresses and/or their LinkedIn accounts and by leaving paper copies of the Summons and Complaint with the receptionist at Wiley's office in London.[1] There is no doubt that these methods of service are reasonably calculated to apprise these defendants of the pendency of this lawsuit, of which they are already highly likely to be aware even at the present time.

3. The Court should exercise its broad discretion to allow this alternative service on the three MThree Individual Defendants and allow this case to proceed in a timely fashion. Plaintiff should not be required to use the Central Service of Process of the United Kingdom as established under the Hague Convention, which may delay this case many more months. In-person service has been attempted on the MThree Individual Defendants at Wiley's office in London multiple times. In addition, Plaintiff's counsel has requested Wiley's counsel to accept service on behalf of the MThree Individual Defendants, which was refused, and then to coordinate a time to serve them in person at Wiley's office, all to no avail.[2] All of these reasons favor service by these alternative means, just as this Court allowed in *Wang*.

## APPLICABLE LAW

Under Federal Rule of Civil Procedure 4(f), service may be effected upon individuals in foreign countries by: (1) "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the [Hague Convention]"; (2) "a method that is reasonably calculated to give notice," for example, "as the foreign authority directs in response to a letter rogatory"; or (3) "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1)-(3). Rule 4(f)(3) states, "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *See Wang*, at *277–78.

---

[1] Please note that Plaintiff is in possession of each of the MThree Individual Defendants last-known cell phone numbers. If it so pleases the Court, Plaintiff would be willing to notify and/or serve each of the MThree Individual Defendants telephonically in addition to the various means of service already proposed.

[2] As noted in a previous letter (ECF Doc No. 40), Mr. Kim does not represent these persons, and cannot raise claims or arguments on their behalf with regard to this request for alternative service, especially given that Mr. Kim has refused to accept service or even assist with coordinating service at Wiley's office in London for the individuals that are currently working for Wiley.

Service through Rule 4(f)(3) is "neither a last resort nor extraordinary relief [but rather] merely one means among several which enables service of process on an international defendant." *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272 at *2 (SDNY 2013). "Thus, under Rule 4(f)(3), '[a] plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3).'" *Wang*, at *278. (internal citation omitted) (emphasis in original). To be sure, "in evaluating whether alternative service is 'necessitated' courts in this Circuit have generally required: '(1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary.'" *Id.* But, "[i]nasmuch as Rule 4(f)(3) calls upon a court to exercise its discretion ... each case must be judged on its facts." *Id.* (internal citations omitted).

## **DISCUSSION**

### *I.       An International Agreement Does Not Prohibit the Proposed Means of Service*

The court determines whether an international agreement prohibits a means of service by examining Article 10 of the Hague Service Convention:

> Provided the State of destination does not object, the present Convention shall not interfere with –
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(*Convention Done at the Hague Nov. 15, 1965*; T.I.A.S. No. 6638 (Feb. 10, 1969).)

The U.S. Supreme Court has also weighed in, and the Southern District has adopted its interpretation that the Hague Service Convention leaves room for different means of service. *See Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1508 (2017) (finding that the word "send" in 10(a) includes the word "serve" and the serving of a summons and complaint is properly served if mailed to a defendant and leaving open the possibility of other forms of "sending" a summons and complaint); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272, at *2 (permitting service by alternative means where signatory nation did not "explicitly object" to such means in its declaration pursuant to the Convention); *In re S. African Apartheid Litig.*, 643 F.Supp.2d 423, 433 (S.D.N.Y.2009) (requiring express objection to alternative means of service in reservation as to Article 10).

The Declarations of the United Kingdom relating to Article 10 do not expressly limit personal service *via* substitute service by a process server, or email or other electronic means. *See* Declarations of the United Kingdom on the Hague Convention at https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=427&disp=resdn (last accessed September 29, 2022).  In fact, the Southern District of New York has expressly found that service by process server is specifically allowed under these Declarations.  *See again Baskett v. Autonomous Research LLP*, 2018 WL 4757962 at *12-14 (SDNY 2018) (permitting service of process by process server in the United Kingdom).

