UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                                  :
JITENDRA VEKARIA,                                                 :
                                                                  :
                              Plaintiff,                          :
                                                                  :               22 Civ. 3197 (JPC)
              -v-                                                 :
                                                                  :                     ORDER
MTHREE CORPORATE CONSULTING, LTD. *et al.*,                       :
                                                                  :
                              Defendants.                         :
                                                                  :
------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      On April 19, 2022, Plaintiff Jitendra Vekaria filed the Complaint that initiated this action,
naming seven individuals and corporate entities as Defendants. Dkt. 1 at 1. Four Defendants—
MThree Corporate Consulting, Ltd. ("MThree"), John Wiley & Sons, Inc. ("Wiley"), ECI Partners
LLC, and Richard Chapman—have now been served. Dkts. 18-20, 37. The remaining three
Defendants—Alex Headley, Benjamin Town, and Thomas Seymour (collectively, the "Remaining
Defendants")—have not been served. *See* Dkt. 38 at 1. In order to serve the Remaining
Defendants, each of whom is believed to reside in the United Kington, Plaintiff has moved for the
Court's permission, pursuant to Federal Rule of Civil Procedure 4(f)(3), to serve them through
alternative means. *Id.* In particular, Plaintiff wishes to serve each Remaining Defendant through
the following three methods: (1) leaving copies of the Summons and Complaint with the
receptionist at a Wiley office in London; (2) e-mailing the Summons and Complaint to each
Remaining Defendant's mthree.com e-mail address; and (3) sending the Summons and Complaint
via LinkedIn messenger to each Remaining Defendant's LinkedIn account. Dkt. 43 at 7-8. In
response, Wiley and MThree submitted a letter informing the Court that Headley is no longer
employed by MThree, Dkt. 44 at 1, and therefore cannot access his mthree.com e-mail address, *id.*

at 2.  Plaintiff believes that Headley remains affiliated with MThree primarily because of his LinkedIn page, which continues to list him as the CEO of MThree.  Dkt. 40 at 1-2; Dkt. 43 at 6 n.4.  For the following reasons, Plaintiff's motion to serve the Remaining Defendants through alternative means is granted in part and denied in part.

Rule 4(f), which governs service of an individual in a foreign country, identifies multiple methods by which such an individual may be served:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).  "There is no hierarchy among the subsections in Rule 4(f)," and, as such, "Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278 (S.D.N.Y. 2013) (citations and internal quotation marks omitted).  Nonetheless, before permitting service under Rule 4(f)(3), "courts in this Circuit have generally required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2)

2

a showing that the circumstances are such that the court's intervention is necessary." *Id.* (citation and internal quotation marks omitted).

Plaintiff has made each of these two showings.  First, Plaintiff has reasonably attempted to effectuate service on the Remaining Defendants.  He has determined that they are likely to be found in the London area, and therefore he has retained a UK process server in order to serve them personally.  Dkt. 43 at 6.  But despite multiple attempts, the process server has been unable to serve them personally.  *Id.*   Second, the Court's intervention will likely be necessary to expeditiously serve the Remaining Defendants so that this case may proceed.  Approximately six months have passed since the Complaint was first filed in this case, *see* Dkt. 1, and a fully briefed motion to dismiss is already pending.  *See* Dkts. 30, 36, 41.  Furthermore, there seems little prospect that the Remaining Defendants will be served absent the Court's intervention, in part because Plaintiff has reported that, according to his process server, security staff at the Wiley office in London "are not helpful" to process servers, Dkt. 43 at 6, and in part because the parties' submissions do not indicate that they are likely to cooperate with one another to expedite service.

Under Rule 4(f)(3), a court may permit service by any means that "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process."  *Stream SICAV*, 989 F. Supp. 2d at 278.  Plaintiff's proposed means of service are not prohibited by international agreement.  The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 658 U.N.T.S. 163 (the "Hague Convention"), governs the international service of process.  Under Article 10 of the Hague Convention,

> Provided the State of destination does not object, the present Convention shall not interfere with —
>
> (a)     the freedom to send judicial documents, by postal channels, directly to persons abroad,

b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Hague Convention art. 10. This provision permits service through electronic messaging and through a process server unless a country has objected to such service in its declarations pursuant to the Hague Convention, though courts have disagreed about whether an objection must explicitly mention electronic messaging to be effective or whether an objection to service through postal channels in general encompasses electronic messaging. *Compare, e.g.*, *United States v. Besneli*, No. 14 Civ. 7339 (JFK), 2015 WL 4755533, at *2 (S.D.N.Y. Aug. 12, 2015) (permitting service by e-mail in Turkey, which had objected to service via postal channels), *with, e.g.*, *Habas Sinai ve Tibbi Gazlar Istihsal A.S. v. International Technology & Knowledge Company, Inc.*, No. 19 Civ. 608 (PLD), 2019 WL 7049504, at *3-4 (W.D. Pa. Dec. 23, 2019) (refusing to permit service by e-mail in Turkey).

