**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X

JITENDRA VEKARIA,                                    Index No. 1:22-cv-03197

       Plaintiff,                                    **FIRST AMENDED COMPLAINT**

       v.                                            **JURY TRIAL DEMANDED**

MTHREE CORPORATE CONSULTING, LTD.,
JOHN WILEY & SONS, INC.,
ECI PARTNERS LLP, ALEX HEADLEY,
BENJAMIN TOWN, THOMAS SEYMOUR,
and RICHARD CHAPMAN,

       Defendants.
--------------------------------------------------------X

## FIRST AMENDED COMPLAINT

Plaintiff Jitendra Vekaria ("Mr. Vekaria" or "Plaintiff"), by and through his undersigned

counsel, and for his First Amended Complaint (hereinafter, "Complaint") against Defendants

MThree Corporate Consulting Ltd. ("MThree"); John Wiley & Sons, Inc. ("Wiley"); ECI

Partners LLP ("ECI"); Alex Headley ("Mr. Headley"); Benjamin Town ("Mr. Town"); Thomas

Seymour ("Mr. Seymour"); and Richard Chapman ("Mr. Chapman") (collectively,

"Defendants"), upon personal knowledge with respect to himself and his own acts, upon

information and belief as to all other matters, and with the belief that all matters alleged herein

are likely to have evidentiary support after reasonable opportunity for further investigation and

discovery, states as follows.

## PRELIMINARY STATEMENT

1.      Mr. Vekaria brings this Complaint to redress Defendants' improper acts in denying Mr. Vekaria his rights in the equity of MThree and the payment of wages on account of his employment in MThree.

2.      Mr. Vekaria was hired by MThree as a salesperson on or about January 7, 2019. Each of Mr. Headley, Mr. Town, Mr. Seymour, and Mr. Chapman individually, and ECI corporately, understood to be the majority shareholder of MThree at this time, were all actively involved in the negotiations leading to Mr. Vekaria's hiring.  In conjunction with his hiring, Mr. Vekaria and MThree entered into an employment agreement (the "Employment Agreement") pursuant to which Mr. Vekaria earned, and MThree agreed to make, an immediate, fully vested and fully paid stock issuance to Mr. Vekaria comprising 1% of the fully diluted capital stock of MThree, effective immediately upon the signing of the Employment Agreement (the "Initial Stock"), and additional stock comprising 2% of the fully diluted capital stock of MThree immediately upon an acquisition of MThree, or otherwise in 1% increments upon the first and second anniversaries of Mr. Vekaria's employment, for a total of 3% of the fully diluted capital stock of MThree (the "Additional Stock"; the Initial Stock and the Additional Stock, collectively, the "MThree Stock").  The MThree Stock was a fundamental and material inducement to Mr. Vekaria's agreement to join MThree, as Mr. Vekaria would be giving up substantial equity-based compensation at his then-current employer.

3.      Wiley has alleged that it acquired "100%" of the outstanding stock of MThree on January 1, 2020 (the "Putative Wiley Acquisition").  As disclosed in public filings made with the United States Securities and Exchange Commission ("SEC"), Wiley reported that the purchase price of its putative acquisition of MThree totaled $128,600,000.00.  ECI reported that it

substantially profited from the transaction, and had apparently generated a 270% return on ECI's investment.  Upon information and belief, Messrs. Headley, Town, Seymour, and Chapman were also stockholders in MThree, and profited from the Putative Wiley Acquisition.

4.       Mr. Vekaria has received no compensation whatsoever to date on account of his MThree Stock.  While Wiley has reported to have consummated the acquisition of all "100%" of the outstanding shares of MThree, at no time did Mr. Vekaria ever agree to sell or transfer his equity in MThree to Wiley, nor did Mr. Vekaria sign any documents to any such effect.