As there is no express limitation on email, LinkedIn message, and leaving the documents with the receptionist, Plaintiff's request does not violate any international agreement by requesting service through Rule 4(f)(3).  *See also e.g., United States v. Besneli*, 2015 WL 4755533 at *2 (SDNY 2015) (concluding that service on Defendant – located in Turkey - by email is not prohibited by international agreement where the foreign state does not object both to service by "postal channels" and "electornic means" nor is exhaustion of other methods required).  The Declarations do not prohibit "postal channel" or "electronic means" service, and thus email and LinkedIn messages are appropriate under Rule 4(f)(3).

## II.     The Proposed Means Comport with the Constitution's Notions of Due Process

Plaintiff's proposed means of service comport with the Constitution's notions of Due Process. First, Plaintiff has all of the Defendants' last known email addresses, as referenced at Exhibit A along with copies of email correspondence between Plaintiff and each of the MThree Individual Defendants at such email addresses in the past, which reliably suggests that they will receive this correspondence.  Second, as LinkedIn messaging is routinely used and updated for business matters, and these accounts appear to have been created by these individuals for their monetary advantage for, among other things, attracting business and self-promotion, Defendants will be personally alerted through their account of Plaintiff's message with attached documents. Screenshots of their LinkedIn accounts and associated website addresses are attached at Exhibit B for the Court's reference.  Third, the documents will be given to the receptionist at Wiley's office in London, which further ensures that the MThree Individual Defendants will be made aware they are defendants in this lawsuit.

In countless instances, these means have been held out as proper Constitutional forms of service.  "Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  The "Constitution itself does not specify or require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond." *Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412 at *2 (SDNY 2007).  Therefore, what constitutes appropriate service will vary depending on the case's circumstances.  "Under Rule 4(f), courts have permitted a wide range of alternative methods including email." *Id.*

Email has been a well relied upon means.  *See F.T.C. v. PCCare247 Inc.,* 2013 WL 841037 at *3–4 (SDNY 2013) (authorizing service by email and Facebook to defendants in India, and stating that "[n]umerous courts have held that service by email does not violate any

international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10"); *Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412, at *2 (SDNY 2007) (rejecting the defendants' objection to service via email where the plaintiff "showed that [the] defendants conduct[ed] business extensively, if not exclusively, through their Internet websites and correspond[ed] regularly with customers via email"); *F.T.C. v. Pecon Software Ltd.*, 2013 WL 4016272 at *2 (SDNY 2013) (allowing plaintiffs to proceed through email as the defendants' email addresses were provided through their place of business's website) and, *Sulzer Mixpac AG v. Medenstar Industries Co.,* 312 F.R.D. 329 (SDNY 2015) (allowing service through the email address listed on the defendant company's website and through international mail to the address listed on the Defendant's company's website).

In conclusion, under *Wang*, when a court finds that multiple attempts at service have been tried, a plaintiff is diligently attempting to obtain the participation of all parties, including contact with the corporation's counsel that is also a defendant and joined to the action already, and any other methods would produce undue delay without adding any reasonable certainty of giving more notice of the pendency of the action to the foreign defendants than those proposed under the alternative service application, the request should be granted, as here.

### III.    *Alternative Service Should Be Permitted by the Court*

In addition to satisfying the above two requirements under *Wang*, there is good cause for this Court to allow alternative service on the MThree Individual Defendants because Plaintiff has made ample efforts to attempt to serve them to date, and the Court's intervention is necessary to effectuate service and allow this case to proceed in a timely manner.

#### i.    *Service Through Other Provisions of Rule 4(f) Is Not Required for Rule 4(f)(3) Service*

As already explored above, exhaustion of the other provisions of Rule 4(f) is not required before a plaintiff seeks court-ordered service.  *See Advanced Aerofoil Techs., AG v. Todaro*, 2012 WL 299959 at *1 (SDNY 2012) ("[s]ervice under subsection (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant"). "Courts have long held that there is no hierarchy among the subsections in Rule 4(f)."  *Jian Zhang v. Baidu.com Inc.,* 293 F.R.D. 508, 511 (SDNY 2013). Also, Rule 4(f)(3) "stands independently, on equal footing" with Rule 4(f)(1)." *Jian Zhang* at 511. This court ruled in *SEC v. Anticevic,* that "[a] plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." 2009 WL 361739 at *3 (emphasis in original).