In any event, the United Kingdom's Declarations under the Hague Convention do not include any objection to the service of process through postal channels generally, through electronic messaging specifically, or through a process server. *See* Declarations of the United Kingdom to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=427&disp=resdn. And the Court is unaware of any other international agreement to which the United Kingdom is a party that prohibits those forms of service. Consequently, as courts in this District have held, in the United Kingdom neither service through electronic messaging nor through a process server is prohibited by international agreement. *See* *Baskett v. Autonomous Rsch. LLP*, No. 17 Civ. 9237 (VSB), 2018 WL 4757962, at *12-13

(S.D.N.Y. Sept. 28, 2018) (permitting service in the United Kingdom via process server); *F.T.C. v. Pecon Software Ltd.*, No. 12 Civ. 7186 (PAE), 2013 WL 4016272, at *6 n.3 (S.D.N.Y. Aug. 7, 2013) (permitting service in the United Kingdom via e-mail).

"Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *S.E.C. v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *4 (S.D.N.Y. Feb. 13, 2009) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  The Court finds that Plaintiff's proposed means of service are reasonably calculated to apprise two of the Remaining Defendants, Town and Seymour, of the pendency of this action, and thereby to afford them an opportunity to present their objections. MThree and Wiley's responses to Plaintiff's motion have disputed neither that they continue to employ Town and Seymour nor that Town and Seymour have access the e-mail addresses proposed by Plaintiff for service of process.  *See generally* Dkts. 39, 44.  Given that individuals ordinarily frequent their workplace multiple times per week and use their work e-mail continuously throughout the day, it is likely that Town and Seymour would each receive documents that are either left with the receptionist at their workplace or sent to their work e-mail addresses.  Thus, those methods of service are reasonably calculated to apprise Town and Seymour of this lawsuit. In addition, while the Court declines to determine whether LinkedIn messenger would suffice on its own for service under Rule 4(f)(3), Plaintiff's use of that method of communication in addition to the two others proposed could only increase the likelihood that Town and Seymour will receive notice of this lawsuit.  Finally, Plaintiff has informed the Court that it is in possession of Town and Seymour's last-known cell phone numbers. Dkt. 43 at 2 n.1.  Without addressing the propriety of permitting service via telephone, the Court approves of Plaintiff's suggestion, *see id.*, to call Town and Seymour at these numbers simply to notify them, as a courtesy, that they are being

served through the three other methods Plaintiff has proposed.  These methods of communication taken together are therefore likely to successfully inform Town and Seymour of this lawsuit, as constitutional notions of due process require.

The Court does not find, however, that the methods of service Plaintiff has proposed would be reasonably calculated to appraise the third Remaining Defendant, Headley, of the pendency of this action.  MThree and Wiley have represented that they no longer employ Headley.  Dkt. 44 at 1.  The Court sees no reason to doubt the veracity of this representation, nor has Plaintiff provided any.  Furthermore, Plaintiff's primary basis for believing that Headley remains an employee of MThree, his LinkedIn account, does not constitute compelling evidence, since people often do not promptly update their LinkedIn information with employment changes.  Consequently, leaving a copy of the Summons and Complaint at Wiley's offices would not be reasonably calculated to notify Headley that this lawsuit is pending, since as a former employee it is unclear why he would frequent those offices, nor would e-mailing a copy to his mthree.com e-mail address, since, as MThree and Wiley have verified, *id.* at 2, a former employee like Headley would not have access to his former work e-mail inbox.  Furthermore, while Headley may still have control of his LinkedIn account, the Court is insufficiently confident that he regularly accesses it—particularly given that he appears not to have updated it since he left MThree—to find that sending the Summons and Complaint through LinkedIn alone would be reasonably calculated to apprise him of this lawsuit.

Nonetheless, particularly since Plaintiff's attempts to serve the Remaining Defendants have already consumed so much of Plaintiff's and the Court's time, the Court hopes to enlist Wiley and MThree's cooperation in expeditiously serving Headley.  To that end, MThree and Wiley shall submit a status letter by October 18, 2022 informing the Court of whether they possess Headley's physical or electronic contact information; if so, whether they would consent to share that

information confidentially with Plaintiff to enable him to serve Headley; and if there is any more convenient method of serving Headley that they would be able and willing to facilitate instead.

For the foregoing reasons, the Court grants Plaintiff's motion to permit alternative means of service with respect to Town and Seymour, denies that motion with respect to Headley, and orders Wiley and MThree to file a letter addressing the above issues by October 18, 2022.

SO ORDERED.

Dated: October 11, 2022
New York, New York

JOHN P. CRONAN
United States District Judge