5.       Subsequent to the Putative Wiley Acquisition of MThree, Mr. Vekaria continued his employment with MThree, which ended in his second year of employment with MThree on or about April 2020.  Thereafter, Mr. Vekaria engaged in numerous attempts to ascertain the status of his equity in MThree and realize the value of his equity with MThree.  These attempts have been rendered fruitless by Defendants, who have pursued a pattern of deflections and delaying tactics to prevent Mr. Vekaria from realizing the value of his equity.

6.       Mr. Vekaria brings his claims for breach of contract and breach of the implied covenant of good faith and fair dealing against MThree.  There is no doubt that Mr. Vekaria has been denied the benefits of his MThree Stock pursuant to the Employment Agreement with MThree.

7.       In addition, by depriving Mr. Vekaria of his stock and its value, MThree failed to pay wages owed to Mr. Vekaria on account of his employment in violation of New York Labor Law § 190, *et seq.*, pursuant to which each of the Defendants, inclusive of the individual Defendants as well as Wiley and ECI, are jointly and severally liable under the Labor Law.

8.       In the alternative, in the event that the Court were to find that Mr. Vekaria somehow does not have a contractual right to the MThree Stock, the false representations made

with regard to Mr. Vekaria's equity constitute fraudulent inducement and negligent misrepresentation against MThree and Messrs. Headley, Town, Seymour, and Chapman (collectively, the "MThree Defendants").  But in either case, such conduct on the part of the MThree Defendants violates the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C. Rule 10b-5 (15 U.S.C. § 78j(b), *et seq*, and 17 C.F.R. § 240.10b-5) based on each of the MThree Defendants' misrepresentations and omissions of material facts in connection with offering Mr. Vekaria's equity.

9.      Mr. Vekaria also brings claims for interference with contractual relations against all Defendants (except for MThree) and conversion against all Defendants.

10.      Mr. Vekaria also seeks a declaratory judgment for the affirmation of his MThree Stock and the recission of any and all transactions, inclusive of the Putative Wiley Acquisition, that have attempted to transfer Mr. Vekaria's MThree Stock.

## **PARTIES**

11.      Plaintiff Jitendra Vekaria is a natural person residing in Massachusetts.

12.      Defendant MThree Corporate Consulting Ltd. is a Delaware corporation registered to do business in New York with a service of process address of c/o CT Corporation System, 28 Liberty Street, New York, NY 10005.

13.      Defendant John Wiley & Sons, Inc., is a New York corporation with a service of process address of 28 Liberty Street, New York, NY 10005.

14.      Defendant ECI Partners LLP is a limited liability partnership registered in England and Wales with a business address of 590 Madison Avenue, New York, NY 10022.

15.      Defendant Alex Headley is the former Chief Executive Officer of MThree, and upon information and belief, is a resident of England.

16.     Defendant Benjamin Town is the founding partner and Global Sales Director of MThree.  Mr. Town was a resident of New York during a substantial portion of the time that the acts and occurrences took place in this dispute.  Upon information and belief, Mr. Town is currently a resident of London, England.

17.     Defendant Thomas Seymour is the Director of Human Resources of MThree, and upon information and belief, is a resident of London, England.

18.     Defendant Richard Chapman is a partner of ECI and a former member of MThree's Board of Directors, and upon information and belief, is a resident of London, England.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

20.     In addition, this action arises under the provisions of the Securities and Exchange Act of 1934, Rule 10(b) and S.E.C. Rule 10b-5 (15 U.S.C. § 78j(b), *et seq*, and 17 C.F.R. § 240.10b-5).  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa.  This Court also has supplemental jurisdiction over the related claims asserted herein pursuant to 28 U.S.C. § 1367

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the acts and occurrences that gave rise to this dispute occurred substantially in New York, New York.

## FACTUAL ALLEGATIONS

### Mr. Vekaria's Hiring at MThree and MThree's Agreement to Mr. Vekaria's MThree Stock

22.     Mr. Vekaria began employment at MThree on or about January 7, 2019, as a salesperson in MThree's sales department for North America.

23.     On or about January 7, 2019, Mr. Vekaria and MThree entered into the Employment Agreement.  The Employment Agreement was signed by Mr. Vekaria and by Mr. Seymour on behalf of MThree.