#### ii.    *Plaintiff Has Attempted Other Means of Service*

As discussed in my prior letters with the Court, Plaintiff has made extensive efforts to serve the MThree Individual Defendants and seek their participation in this case.  This has entailed the following:

1. On May 31, 2022, I had email correspondence with Mr. Kim, counsel of record for MThree and Wiley, asking if he would be representing and willing to accept service for

the MThree Individual Defendants.  He advised that he would not be representing them or able to accept service for them.

2.  Our office spent time researching and conducting searches to attempt to locate the whereabouts of the MThree Individual Defendants.  Based on our research, it appeared that each of them were based in the London area and working for MThree/Wiley.

3.  We retained a process server in London, Tremark Associates Limited, to attempt service on each of the four individual defendants.  The process server advised us that service on the MThree Individual Defendants would be particularly difficult, describing the offices in the London area of Canary Wharf "like a fortress" and that "security are not helpful" to process servers.

4.  In August, I sent email correspondence to Mr. Kim, requesting his assistance to coordinate service on the three MThree Individual Defendants in London.  I also sent email correspondence to Natasha Winter, Esq.[3], with a copy to Richard Wise and Marc Field from Ms. Winter's law firm, requesting her response as to whether she will be representing Defendants ECI Partners LLC and Richard Chapman.  I received no response at all from either Attorney Kim or Attorney Winter to my correspondence.

5.  The process server in London advised that Mr. Chapman was personally served on August 25, 2022, and that they would be providing further updates as to the MThree Individual Defendants, who have not been served yet.  The personal service on Mr. Chapman shows Plaintiff's due diligence in the matter of service, and if the MThree Individual Defendants were practicably serviceable by other means, they would have been served by now.  Because this is not the case, Plaintiff has made this application.

6.  On Friday, August 26, 2022, the process server went to the MThree Individual Defendants' office, which he confirmed indeed was their office from the office's security guard.  The guard also informed the process server that the MThree Individual Defendants were not in the office that day and the remaining office staff was out to lunch. These statements show that the MThree Individual Defendants work at that location, are known persons there, but are simply (and conveniently) away each time service is attempted.[4]

7.  Another attempt was made on Tuesday, August 30, 2022.  The process server went back to MThree Individual Defendants' office.  While there, he spoke with the office's receptionist, who informed him that the MThree Individual Defendants were not in the office that day (again).

---

[3] Please note that Ms. Winter served as counsel to ECI during pre-litigation discussions.

[4] Further to the previous letters filed, Mr. Kim has advised that Mr. Headley no longer works for MThree/Wiley. However, it appears that Mr. Headley is still connected to and affiliated with MThree based on publicly available information, as his LinkedIn profile states that he is still the CEO of MThree and prominently features an MThree logo and graphic, and he appears to still have a valid MThree email address.

To avoid further delay in this matter, Plaintiff requests to serve the MThree Individual Defendants under Rule 4(f)(3), rather than being required to serve them through the Hague Convention.  Serving a defendant under the Hague Convention has been found to be a burdensome, lengthy, and ineffective process for many plaintiffs, and would likely involve a process lasting many months.  The Southern District of New York has recognized the impracticability of the Hague Convention and allows other service methods.  It has found alternative means under Rule 4(f)(3) to be more convenient and reliable than mailing or attempting personal service.  In *Wang*, the court stated that "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."  at *280.  The Court saw "no reason to slow the progress of this case by ordering service through the Convention when service through [other means] will be just as reliable, if not more so." *Id.*

### iii.   Plaintiff's Proposed Means of Service Comport with All Necessary Requirements

Plaintiff's request to serve Defendants via email, LinkedIn profiles, and their receptionist falls squarely within the Southern District's treatment of like cases.  *See F.T.C. v. PCCare247 Inc.,* 2013 WL 841037 at *3–*4 (authorizing service by email and Facebook to defendants in India and stating that "[n]umerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10").  Unlike the *F.T.C. v. PCCare247 Inc.,* case where the court granted Plaintiffs the ability to serve Defendants over Facebook messenger, Plaintiff in the instant case is asking to serve Defendants through a means used solely for business purposes and professional conduct.  Specifically, LinkedIn differs greatly from Facebook for that reason.  *See Philip Morris USA Inc. v. Veles Ltd.,* 2007 WL 725412 at *2 (SDNY 2007) (rejecting the defendants' objection to service via email where the plaintiff "showed that [the] defendants conduct[ed] business extensively, if not exclusively, through their Internet websites and correspond[ed] regularly with customers via email").