24.     Pursuant to the Employment Agreement, MThree agreed to provide Mr. Vekaria with the Initial Stock, effectively immediately upon the execution of the Employment Agreement.  The Initial Stock comprises an immediate, fully vested stock issuance comprising 1% of the fully diluted capital stock of MThree.

25.     In addition, pursuant to the Employment Agreement, MThree agreed to provide Mr. Vekaria with the Additional Stock, comprising an additional 2% of the fully diluted capital stock of MThree, which was to be issued to Mr. Vekaria immediately upon an acquisition of MThree, or otherwise in 1% increments upon the first and second anniversaries of Mr. Vekaria's employment – January 7, 2020, and January 7, 2021, respectively.

26.     Each of Messrs. Headley, Town, Seymour, and Chapman were employed by and/or agents of MThree at all relevant times leading up to, and subsequent to, Mr. Vekaria's hiring by MThree.  Each of Headley, Town, Seymour, and Chapman were actively involved in the hiring of Mr. Vekaria.

27.     Prior to the execution of the Employment Agreement, Mr. Vekaria engaged in extensive pre-employment discussions and negotiations with each of Messrs. Headley, Town, Seymour, and Chapman.  These pre-employment discussions stretched over several months. During such time, Mr. Vekaria was employed by J.P. Morgan.

28.     At numerous times during these pre-employment discussions, Mr. Vekaria informed MThree and each of Messrs. Headley, Town, Seymour, and Chapman that, if he left his then-current employment with J.P. Morgan, Mr. Vekaria would lose a very substantial amount of

equity-based compensation from J.P. Morgan, and that Mr. Vekaria would not leave his employment with J.P. Morgan and join MThree unless he received a meaningful equity position in MThree.

29.     On January 2, 2019, Mr. Headley, the Chief Executive Officer of MThree, sent an email to Mr. Vekaria, which was copied to Mr. Seymour.  In such email, Mr. Headley confirmed and represented that Mr. Vekaria would receive the MThree Stock, inclusive of the Initial Stock vesting immediately and fully paid by MThree upon Mr. Vekaria's hiring, and directed Mr. Seymour to prepare the Employment Agreement to reflect such representations and understandings.  Mr. Seymour also communicated directly with Mr. Vekaria regarding the terms of the Employment Agreement, including specifically as to the equity that Mr. Vekaria needed to receive in order to join MThree.

30.     Upon information and belief, each of Messrs. Headley, Town, Seymour, and Chapman authored, contributed to, and/or approved the terms of the Employment Agreement, and each of Messrs. Headley, Town, Seymour, and Chapman is responsible for the content of the Employment Agreement, including MThree's representation that, as of the date of Mr. Vekaria's hiring, Mr. Vekaria was the owner of the Initial Stock and entitled to the Additional Stock, comprising a total of 3% of the fully diluted equity in MThree.

**MThree Completes the Putative Wiley Acquisition**

31.     On January 1, 2020, MThree was putatively acquired by Wiley.

32.     Upon information and belief, immediately prior to the Putative Wiley Acquisition, ECI was the majority shareholder of MThree, and each of Messrs. Headley, Town, Seymour, and Chapman held stock, or comparable equity rights or interest, in MThree.

33.     Wiley is a publicly traded company listed on the New York Stock Exchange under the ticker symbol JW.A.  As a publicly traded company, Wiley is required to make regular reports to the SEC.

34.     On or about January 6, 2020, Wiley issued a press release, which states, in relevant part, that Wiley "has acquired mthree from ECI Partners LLP" and that "[u]nder the terms of the agreement, mthree shareholders received approximately $129 million (£98 million) in cash at January 1 closing."  A copy of such press release was filed with the SEC pursuant to a Form 8-K filing on January 6, 2020.

35.     In its Form 10-Q Quarterly Report for the period ending January 31, 2020, as filed with the SEC on March 6, 2020, Wiley states as follows:

mthree

On January 1, 2020, we completed the acquisition of 100% of the outstanding stock of mthree.  mthree is a rapidly growing education services provider that addresses the IT skills gap by finding, training and placing job-ready technology talent in roles with leading corporations worldwide.  Its results of operations are included in our Education Services segment.