Plaintiff in the instant case is asking to serve Defendants through a means used solely for business purposes and professional conduct. Like the aforementioned cases, email, LinkedIn, and the office receptionist are all elemental to how Defendants engage in business. Each is an avenue of communication they interact with regularly during their business dealings. Therefore, Defendants will reliably be able to receive service through these means.

## CONCLUSION

Based on the foregoing caselaw analysis and citations to relevant Declarations of the United Kingdom and the Hague Convention, Plaintiff has met its burden, not only of showing a reasonable likelihood of the Defendants receiving notice, but an almost certitude.  Weighed against the delay, cost, and prejudice of continuing futile efforts at international personal service or other service of process authorized by the Hague Convention, the Plaintiff posits that the Court can and should grant the proposed Alternate Service in the following manner:

1. **Alex Headley** – by leaving the Summons and Complaint with the secretary at Wiley's offices located at 10th Floor, 3 Harbor Exchange London, E14 9GE,

United Kingdom; and email service at alex.headley@mthreeconsulting.com; and *via* LinkedIn messenger to Alex Headley (https://www.linkedin.com/in/alex-headley-a6776425/);

2. **Benjamin Town** - by leaving the Summons and Complaint with the secretary at 10th Floor, 3 Harbor Exchange London, E14 9GE, United Kingdom; and email service at ben.town@mthree.com; and *via* LinkedIn messenger to Benjamin Town (https://www.linkedin.com/in/ben-town-24b71512/); and

3. **Thomas Seymour** - by leaving the Summons and Complaint with the secretary at 10th Floor, 3 Harbor Exchange London, E14 9GE, United Kingdom; and email service at Thomas.Seymour@mthree.com; and *via* LinkedIn messenger to Thomas Seymour (https://www.linkedin.com/in/thomas-seymour-16b06872/).

I thank the Court and Your Honor for your consideration of this matter.

Respectfully submitted,

Travis Tatko

<u>Exhibit A</u>

Last Known Email Addresses for MThree Individual Defendants and Copies of Email
Correspondence between Plaintiff and MThree Individual Defendants

Alex Headley – alex.headley@mthreeconsulting.com

Benjamin Town – ben.town@mthree.com

Thomas Seymour – Thomas.Seymour@mthree.com

**From:** jvekaria <jvekaria@btinternet.com>
**Sent:** 02 January 2019 17:21
**To:** Alex Headley - Mthree <alex.headley@mthreeconsulting.com>
**Cc:** Thomas Seymour - MThree <Thomas.Seymour@mthreeconsulting.com>
**Subject:** Re: Formal Offer of Employment

Hey bud,

Thanks for the updates, will wait for TS.

Spoke to Sam today, how did your catch up with him and Conor go in London?

-jit

-------- Original message --------

From: Alex Headley - Mthree <alex.headley@mthreeconsulting.com>

Date: 1/2/19 4:08 AM (GMT-05:00)

To: Jit Vekaria <jvekaria@btinternet.com>

Cc: Thomas Seymour - MThree <Thomas.Seymour@mthreeconsulting.com>

Subject: Re: Formal Offer of Employment

Hi,

Happy new year, hope you enjoyed the festive break.

Looking forward to working together from next week, in the meantime see below.



On 28 Dec 2018, at 16:47, Jit Vekaria <jvekaria@btinternet.com> wrote:

Hi Alex,

Hope you and your family had a great Christmas and are looking forwards to the New Year festivities.  I have exchanged a few mails during my holiday and am now back so would like to close out the last few open items, in order to make the targeted start date of Jan 7th.

I have listed these out below;

1. We have discussed the breadth of the role a few times and did so again in London when I was over and with that in mind I think the job title should be reflective.  Would you be ok with "Head of Americas" instead of "Head of North America Sales"

That's fine

1. The Equity piece is not clear enough, I expect Thomas is fully in the loop with our discussion but am not sure so didn't respond directly to him.  Can the contract be updated so its clear;
   1. Upon joining you will be allocated 1% Equity purchased by the M3 Consulting Services business.  (this is essentially to cover the stock I walked away from)
   2. Furthermore you will be invited to purchase a further 2% of Equity, equally split over years 2 and year 3 of employment, these will be purchased by you at a set price of XXX (what is this nominal purchase price agreed at previous board meetings? And can we include it in the contract?)