The preliminary fair value of the consideration transferred at the acquisition date was $128.6 million (£97.5 million) which included $122.2 million of cash and $6.4 million of additional consideration to be paid after the acquisition date.  We financed the payment of the cash consideration primarily through borrowings under our Amended and Restated RCA (as defined below in Note 15, "Debt and Available Credit Facilities") and using cash on hand.  The fair value of the cash consideration transferred including those amounts paid after the acquisition date, net of $2.2 million of cash acquired was approximately $126.3 million.

36.     Wiley has made subsequent reports to the SEC consisting of substantially the same information with regard to the Putative Wiley Acquisition and the purchase price of approximately $128.6 million.  Based on this purchase price, Mr. Vekaria's MThree Stock, comprising a 3% ownership interest, is valued at approximately $3,858,000.00.

37.     On its website, ECI has touted that that it substantially profited from the Putative Wiley Acquisition, representing that ECI made a "2.7x" return on its "sale to Wiley."  *See* https://www.ecipartners.com/our-companies/mthree.

38.     Upon information and belief, Messrs. Headley, Town, Seymour, and Chapman held stock or stock interest in MThree, and received compensation on account of their stock or stock interest in connection with the Putative Wiley Transaction.

39.     In conjunction with the Putative Wiley Acquisition, Mr. Vekaria received a transaction bonus, which MThree awarded to him and many other employees of MThree, regardless of whether or not they held stock ownership in MThree.  In connection with such transaction bonus, Mr. Vekaria received a letter from MThree, stating that the transaction bonus was made "in recognition of [Mr. Vekaria's] support to [MThree] to date" and for Mr. Vekaria's "support and efforts in helping to make this transaction a success."  This letter said nothing at all about Mr. Vekaria's stock in MThree, nor make any mention at all that the transaction bonus was somehow related to or consideration for Mr. Vekaria's MThree Stock.  Indeed, the transaction bonus was given to Mr. Vekaria and other MThree employees for the very reasons stated in the letter – for their "support and efforts in helping to make this transaction a success" – and had nothing to do with stock.

40.     At no time did Mr. Vekaria agree to sell or transfer his equity in MThree to Wiley in conjunction with the Putative Wiley Acquisition, nor did Mr. Vekaria sign any documents to any such effect.

41.     Following the closing of the Putative Wiley Acquisition, Mr. Vekaria remained an employee of MThree until April 2020.  Upon his separation of employment, Mr. Vekaria had spent approximately one year and three months of continuous employment at MThree.

**Defendants' Improper Denial of Mr. Vekaria's MThree Stock**

42.     Subsequent to his separation of employment with MThree, Mr. Vekaria sought to clarify the status of his MThree Stock with MThree and Wiley as well as certain tax issues resulting from the transaction.  These discussions were escalated to senior members of MThree's and Wiley's management team, and included Mr. Town and Mr. Seymour, who remained employed with MThree subsequent to the Putative Wiley Acquisition.

43.     Over the course of these discussions, Wiley and MThree took the position that Mr. Vekaria was somehow not a stockholder, and that Mr. Vekaria was not entitled to any compensation on account of his MThree Stock.  In fact, Steven Sklar, Vice President of Global Tax at Wiley, wrote in email correspondence where Mr. Town was copied that Mr. Vekaria's claims were based in "fraud or fraudulent inducement" and that Mr. Vekaria should "look to sellers of mthree to address these claims."  This email correspondence effectively serves as an admission that Mr. Vekaria was misled by the "sellers," which include Mr. Town.   In turn, ECI – the apparent majority stockholder of MThree prior to the putative acquisition – has rejected any claims of liability whatsoever on account of Mr. Vekaria's MThree Stock.  This is reflective of an overall pattern of conduct where various parties have acted in bad faith and refused to resolve these matters despite there being no doubt that Mr. Vekaria is entitled to his MThree Stock.