Above is correct and I'll get it sorted (TS I'll get this sorted with you today).

1. I hadn't noticed before but the vacation is 20 days, I was on 25 days at JPMC, is it normal to allocate 20 days at this level?  Obviously I would prefer the standard 25 days but would want to fit into what is the structure.  Let me know what you think.

We get 23 as we close over Xmas and don't ask for holiday for the extra days.

From everything we have discussed, over email and when I was in London, I think the above is line with our discussions (apart from the vacation point).  When I read the contract currently it does not reflect our conversations, specifically for the Equity piece.

Let me know what you think and hopefully we can clear this all up quickly.

In the meantime I have completed the joining documents and will send them back to Patrick.

Let me know if that's ok for now?

Thanks

Alex

Thanks,

-jit

Sent from Mail for Windows 10

------ Original Message ------
From: "McNulty, Nick" <nick.mcnulty@mthree.com>
To: "J VEKARIA" <jvekaria@btinternet.com>; "Seymour, Thomas"
<Thomas.Seymour@mthree.com>; "Town, Ben" <ben.town@mthree.com>
Sent: Friday, 23 Apr, 21 At 04:06
Subject: RE: JV's W2 Form

Hi Jit,
I've passed it across to the global tax team here and asked for guidance since W2's aren't my
area so can't help you further unfortunately. I'll let you know if I get anywhere.
Best,
Nick

<u>Exhibit B</u>

LinkedIn Account Pages for MThree Individual Defendants

*Please see attached.*

 **Q** Search  Home  My Network  Jobs  Messagi



## Alex Headley · 3rd

 MThree

CEO at mthree | STEM Graduate Training | Workforce Partner | Emerging Talent Schemes

London, England, United Kingdom · **Contact info**

288 connections

 **Connect**    **Message**   More

## About

I am the founder and CEO at mthree.

With over 15 years' experience in human capital management solutions that specialise in technology services; I have worked my way up from consultant to CEO and have covered all aspects within this sector, across global m ...see more

## Activity
321 followers

**Alex hasn't posted lately**
Alex's recent posts and comments will be displayed here.

Show all activity →

 Q Search    

Home   My Network   Jobs   Messagi



**Ben Town** · 3rd
Founding Partner at mthree
United Kingdom · **Contact info**
500+ connections

**Wiley Edge**

**King James Grammar School**

🔗 **Connect**   ✈ **Message**   More

## About

I am the Founding Partner of MThree, an emerging talent partner to global, blue-chip enterprises focusing on their technology and business operations.

We source, train and hire outstanding people with the skills that are most in demand and embed them sear ...see more

## Activity

1,943 followers

Ben Town posted this · 1w



I'm currently in Sydney for work but I made sure to tune in to the coverage yesterday as the nation paid a final farewell to Queen Elizabeth II with a majestic state funeral and military procession. I also took the time to reflect on my feelings about the monarch. Royalist or not, and as the past 10 days ha ...show more

35                                                                 1 comment

 Q Search

 Home     My Network     Jobs     Messag





## Thomas Seymour · 3rd

Senior Director Human Resources at Wiley Education Services

Talks about #engagement, #talentacquisition, #talentdevelopment, #organisationalculture, and #organisationaldevelopment

London, England, United Kingdom · Contact info

1,654 followers · 500+ connections

 + Follow     ✈ Message    ( More )

 Wiley Education Services

 Cardiff University / Prifysgol Caerdydd

## Activity

1,654 followers

( + Follow )

Thomas Seymour posted this · 3w

Fostering employee engagement has always been incredibly important, but as the working world shifts, the next iteration will be all about helping employees self-engage. This begins with businesses and managers askii ...show more



The Next Evolution Of Employee Engagement Is Self-Directed

forbes.com · 5 min read

 8

Thomas Seymour posted this · 1mo

The UK Government last week launched a scaleup visa for businesses to sponsor high-skill tech workers for a two-year stay to encourage more talent into the country and plug the digital skills gap. Businesses that meet certai ...show more