44.     Upon information and belief, Wiley, MThree, and ECI's efforts in denying his equity are a contrivance in order to avoid known liabilities.  Mr. Vekaria bases this belief on the fact that Defendants MThree, ECI, Wiley, Mr. Town, and Mr. Seymour have all been involved in these discussions with regard to the certification or liquidation of Mr. Vekaria's equity, and are fully aware of the existence of the Employment Agreement and its language giving effect to Mr.

Vekaria's MThree Stock.  Two of those individuals – Messrs. Town and Seymour – remain employed at MThree.  As to Mr. Seymour, he has not only been MThree's Director of Human Resources at all relevant times prior to Mr. Vekaria's hiring to the present, but Mr. Seymour was also the signatory to the Employment Agreement on behalf of MThree.  Such ludicrous denials of Mr. Vekaria's ownership of his equity are part of a series of shameless efforts to deny its obvious existence.

45.      To date, Mr. Vekaria has not received a single stock certificate or any compensation whatsoever on account of his MThree Stock.

46.      Mr. Vekaria has held constructive ownership of the MThree Stock since he properly executed the Employment Agreement.  Defendants' improper refusal to acknowledge and/or issue the shares does not invalidate his ownership.  Nor does the Putative Wiley Acquisition, as Mr. Vekaria has never transferred any of his stock in MThree at any time. Indeed, MThree's and Wiley's naked assertions that Wiley has somehow acquired "100%" of MThree's stock have been, and continue to be, misleading and untrue.

## CAUSES OF ACTION

### COUNT ONE
### Breach of Contract Against MThree

47.      Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

48.      Plaintiff and MThree are parties to the Employment Agreement.  The Employment Agreement comprises a binding contract.

49.      Plaintiff has fully performed under the contract by, without limitation, providing employment services to MThree.

50.     Pursuant to the Employment Agreement, Mr. Vekaria had a contractual right to receive shares of MThree's stock consisting of the Initial Stock, a fully paid and vested stock issuance comprising 1% of the fully diluted capital stock of MThree, effective immediately upon the signing of the Employment Agreement, and the Additional Stock, an additional 2% of the fully diluted capital stock of MThree, immediately upon an acquisition of MThree, or otherwise in 1% increments upon the first and second anniversaries of Mr. Vekaria's employment.  MThree had a duty to issue the stock certificates related to the shares.

51.     MThree has breached its contractual duty by refusing to issue the stock certificates related to the MThree Stock consisting of the Initial Stock and Additional Stock.

52.     Mr. Vekaria has incurred damages directly and proximately caused by MThree's breach of contract.

## COUNT TWO
### Breach of Implied Covenant of Good Faith and Fair Dealing Against MThree

53.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

54.     Plaintiff and MThree have a contractual relationship for Plaintiff's employment services.  Such contract, like every contract in New York, requires that the parties not act unreasonably or in bad faith to destroy or injure the other party's fruits under the contracts.  The duties of good faith and fair dealing encompass any promises which a reasonable person in the position of the promise would be justified in understanding were included in the contracts.

55.     In connection with Plaintiff's contract with MThree, there was a specific and implied contractual obligation on the part of MThree to compensate Plaintiff for Plaintiff's work and services, and to allow Plaintiff the benefits, rights, and value of Mr. Vekaria's MThree Stock, which was a material inducement for his agreement to join MThree.

56.     MThree has breached the covenant of good faith and fair dealing by acting in bad faith to deny both the issuance of Mr. Vekaria's stock and the value of Mr. Vekaria's stock, which has deprived Plaintiff the fruits of the contract to which he is entitled.

57.     As a direct and proximate result of MThree's breaches of the covenant of good faith and fair dealing, Plaintiff has suffered damages in an amount to be proven at trial, including, without limitation, exemplary damages.

## COUNT THREE
### Violations of New York Labor Law – Unpaid Wages Against All Defendants

58.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

59.     Plaintiff was employed by MThree from January 7, 2019 to April 2010 as a salesperson.  As such, Plaintiff is an "employee" pursuant to the provisions of New York Labor Law § 651.

60.     Each of the Defendants in this action is an "employer" within the meaning of New York Labor Law §§ 190, 651, 652, and supporting New York State Department of Labor Regulations, and/or responsible for the payment of wages of MThree's employees pursuant to Business Corporation Law § 630 .  Specifically, and without limiting the generality of the foregoing, MThree was Plaintiff's direct employer, and upon information and belief, each of ECI, Wiley, Messrs. Headley, Town, Seymour, and Chapman were among the ten largest shareholders of MThree during the period of Plaintiff's employment with MThree.

61.     Pursuant to Articles Six and Nineteen of the New York Labor Law, employees, such as Plaintiff, are protected from the nonpayment of wages and other improper employment practices.

62.     Defendants failed to pay Plaintiff wages to which Plaintiff is entitled under the New York Labor Law.

63.     Specifically, and without limiting the generality of the foregoing paragraph, MThree's failure to issue Mr. Vekaria's MThree Stock, inclusive of the fully paid and vested Initial Stock upon his hiring, and the subsequent Additional Stock, are failures to pay Mr. Vekaria his wages for his service as a MThree employee.

64.     Defendants willfully violated the Labor Law by knowingly and intentionally failing to pay Mr. Vekaria's wages.

65.     Due to Defendants' willful violations of the Labor Law, Plaintiff is entitled to recover his unpaid wages in an amount to be determined at trial, attorneys' fees, and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

## COUNT FOUR
**Violations of New York Labor Law – Unlawful Deductions Against All Defendants**

66.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

67.     New York Labor Law § 193 prohibits the making of any deductions from the wages of an employee unless permitted by law or authorized by the employee for specific, enumerated items.

68.     Defendants have violated the provisions of Labor Law § 193 by making unlawful deductions from Plaintiff's wages.

69.     Specifically, and without limiting the generality of the foregoing paragraph, Defendants' failure to pay Plaintiff's earned wages, including Mr. Vekaria's MThree Stock, inclusive of the fully paid and vested Initial Stock upon his hiring, and the subsequent Additional Stock, comprise a violation of Labor Law § 193 as an unlawful deduction from Mr. Vekaria's

wages.  *See, e.g., Danusiar v. Auditchain USA, Inc.*, 2020 WL 6126378, at *8-9 (S.D.N.Y. Oct. 8, 2020).

70.     Defendants willfully violated the Labor Law by knowingly and intentionally making unlawful deductions from Plaintiff's wages.

71.     Due to Defendants' willful violations of the Labor Law, Plaintiff is entitled to recover his unpaid wages in an amount to be determined at trial, attorneys' fees, and costs of the action, liquidated damages, and pre-judgment and post-judgment interest.

### COUNT FIVE
### Fraudulent Inducement Against MThree and Messrs. Headley, Town, Seymour, and Chapman

72.     Plaintiff restates the allegations contained in paragraphs 1 through 46 above as if fully set forth herein; provided, however, that this claim is hereby pleaded in the alternative in the event that the Court were to find that Mr. Vekaria somehow does not have a contractual right to the MThree Stock.

73.     As described above, MThree and Messrs. Headley, Town, Seymour, and Chapman (the "MThree Defendants") participated in employment negotiations to induce Mr. Vekaria to leave his then-current employment with J.P. Morgan and join MThree.

74.     The MThree Defendants, for the purposes of inducing Mr. Vekaria to join MThree as an employee and retain Mr. Vekaria's employment after his hiring, made material misrepresentations of facts, including representing that Mr. Vekaria was an equity holder in MThree and owned the MThree Stock upon his hiring.

75.     The MThree Defendants knew their representations were untrue or made such representations with reckless indifference to the truth or in a manner not warranted by the information known to the MThree Defendants.

76.     The MThree Defendants purposely made these representations to induce reliance by Mr. Vekaria to join MThree as an employee and continue his employment with MThree.

77.     Mr. Vekaria reasonably and justifiably relied upon the MThree Defendants' representations, as each of Messrs. Headley, Town, Seymour, and Chapman were members of MThree's management, and there was no reason for Mr. Vekaria not to rely upon the representations that they made with regard to MThree and Mr. Vekaria's equity.

78.     Mr. Vekaria has incurred damages as a direct result of his reliance on the MThree Defendants' untrue representations.

## COUNT SIX
### Negligent Misrepresentation Against MThree and Messrs. Headley, Town, Seymour, and Chapman

79.     Plaintiff restates the allegations contained in the paragraphs 1 through 46 above as if fully set forth herein; provided, however, that this claim is hereby pleaded in the alternative in the event that the Court were to find that Mr. Vekaria somehow does not have a contractual right to the MThree Stock.

80.     Due to their involvement in offering securities to Mr. Vekaria as a vehicle to solicit Mr. Vekaria's employment, and their superior knowledge regarding the affairs of MThree, the MThree Defendants had a particular duty to provide correct and accurate information to Mr. Vekaria with regard to MThree and Mr. Vekaria's MThree Stock.

81.     The MThree Defendants made false representations and made material omissions of information to Mr. Vekaria, including, without limitation, that Mr. Vekaria was the owner of his MThree Stock.  The MThree Defendants should have known that such false representations and material omissions were incorrect by virtue of their management positions and superior knowledge.

82.     The information supplied in such representations or omitted to be provided by the MThree Defendants was known by them to be desired by Mr. Vekaria for a serious purpose, as the MThree Stock was a material and essential component of Mr. Vekaria's decision to leave his employment with J.P. Morgan, where he would be losing substantial compensation, in order to join MThree.

83.     The MThree Defendants intended that Mr. Vekaria rely on their representations in order to solicit and retain Mr. Vekaria as an employee at MThree.

84.     Mr. Vekaria reasonably and justifiably relied on the false information and absence of material information from the MThree Defendants.

85.     Mr. Vekaria has incurred damages as a direct result of the MThree Defendants' conduct comprising negligent misrepresentation.

## COUNT SEVEN
### Violations of Securities Exchange Act and Rule 10b-5 Against MThree and Messrs. Headley, Town, Seymour, and Chapman

86.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

87.     As described above, the MThree Defendants participated in negotiations for Mr. Vekaria's receipt of the MThree Stock in connection with his agreement to become an employee of MThree.  Such negotiations, and the representations made by such MThree Defendants, were "in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5.

88.     The MThree Defendants, for the purposes of inducing Plaintiff to leave his then-current employment and join MThree, materially participated in making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

89.     During these negotiations, and in connection with the purchase or sale of Mr. Vekaria's equity, the MThree Defendants knowingly or recklessly employed devices and schemes to make untrue statements and omit material facts.  These efforts included, without limitation, the representations made by Mr. Headley in email correspondence that Mr. Vekaria would be entitled to receive the MThree Stock if Mr. Vekaria joined MThree as an employee, and the very terms of the Employment Agreement confirming such understandings, in which each of the Defendants materially participated, and Mr. Seymour executed on behalf of MThree.

90.     In reliance on the foregoing material misrepresentations and omissions by the MThree Defendants, Plaintiff was induced to purchase the securities by leaving his then-current employment and joining MThree.

91.     Mr. Vekaria did not discover these misrepresentations and omissions until 2021.

92.     The MThree Defendants knew or had reasonable grounds to believe that these statements and omissions were false and misleading.   The MThree Defendants acted knowingly or severely recklessly in making untrue statements of material facts or omitting material facts.

93.     By reason of the foregoing, the MThree Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 thereunder.

94.     As a direct and proximate result of the unlawful conduct of the MThree Defendants, Plaintiff has been damaged.

## COUNT EIGHT
**Interference with Contractual Relations Against All Defendants Except MThree**

95.     Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein

96.    Each of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman improperly interfered with Mr. Vekaria's contractual agreement with MThree under New York law.

97.    There is a valid and enforceable contract between Mr. Vekaria and MThree for Mr. Vekaria's MThree Stock.

98.    Each of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman did know or should have known of Mr. Vekaria's contractual MThree Stock.  ECI and Messrs. Headley, Town, Seymour, and Chapman were specifically involved in the negotiation and approval of Mr. Vekaria's Employment Agreement.  Upon information and belief, Wiley knew, or should have known about, the existence of Mr. Vekaria's MThree Stock.

99.    MThree has breached its contract with Mr. Vekaria.

100.    Each of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman have acted intentionally to procure the breach of Mr. Vekaria's contract with MThree, including, but not limited to, denying his equity in MThree or offer any compensation whatsoever in connection with his equity.

101.    This interference was outside the scope of the Defendant's proper authority and personally benefited each of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman, each of whom, upon information and belief, are believed to have been, or are currently, stockholders in MThree.  By refusing to recognize Mr. Vekaria's MThree Stock, the Defendants have accrued additional value with regard to their individual stock interest without legitimate basis to the detriment of Mr. Vekaria.  Such interference was performed with malice and impaired Plaintiff for the personal profit of each of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman.

102.    Mr. Vekaria has incurred damages directly and proximately caused by the actions of Wiley, ECI, and Messrs. Headley, Town, Seymour, and Chapman in interfering and causing MThree to breach its contract with Mr. Vekaria.

**COUNT NINE**
**Conversion Against All Defendants**

103.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

104.    Pursuant to the Employment Agreement, Mr. Vekaria is an equity owner in MThree.

105.    Defendants acted in a manner inconsistent with Mr. Vekaria's equity ownership interests in MThree by preventing Mr. Vekaria from personally and individually reaping the benefit of his ownership.

106.    In particular, by acting to deprive Mr. Vekaria of his equity interest or any payment in connection with the Putative Wiley Acquisition on account of his equity interest, Defendants deprived Mr. Vekaria from the full benefits of his ownership interest.

107.    Mr. Vekaria has incurred damages directly and proximately caused by Defendants' actions.

**COUNT TEN**
**Declaratory Judgment**
**Ownership of Equity and Recission of All Putative Transfers**

108.    Plaintiff restates the allegations contained in the paragraphs above as if fully set forth herein.

109.    This is an action for declaratory judgment as to Mr. Vekaria's ownership of equity in MThree.  This action arises under the New York declaratory judgment law, CPLR § 3001. There is an actual controversy on this issue as Defendants have erroneously alleged that Mr.

Vekaria does not have equity rights in MThree.  This has included, without limitation, public filings made by Wiley to the SEC purporting that Wiley is the owner of 100% of the stock of MThree, which is not the case.

110.     Mr. Vekaria requests a declaration that he has at all relevant times owned and continues to own the MThree Stock comprising 3% of the fully diluted stock ownership in MThree; and (b) the recission of any and all transactions, inclusive of the Putative Wiley Acquisition, that have attempted to transfer Mr. Vekaria's MThree Stock, none of which were approved or authorized by Mr. Vekaria.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jitendra Vekaria prays that this Court grant him the following relief:

1. That judgment be entered for Plaintiff on his Complaint.

2. That Plaintiff be awarded damages, punitive damages, interest, and costs.

3. That Plaintiff be granted declaratory judgment as to Count Eight.

4. That attorneys' fees be assessed against Defendants on the basis of Plaintiff's claims.

5. That the Court grant Plaintiff statutory prejudgment interest, and such interest accruing from the time of relevant breaches.

6. That the Court grant Plaintiff such other and further relief as it considers just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff Jitendra Vekaria demands a trial by jury on all claims so triable.

DATED: January 4, 2023

Respectfully submitted,

CAPELL BARNETT MATALON & SCHOENFELD LLP

By: _____

Travis M. Tatko (TT7349)
1385 Broadway, 12th Floor
New York, NY 10018
Phone: (212) 661-1144
Fax:    (888) 419-0650
TTatko@CBMSLaw.com