**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JITENDRA VEKARIA.<br><br>       Plaintiff,<br><br>       v.<br><br>MTHREE CORPORATE CONSULTING, LTD.,<br>JOHN WILEY & SONS, INC., ECI PARTNERS<br>LLP, ALEX HEADLEY, BENJAMIN TOWN,<br>THOMAS SEYMOUR, and RICHARD<br>CHAPMAN,<br><br>       Defendants. | Case No.: 1:22-cv-03197-JPC |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS ECI PARTNERS LLP AND RICHARD CHAPMAN**

**FAEGRE DRINKER BIDDLE & REATH LLP**
1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Tel: (212) 248-3140

*Attorneys for ECI Partners LLP, Richard Chapman*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

THE ALLEGATIONS OF THE COMPLAINT ............................................................. 3

LEGAL STANDARD ........................................................................................................ 5

ARGUMENT ...................................................................................................................... 6

I.       THE COURT SHOULD DISMISS PLAINTIFF'S FRAUDULENT INDUCEMENT, NEGLIGENT MISREPRESENTATION, CONVERSION, AND DECLARATORY JUDGMENT CLAIMS BECAUSE THEY ALL ARE IMPERMISSIBLY DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM AGAINST MTHREE ........................ 6

II.      PLAINTIFF FAILS TO STATE AN ACTIONABLE CLAIM AGAINST ECI OR MR. CHAPMAN UNDER NEW YORK'S LABOR LAW ................... 9

        A.      Neither ECI Nor Mr. Chapman Was Mr. Vekaria's Employer ................ 9

        B.      The Shares Allegedly Promised to Mr. Vekaria are not "Wages" .......... 12

III.     PLAINTIFF'S FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION CLAIMS AGAINST MR. CHAPMAN FAIL AS A MATTER OF LAW ................................................................................... 13

        A.      The Alleged Misrepresentations Are Promises of Future Conduct and are Therefore Not Actionable............................................................ 13

        B.      Mr. Vekaria has Failed to Specify Any Misrepresentations Made by Mr. Chapman ................................................................................... 14

        C.      Mr. Vekaria Lacks a Special Relationship with Mr. Chapman .............. 15

IV.     PLAINTIFF'S SECURITIES FRAUD CLAIM AGAINST MR. CHAPMAN IS TIME BARRED, MERITLESS, AND INADEQUATELY PLED............................................................................................................... 17

        A.      The Securities Fraud Claim is Untimely.................................................. 17

        B.      Mr. Vekaria is Not A "Purchaser" of Stock............................................ 18

        C.      Mr. Vekaria Fails to Plead Securities Fraud with Particularity .............. 19

V.      PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS UNDER THE ECONOMIC INTEREST DOCTRINE .................................................... 20

VI.     PLAINTIFF IS NOT ENTITLED TO RESCISSION OF THE
        ACQUISITION OF MTHREE AS REQUESTED IN HIS CLAIM FOR
        DECLARATORY JUDGMENT ......................................................................... 22

CONCLUSION..................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*,
   404 F.3d 566 (2d Cir. 2005)..................................................................................14

*Alves v. Affiliated Care of Putnam, Inc.*,
   No. 16-cv-1593 (KMK), 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022).................................11

*Ambac Assurance Corp. v. U.S. Bank National Association*,
   No. 21-70-cv, 2021 WL 6060710 (2d Cir. Dec 20, 2021).........................................8

*Ancile Invs. Co. Ltd. v. Archer Daniels Midland Co.*,
   784 F. Supp. 2d 296 (S.D.N.Y. 2011)..................................................................8

*Anschutz Corp. v. Merrill Lynch & Co.*,
   690 F.3d 98 (2d Cir. 2012)..................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................5, 6

*Beam v. Key Venture Cap. Corp.*,
   152 A.D.2d 825 (3d Dep't 1989)..........................................................................12

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..........................................................................................5

*Bencivenga & Co. v. Phyfe*,
   210 A.D.2d 22 (1st Dep't 1994) ..........................................................................13

*Bombardier Capital, Inc. v. Naske Air GmbH*,
   No. 02-cv-10176 (DLC), 2003 WL 22137989 (S.D.N.Y. Sept. 17, 2003)..........................15

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
   98 F.3d 13 (2d Cir. 1996) ....................................................................................7

*Camofi Master LDC v. College P'ship, Inc.*,
   452 F. Supp. 2d 462 (S.D.N.Y. 2006)....................................................................15

*Capricorn Invs. III, L.P. v. CoolBrands Intern., Inc.*,
   66 A.D.3d 409 (1st Dep't 2009) ..........................................................................14

*Cicero v. Intellor Grp., Inc.*,
   No. 18-cv-6934 (CJS), 2021 WL 1720810 (W.D.N.Y. Apr. 30, 2021).............................11

*Citibank, N.A. v. Itochu Intern., Inc.*,
   No. 01-cv-6007 (GBD), 2003 WL 1797847 (S.D.N.Y. Apr. 4, 2003) .............................15

*Clifton v. Vista Comput. Servs., LLC*,
    No. 01-cv-10206 (JSM), 2002 WL 1585550 (S.D.N.Y. July 16, 2002)..................................6

*Cohen v. Avanade*,
    874 F. Supp. 2d 315 (S.D.N.Y. 2012)....................................................................................16

*Command Cinema Corp. v. VCA Labs, Inc.*,
    464 F. Supp. 2d 191 (S.D.N.Y. 2006)..................................................................................7, 8

*Dubin v. E.F. Hutton Grp., Inc.*,
    695 F. Supp. 138 (S.D.N.Y. 1988)........................................................................................18

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*,
    309 F. Supp. 3d 89 (S.D.N.Y. 2018)......................................................................................8

*In re Elevator Antitrust Litig.*,
    502 F.3d 47 (2d Cir. 2007)......................................................................................................5

*Federal Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*,
    721 F. Supp. 2d 293 (S.D.N.Y. 2010).....................................................................................7

*Foster v. Churchill*,
    87 N.Y.2d 744 (1996)............................................................................................................20

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
    639 Fed. App'x 664 (2d Cir. 2016).......................................................................................17

*Gordon v. Dino De Laurentiis Corp.*,
    141 A.D.2d 435 (1st Dep't 1988) .........................................................................................14

*Gould Paper Corp. v. Madisen Corp.*,
    614 F. Supp. 2d 485 (S.D.N.Y. 2009).....................................................................................7

*Guiry v. Goldman, Sachs & Co.*,
    31 A.D.3d 70 (1st Dep't 2006) .............................................................................................12

*Hallet v. Stuart Dean Co.*,
    481 F. Supp. 3d 294 (S.D.N.Y. 2020)...................................................................................12

*Harris v. Mills*,
    572 F.3d 66 (2d Cir. 2009)......................................................................................................5

*Hoffenberg v. Hoffman & Pollok*,
    248 F. Supp. 2d 303 (S.D.N.Y. 2003)...................................................................................15

*Huer Huang v. Shanghai City Corp.*,
    459 F. Supp. 3d 580 (S.D.N.Y. 2020)...................................................................................10

*Int'l Bus. Mach. Corp. v. Martson*,
    37 F. Supp. 2d 613 (S.D.N.Y. 1999).......................................................12

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013).......................................................10

*Ixe Banco, S.A. v. MBNA Am. Bank, N.A.*,
    No. 07-cv-0432 (LAP), 2008 WL 650403 (S.D.N.Y. Mar. 7, 2008)..................7, 15

*Jiao v. Shi Ya Chen*,
    2007 WL 4944767 (S.D.N.Y. March 30, 2007) ........................................9

*Kachkovskiy v. Khlebopros*,
    164 A.D.3d 568 (2d Dep't 2018) .......................................................22

*Karsch v. Blink Health, Ltd.*,
    No. 17-cv-3880 (VM), 2021 WL 2075716 (S.D.N.Y. May 24, 2021) ...................7

*Koch v. Christie's Intern. PLC*,
    699 F.3d 141 (2d Cir. 2012).......................................................17

*Kuhns v. Ledger*,
    202 F. Supp. 3d 433 (S.D.N.Y. 2016)............................................20, 21

*Kwon v. Yun*,
    606 F. Supp. 2d 344 (S.D.N.Y. 2009).......................................................16

*Lankau v. Luxoft Holdings, Inc.*,
    266 F. Supp. 3d 666 (S.D.N.Y. 2017)............................................18, 19

*Lerner v. Credit Suisse Sec. (USA) LLC*,
    193 A.D.3d 649 (1st Dep't 2021).......................................................12

*Levitin v. PaineWebber, Inc.*,
    933 F. Supp. 325 (S.D.N.Y. 1996).......................................................18

*Lim v. Radish Media, Inc.*,
    No. 21-cv-4379 (ER), 2022 WL 2292768 (S.D.N.Y. June 24, 2022) ...................8

*Lindsey v. Winkler*,
    277 N.Y.S.2d 768 (Dist. Ct. Nassau 1967)........................................11, 12

*Margrove Inc. v. Lincoln First Bank of Rochester*,
    54 A.D.2d 1105 (4th Dep't 1976).......................................................14

*Maricultura Del Norte v. World Business Cap., Inc.*,
    159 F. Supp. 3d 368 (S.D.N.Y. 2015).......................................................7

*Murray v. Xerox Corp.*,
    811 F.2d 118 (2d Cir. 1987).................................................................14

*Newman v. Mor*,
    No. 08-cv-658 (RJD) (CLP), 2009 WL 890552 (E.D.N.Y. Mar. 31, 2009)...........................8

*Padilla v. Manlapaz*,
    643 F. Supp. 2d 302 (E.D.N.Y. 2009) .......................................................9

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)................................................................20

*Pension Fund v. Neshoma Orchestra and Singers, Inc.*,
    No. 17-cv-2640 (JKG), 2018 WL 2338764 (S.D.N.Y. May 23, 2018) ..............................14

*Pope v. Halloran*,
    76 A.D.2d 770 (1st Dep't 1980) ...........................................................12

*Rather v. CBS Corp.*,
    68 A.D.3d 49 (1st Dep't 2009) ............................................................21

*Ruha v. Guior*,
    277 A.D.2d 116 (1st Dep't 2000) ..........................................................21

*Savage v. Galaxy Media & Mktg. Corp.*,
    No. 11-cv-6791 (NRB), 2012 WL 2681423 (S.D.N.Y. July 5, 2012)...............................20

*Sheth v. New York Life Ins. Co.*,
    273 A.D.2d 72 (1st Dep't 2000) ...........................................................15

*Strasser v. Prudential Sec., Inc.*,
    218 A.D.2d 526 (1st Dep't 1995) .......................................................13, 21

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
    874 F. Supp. 2d 328 (S.D.N.Y. 2012).......................................................22

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).......................................................................19

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021)...................................................14, 15

*U.S. Bank. Nat'l Assoc. v. BFPRU I, LLC*,
    230 F. Supp. 3d 253 (S.D.N.Y. 2017).......................................................16

*Vasto v. Credico (USA) LLC*,
    No. 15-cv-9298 (PAE), 2016 WL 4147241 (S.D.N.Y. Aug. 3, 2016) .............................10

*Wallace v. BMO Nesbitt Burns Corp.*,
    No. 01-cv-7998 (JGK), 2002 WL 32063120 (S.D.N.Y. Nov. 25, 2002)................................12

*West Virginia Inv. Mgmt. Bd. v. Doral Fin. Corp.*,
    344 Fed App'x 717 (2d Cir. 2009)........................................................................19

*Wing v. East River Chinese Rest.*,
    884 F. Supp. 663 (E.D.N.Y. 1995) .......................................................................11

*WM Bang LLC v. Travelers Cas. Ins. Co.*,
    559 F. Supp. 3d 225 (S.D.N.Y. 2021).....................................................................8

**Statutes, Rules & Regulations**

17 C.F.R. § 240.10b-5..............................................................................2, 18, 19

15 U.S.C. § 78j....................................................................................18

28 U.S.C. § 1658(b) .................................................................................17

Fed. R. Civ. P. 9(b) .........................................................................2, 14, 19, 20

Fed. R. Civ. P. 12(b)(6).......................................................................1, 5, 20

N.Y. Bus. Corp. Law § 630 .........................................................................10, 11

N.Y. Labor Law § 190 ...............................................................................9,12

Defendants ECI Partners LLP ("ECI") and Richard Chapman respectfully submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice all claims asserted against them by Plaintiff Jitendra Vekaria ("Plaintiff" or "Mr. Vekaria").

## PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint (the "Complaint" or the "FAC") is a classic example of litigation overreach.  Based solely on the failure of his former employer—Defendant MThree Corporate Consulting, Ltd. ("MThree")—to grant him shares of company stock allegedly promised in his 2019 employment agreement, Mr. Vekaria asserts no fewer than ten causes of action, against not only MThree but also five of its alleged shareholders, officers and/or directors (both former and current), plus its parent company.  By necessity, Mr. Vekaria's primary cause of action for breach of his employment agreement names only MThree as a defendant (because MThree is the only party that allegedly promised to give him shares).  In order to rope in the other defendants, Mr. Vekaria asserts violations of both state and federal statutes (that do not apply here) plus a host of common law tort claims (that in all but one case duplicate his breach of contract claim against MThree).

Plaintiff's claims against ECI and Mr. Chapman exemplify this blunderbuss approach.  The only substantive allegations specific to ECI and Mr. Chapman are that they held shares of MThree stock before Defendant John Wiley & Sons ("Wiley") acquired MThree, and that Mr. Chapman (a Partner at ECI) participated in MThree's employment negotiations with Plaintiff.[1]  Based on these innocuous facts, Plaintiff asserts causes of action against either or both of ECI and Mr. Chapman

_____

[1] Although Plaintiff alleges otherwise, ECI did not hold any shares of MThree stock.  Rather, the shares were held by investment funds managed by ECI.  Nor did ECI's funds or Mr. Chapman hold a majority of MThree shares (individually or together).

for violations of New York's Labor Law (Counts Three and Four), fraudulent inducement (Count Five), negligent misrepresentation (Count Six), securities fraud (Count Seven), tortious interference with his employment contract (Count Eight), conversion (Count Nine), and declaratory judgment (Count Ten).[2]   None of these claims states a viable cause of action against ECI or Mr. Chapman:

*First*, four of Mr. Vekaria's claims (for fraudulent inducement, negligent misrepresentation, conversion, and declaratory judgment) must be dismissed because they all are impermissibly duplicative of his breach of contract claim against MThree (which MThree has not moved to dismiss).

*Second*, Mr. Vekaria's claims for violations of New York's Labor Law fail because, under the governing provisions of that statute, neither ECI nor Mr. Chapman was Mr. Vekaria's "employer," and the shares MThree allegedly promised to him are not "wages."

*Third,* Mr. Vekaria's claims for fraudulent inducement and negligent misrepresentation against Mr. Chapman fail because his alleged "misrepresentations" concerned future conduct rather than present fact.  In addition, Mr. Vekaria fails to specify what Mr. Chapman actually said to him (as required by New York law and Rule 9(b)), and Plaintiff's allegations confirm he did not have the "special relationship" with Mr. Chapman required for a negligent misrepresentation claim.

*Fourth*, Mr. Vekaria's securities fraud claim fails because:  (i) it is time barred; (ii) Mr. Vekaria is not a "purchaser" of MThree's stock, as required under both the Securities Exchange Act and Rule 10b-5, and (iii) it is not pled with the specificity required by Rule 9(b) or the Private Securities Litigation Reform Act.

---

[2] ECI is not named as a Defendant on Plaintiff's fraudulent inducement, negligent misrepresentation, and securities fraud claims (Counts Five through Seven).

***Fifth***, Mr. Vekaria's tortious interference claim fails based on his repeated allegation that ECI and Mr. Chapman's procurement of MThree's breach was economically motivated.

***Sixth***, and finally, Mr. Vekaria is not entitled to a declaratory judgment rescinding Wiley's acquisition of MThree because the alleged harm he suffered (the failure to receive compensation for the shares allegedly promised to him) can be remedied entirely by money damages.

Defendants identified all of these issues prior to Mr. Vekaria filing his First Amended Complaint. Yet Mr. Vekaria made no effort to address them when he amended his original pleading.  On that basis, the Court should dismiss all of Mr. Vekaria's claims against ECI and Mr. Chapman with prejudice.

## THE ALLEGATIONS OF THE COMPLAINT

Plaintiff alleges that he was hired as a salesperson by MThree on or about January 7, 2019. (FAC, Dkt.  63, ¶ 22).  In his employment agreement (which Mr. Vekaria does not attach to the Complaint), MThree supposedly agreed to provide Mr. Vekaria with "Initial Stock," comprising 1% of the fully diluted capital stock of MThree, immediately upon the execution of the employment agreement.  (*Id.* ¶ 24.)  MThree allegedly failed to issue the Initial Stock when Mr. Vekaria was hired or thereafter.  (*Id.* ¶ 45.)  MThree also supposedly promised in the employment agreement to provide Mr. Vekaria with "Additional Stock," comprised of an additional 2% of the company's shares: (i) immediately upon the acquisition of MThree, or (ii) in 1% increments on the first and second anniversaries of Mr. Vekaria's employment. (*Id.* ¶ 25.) Mr. Vekaria alleges that MThree was required to but failed to provide the Additional Stock to him when Wiley acquired MThree on January 1, 2020, instead paying Mr. Vekaria a "transaction bonus."  (*Id.* ¶¶ 39, 45.)

Despite MThree's alleged breach of his employment agreement at the beginning of 2020, Mr. Vekaria continued working for the company for an additional four months (*i.e.*, until April 2020).  (*Id.* ¶ 5.)  Mr. Vekaria did not commence this action until April 19, 2022.  (Dkt. 1.)

The Complaint's factual allegations concerning ECI consist only of the following:

- ECI—which, "upon information and belief," was the majority shareholder of MThree before its acquisition—was involved in the negotiations leading to MThree's hiring of Mr. Vekaria (FAC ¶¶ 2, 32);

- ECI reported a substantial profit from MThree's acquisition (*id.* ¶¶ 3, 37);

- Wiley issued a press release that it acquired MThree from ECI (*id.* ¶ 34);

- ECI has denied any liability to Mr. Vekaria (*id.* ¶¶ 43-44); and

- ECI, "upon information and belief," was among the ten largest shareholders of MThree (*id.* ¶ 60).

As to Mr. Chapman, Mr. Vekaria alleges that:

- Mr. Chapman was involved in the negotiations leading to MThree's hiring of Mr. Vekaria (*id.* ¶¶ 2, 26-28, 73, 98);

- Mr. Chapman was a stockholder of MThree and profited from its acquisition (*id.* ¶¶ 3, 32, 38, 101);

- Mr. Chapman is a partner of ECI and a former member of MThree's Board of Directors and part of MThree's "management" (*id.* ¶¶ 18, 77);

- "Upon information and belief," Mr. Chapman and the other individual defendants "authored, contributed to, and/or approved the terms of" Mr. Vekaria's employment agreement (*id.* ¶ 30); and

4

- Mr. Chapman, "upon information and belief," was among the ten largest shareholders of MThree (*id*. ¶ 60).

Based on the foregoing, Mr. Vekaria asserts seven causes of action against ECI and Mr. Chapman, collectively.

On July 22, 2022, defendants MThree and Wiley moved to dismiss Mr. Vekaria's original complaint based on arguments substantively identical to several of those included below. (Dkt. 31). On November 30, 2021, Mr. Chapman filed his pre-motion letter, repeating several of the arguments made in the MThree/Wiley motion and identifying additional deficiencies in Mr. Vekaria's complaint. (Dkt. 52). Mr. Vekaria's only response was to amend his pleading to name the correct ECI entity and remove the unaffiliated (and erroneously named) ECI Partners LLC. Mr. Vekaria did not revise any of his substantive allegations to address the issues raised by Defendants.

## LEGAL STANDARD

Rule 12(b)(6) requires the dismissal of a complaint if the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must assert "more than labels and conclusions" when providing "the grounds of his entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," *id.*, and there must be "enough facts to 'nudge plaintiffs' claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (alterations omitted) (quoting *Twombly*, 550 U.S. at 570). Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(*quoting Twombly*, 550 U.S. at 557).  Courts do not accept as true "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).  "[N]aked assertions devoid of further factual enhancement" do not suffice.  *Iqbal*, 556 U.S. at 678 (internal quotation marks and alterations omitted).

## ARGUMENT

**I.    THE COURT SHOULD DISMISS PLAINTIFF'S FRAUDULENT INDUCEMENT, NEGLIGENT MISREPRESENTATION, CONVERSION, AND DECLARATORY JUDGMENT CLAIMS BECAUSE THEY ALL ARE IMPERMISSIBLY DUPLICATIVE OF HIS BREACH OF CONTRACT CLAIM AGAINST MTHREE**

Four of Mr. Vekaria's seven claims against ECI and Mr. Chapman must be dismissed because they are duplicative of his breach of contract claim against MThree (which MThree has not moved to dismiss).  Specifically, Mr. Vekaria's claims against Mr. Chapman for fraudulent inducement (Count Five) and negligent misrepresentation (Count Six), as well as his claims against both ECI and Mr. Chapman for conversion (Count Nine) and declaratory judgment (Count Ten), are each based on the same factual allegations underlying Mr. Vekaria's claim for breach of his employment agreement.  (*See generally*, FAC.)

**Fraudulent Inducement**:  Mr. Vekaria's fraudulent inducement claim (Count Five) against Mr. Chapman is based on precisely the same allegations at issue in his breach of contract claim—*i.e.*, that Mr. Chapman and the other "MThree Defendants" falsely promised him that he would receive shares of stock upon being hired.  (FAC ¶¶ 73-75.)  Mr. Vekaria acknowledges this overlap, asserting both his fraudulent inducement and negligent misrepresentation claims "in the alternative in the event the Court were to find that Mr. Vekaria somehow does not have a contractual right to MThree stock." (FAC ¶¶ 72, 79; *see also id*. ¶ 8.)  But MThree did not move to dismiss the contract claim, and "it is black letter law in New York that a claim for common law fraud will not lie if the

claim is duplicative of a claim for breach of contract." *Clifton v. Vista Comput. Servs., LLC*, No. 01-cv-10206 (JSM), 2002 WL 1585550, at *2 (S.D.N.Y. July 16, 2002) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996)); *Maricultura Del Norte v. World Business Cap., Inc.*, 159 F. Supp. 3d 368, 377-78 (S.D.N.Y. 2015) (New York law prohibits litigants from pleading fraud as an alternative to breach of contract claim). The Court should dismiss Plaintiff's fraudulent inducement claim on that basis.

**Negligent Misrepresentation**: Similarly, "[a]ctions for . . . negligent misrepresentation will not lie when the factual underpinning for the claim is duplicative of a breach of contract claim." *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* No. 07-cv-0432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008); *see also Karsch v. Blink Health, Ltd.*, No. 17-cv-3880 (VM), 2021 WL 2075716, at *3 (S.D.N.Y. May 24, 2021) ("It is well established that a plaintiff bringing a breach-of-contract claim cannot also bring a claim for . . . negligent misrepresentation arising from the terms of the contract."). Again, Mr. Vekaria admits that his claim for negligent misrepresentation arises from promises made in his employment agreement. The two claims are therefore impermissibly duplicative and the negligent misrepresentation claim should be dismissed. *Federal Ins. Co. v. Distinguished Props. Umbrella Managers Inc.*, 721 F. Supp. 2d 293, 301 (S.D.N.Y. 2010) (negligent misrepresentation can only be maintained with a breach of contract action if "misrepresentation concerns a matter which is extraneous to the contract itself.") (internal citations and quotations omitted).

**Conversion**: "A conversion claim may only succeed if the party alleges a wrong that is distinct from any contractual obligations[.]" *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006). Therefore, "a plaintiff must show acts that were unlawful or wrongful as opposed to violations of contractual rights." *Id*. A claim for conversion is dismissible

even if plaintiff has adequately pled all of the elements of conversion if it is duplicative of a breach of contract claim. *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 493 (S.D.N.Y. 2009) (citing *Newman v. Mor*, No. 08-cv-658 (RJD) (CLP), 2009 WL 890552, at *4 (E.D.N.Y. Mar. 31, 2009)). Here, Mr. Vekaria's conversion claim against ECI and Mr. Chapman is premised upon the allegations that his employment agreement entitled him to stock that he did not receive. (*See* FAC ¶¶ 104-05.) Mr. Vekaria alleges no wrongful acts other than MThree's purported contractual breach. Thus, his conversion claim is impermissibly duplicative.[3]

**Declaratory Judgment**: "Courts generally reject a [declaratory judgment] claim when other claims in the suit will resolve the same issues." *EFG Bank AG, Cayman Branch v. AXA Equitable Life Ins. Co.*, 309 F. Supp. 3d 89, 99 (S.D.N.Y. 2018) (dismissing declaratory claim where duplicative of breach of contract claim). A declaratory judgment claim is duplicative of a breach of contract claim where it "seek[s] declaration of the same rights as determine[d] under the breach of contract claim." *Lim v. Radish Media, Inc.*, No. 21-cv-4379 (ER), 2022 WL 2292768, at *6 (S.D.N.Y. June 24, 2022); *see also WM Bang LLC v. Travelers Cas. Ins. Co.*, 559 F. Supp. 3d 225, 234 n.2 (S.D.N.Y. 2021). Put differently, "the declaratory judgment claim is duplicative of the breach of contract claim [where] both arise from the same facts and allege the same damages." *Radish Media*, 2022 WL 2292768 at * 6.

Here, Mr. Vekaria seeks a declaration that he owns equity in MThree pursuant to his employment agreement. (FAC ¶ 109-10.) This is the same premise for his breach of contract claim, in which he alleges that "[p]ursuant to the Employment Agreement, Mr. Vekaria had a contractual right to receive shares of MThree's stock consisting of the Initial Stock . . . and the

---

[3] The conversion claim also fails because Mr. Vekaria fails to allege that he ever had actual possession of the MThree stock. *See Ancile Invs. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 296, 312 (S.D.N.Y. 2011) (citing *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006)).

Additional Stock[.]" (*Id.* ¶ 50.) The claim is therefore duplicative. *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, No. 21-70-cv, 2021 WL 6060710, at \*5-6 (2d Cir. Dec 20, 2021) (affirming dismissal of declaratory judgment claim as duplicative of breach of contract claim where issues raised "necessarily had to be decided in the resolution of the breach of contract claims[.]").

## II. PLAINTIFF FAILS TO STATE AN ACTIONABLE CLAIM AGAINST ECI OR MR. CHAPMAN UNDER NEW YORK'S LABOR LAW

In Counts Three and Four, Mr. Vekaria alleges that ECI and Mr. Chapman violated the New York Labor Law by withholding wages and unlawfully deducting his wages. The claims fail as to both ECI and Mr. Chapman because, under the governing provisions of New York's Labor Law: (i) neither was Mr. Vekaria's employer; and (ii) the shares allegedly promised to him do not constitute wages.

### A. Neither ECI Nor Mr. Chapman Was Mr. Vekaria's Employer

Only employers are liable for unpaid wages and unlawful deductions under New York's Labor Law. Section 190 of the Labor Law defines "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y.L.L. § 190(3). "The Second Circuit uses an 'economic reality' test to determine whether a defendant is an employer under both federal and state law." *Padilla v. Manlapaz*, 643 F. Supp. 2d 302, 314-15 (E.D.N.Y. 2009) (citing *Jiao v. Shi Ya Chen*, No. 03-cv-0165 (DF), 2007 WL 4944767, at \*9 n.12 (S.D.N.Y. March 30, 2007) (recognizing that the "definition of employer" is similar under New York law and the federal Fair Labor Standards Act)). Under the economic reality test, courts consider whether "the defendant (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

employment records."  *Id.* (internal citations and quotations omitted). Whether ECI and Mr. Chapman are "employers" under the New York Labor Law is a question of law which can be resolved on a motion to dismiss.  *Id.* at 315.

Mr. Vekaria has failed to allege any facts suggesting that either ECI or Mr. Chapman was his "employer."  *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 589-90 (S.D.N.Y. 2020) (granting motion to dismiss where plaintiff failed to allege factual content relevant to economic reality test).  Nowhere does Mr. Vekaria allege that ECI or Mr. Chapman had the power to hire or fire him, that either defendant supervised him, that either defendant determined his pay, or that either defendant maintained MThree's employment records.  *See Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 WL 4147241, at *5, 9 (S.D.N.Y. Aug. 3, 2016) (dismissing claim where plaintiff failed to "plead facts that would permit the Court to plausibly infer that [defendant] exercised—or even possessed—formal or operational control over plaintiffs' employment conditions.").  Instead, Mr. Vekaria alleges he was "hired by MThree as a salesperson," and that "Mr. Vekaria and MThree entered into an employment agreement."  (FAC ¶ 2.)  Although Mr. Vekaria alleges (wrongly) that ECI and Mr. Chapman were majority shareholders of MThree (FAC ¶¶ 2, 32, 43), "ownership, or a stake in a company, is insufficient," to establish that a defendant is an "employer" under New York Labor Law.  *Vasto*, 2016 WL 4147241, at *5, 9 (quoting *Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir.  2013)).

Recognizing that neither ECI nor Mr. Chapman was his employer, Mr. Vekaria seeks to hold them "jointly and severally liable" pursuant to New York Business Corporations Law § 630, which renders the ten largest shareholders of non-public companies liable for all unpaid wages and salaries due to a company's employees.[4]  (FAC ¶¶ 7, 60).  But Section 630 does not permit Mr.

---

[4] Section 630(a) provides:

Vekaria to assert a claim against ECI or Mr. Chapman prior to obtaining a judgment against MThree. "By the explicit language of the statute, the personal liability of the ten largest shareholders of a corporation is not only contingent on a judgment against the corporation for employee compensation, but is the subject of a separate action commenced within 90 days of the judgment against the corporation." *Wing v. East River Chinese Rest.*, 884 F. Supp. 663, 668 (E.D.N.Y. 1995); *see also Alves v. Affiliated Care of Putnam, Inc.*, No. 16-cv-1593 (KMK), 2022 WL 1002817, at *15 (S.D.N.Y. Mar. 30, 2022) (dismissing action where plaintiff had not secured judgment for unpaid wages against corporation); *Cicero v. Intellor Grp., Inc.*, No. 18-cv-6934 (CJS), 2021 WL 1720810, at *6 (W.D.N.Y. Apr. 30, 2021) ("[A] condition precedent to such a claim is that the plaintiff must first obtain a judgment against the corporation, and that the judgment be unsatisfied by the corporation[.]").

Mr. Vekaria also has failed to allege that he provided ECI and Mr. Chapman the requisite written notice of his intent to hold them liable within 180 days of the termination of his employment. Section 630 was enacted "as a safeguard to laborers . . . of corporations which, upon insolvency of the corporation, would leave such working people without recourse and without payment for their work, labor and services. It was not enacted to make the ten largest

---

The ten largest shareholders, as determined by the fair value of their beneficial interest as of the beginning of the period during which the unpaid service referred to in this section are performed . . . shall jointly and severally be personally liable for all debts, wages or salaries due and owing to any of its laborers, servants or employees other than contractors, for services performed by them for such corporation. **Before such laborer, servant or employee shall charge such shareholder for such services, he shall give notice in writing to such shareholder that he intends to hold him liable under this section. Such notice shall be given within one hundred and eighty days after termination of such services,** except that if, within such period, the laborer, servant or employee demands an examination of the record of shareholders under paragraph (b) of section 624 . . . of this article, such notice may be given within sixty days after he has been given the opportunity to examine the record of shareholders. **An action to enforce such liability shall be commenced within ninety days after the return of an execution unsatisfied against the corporation upon a judgment recovered against it for such services.** . . . .

(emphasis added).

shareholders in a corporation specifically responsible for . . . all indebtednesses [sic] of the corporation." *Lindsey v. Winkler*, 277 N.Y.S.2d 768, 770 (Dist. Ct. Nassau 1967). On that basis, Section 630's requirements are to be construed strictly, and Mr. Vekaria's failure to provide the required notice necessitates the dismissal his claim. *See id.; Beam v. Key Venture Cap. Corp.*, 152 A.D.2d 825, 826 (3d Dep't 1989) (affirming dismissal when plaintiff failed to provide timely notice); *Pope v. Halloran*, 76 A.D.2d 770 (1st Dep't 1980) (same).

## B. The Shares Allegedly Promised to Mr. Vekaria are not "Wages"

Mr. Vekaria's Labor Law claims also fail because the equity-based incentive payment at issue does not constitute "wages" under New York's Labor Law. The Labor Law defines wages as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y.L.L. § 190(1). In determining whether incentive compensation falls under this definition, courts consider "whether the incentive compensation was (1) tied to personal productivity or to the performance of the company; (2) guaranteed or discretionary; and (3) vested or contingent." *Hallet v. Stuart Dean Co.*, 481 F. Supp. 3d 294, 310 (S.D.N.Y. 2020). This definition "excludes incentive compensation 'based on factors falling outside the scope of the employee's actual work.'" *Guiry v. Goldman, Sachs & Co.*, 31 A.D.3d 70, 73 (1st Dep't 2006) (internal quotations omitted). New York courts have long held that stock award plans "whose objectives are to retain talented executives by providing them with a proprietary interest in the growth and performance of the company, are not 'wages' under § 190 of the New York Labor Law." *Int'l Bus. Mach. Corp. v. Martson*, 37 F. Supp. 2d 613, 617 (S.D.N.Y. 1999) (collecting cases). Simply put, equity-based compensation does not constitute "wages" for the purposes of the Labor Law. *Lerner v. Credit Suisse Sec. (USA) LLC*, 193 A.D.3d 649, 650 (1st Dep't 2021); *Guiry*, 31 A.D.3d at 74.

Additionally, Mr. Vekaria's admits that the stock allegedly promised to him was meant to induce him to accept employment with MThree.  (FAC ¶¶ 2, 55, 73, 76, 90.)  For that reason, the disputed shares are akin to a sign-on bonus, and sign-on bonuses are not considered "wages" under New York law.  *Wallace v. BMO Nesbitt Burns Corp.*, No. 01-cv-7998 (JGK), 2002 WL 32063120, at *6 (S.D.N.Y. Nov. 25, 2002).  The Court should dismiss Plaintiff's Labor Law claims for this reason as well.

## III.   PLAINTIFF'S FRAUDULENT INDUCEMENT AND NEGLIGENT MISREPRESENTATION CLAIMS AGAINST MR. CHAPMAN FAIL AS A MATTER OF LAW

As set forth above, Mr. Vekaria's claims for fraudulent inducement and negligent misrepresentation against Mr. Chapman should be dismissed because they are impermissibly duplicative of his breach of contract claim against MThree.  Even if that were not the case, however, those claims would still fail as a matter of law because:  (i) the alleged misrepresentations constitute statements of future intent and not statements of present fact; (ii) Mr. Vekaria fails to describe the misrepresentations with sufficient particularity; and (iii) Mr. Vekaria does not—and cannot—allege the requisite special relationship between himself and Mr. Chapman to maintain a negligent misrepresentation claim.

### A.   The Alleged Misrepresentations Are Promises of Future Conduct and are Therefore Not Actionable

The fraudulent inducement and negligent misrepresentation claims fail because they concern statements of future performance and not misstatements of present facts.  Mr. Vekaria alleges that the "MThree Defendants" made misstatements about MThree's intention to issue Mr. Vekaria MThree stock upon his hiring.  (*See* FAC ¶¶ 74, 81.)  In other words, the "MThree Defendants" supposedly lied about MThree's intent to perform under the employment agreement.  But it is well settled that a fraudulent inducement claim does not lie when the supposedly

13

fraudulent statements concern future performance under a contract. *Strasser v. Prudential Secs., Inc.*, 218 A.D.2d 526, 527 (1st Dep't 1995) (dismissing fraud claim based on allegation that defendants misrepresented intention to perform); *Bencivenga & Co. v. Phyfe*, 210 A.D.2d 22, 22 (1st Dep't 1994) ("A cause of action based upon breach of contract cannot be converted into one for fraud merely by alleging that defendants did not intend to fulfill the contract."); *Gordon v. Dino De Laurentiis Corp.*, 141 A.D.2d 435, 436 (1st Dep't 1988) (same).

Similarly, a negligent misrepresentation claim cannot relate to a promise of future conduct; it must concern a misstatement of present fact. *See American Fed'n of Musicians and Emp.s' Pension Fund v. Neshoma Orchestra and Singers, Inc.*, No. 17-cv-2640 (JKG), 2018 WL 2338764, at *9 (S.D.N.Y. May 23, 2018) (Under New York law, "promises of future conduct are not actionable as negligent misrepresentations.") (quoting *Murray v. Xerox Corp.*, 811 F.2d 118, 123 (2d Cir. 1987)); *Capricorn Invs. III, L.P. v. CoolBrands Intern., Inc.*, 66 A.D.3d 409, 409-10 (1st Dep't 2009) (affirming dismissal of negligent misrepresentation claim premised upon promises of future conduct); *Margrove Inc. v. Lincoln First Bank of Rochester,* 54 A.D.2d 1105, 1106 (4th Dep't 1976) ("The mere failure of defendant to abide by its commitment cannot be made the basis of an action in tort for misrepresentation. The alleged negligent misstatements all relate to promised future conduct, if misstatements they be, and there is a lack of any element of misrepresentation as to an existing material fact so as to come within the doctrine of negligent misrepresentation[.]"). Mr. Vekaria's failure to allege misstatements concerning existing facts requires the dismissal of both of these claims.

### B.   Mr. Vekaria has Failed to Specify Any Misrepresentations Made by Mr. Chapman

New York's common law requires a plaintiff alleging claims for fraudulent inducement and negligent misrepresentation to identify the specific misstatements made by the defendant. *See*

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2d Cir. 2005); *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 166 (S.D.N.Y. 2021) (citing *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012)).   In addition, the fraudulent misrepresentation claim must meet Rule 9(b)'s heightened pleading requirements.   *Bombardier Capital, Inc. v. Naske Air GmbH*, No. 02-cv-10176 (DLC), 2003 WL 22137989, at *2 (S.D.N.Y. Sept. 17, 2003) (citing *Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310-11 (S.D.N.Y. 2003)).

Here, Mr. Vekaria offers only the conclusory allegation that the "MThree defendants" collectively "made material misrepresentations of facts, including representing that Mr. Vekaria was an equity holder in MThree and owned MThree stock upon his hiring."  (FAC at ¶ 74).  At no point does Mr. Vekaria allege any purported misrepresentation specifically made by Mr. Chapman. The allegations are therefore insufficient to plead either a fraudulent inducement or a negligent misrepresentation claim against him.  *See Camofi Master LDC v. College P'ship, Inc.*, 452 F. Supp. 2d 462, 481 (S.D.N.Y. 2006) (dismissing fraudulent inducement claim where defendant alleged "without specificity, that it was fraudulently induced" to enter agreement); *Sheth v. New York Life Ins. Co.*, 273 A.D.2d 72, 74 (1st Dep't 2000) (conclusory statements cannot support negligent misrepresentation claim).

### C.   Mr. Vekaria Lacks a Special Relationship with Mr. Chapman

The negligent misrepresentation claim against Mr. Chapman fails for the additional reason that Mr. Vekaria has not (and cannot) allege the requisite special relationship necessary to maintain a negligent misrepresentation claim.   A defendant can only be liable for negligent misrepresentation if he has a special relationship with the plaintiff such that he had a duty to speak in a non-negligent manner.  *See Twohig*, 519 F. Supp. 3d at 166.  "When the face of the complaint indicates there is only an ordinary business relationship between the parties, [negligent

misrepresentation] claims will be dismissed." *Ixe Banco, S.A. v. MBNA Am. Bank, N.A.,* No. 07-cv-0432 (LAP), 2008 WL 650403, at *12 (S.D.N.Y. Mar. 7, 2008); *Citibank, N.A. v. Itochu Intern., Inc.*, No. 01-cv-6007 (GBD), 2003 WL 1797847, at *5 (S.D.N.Y. Apr. 4, 2003) ("[A] special relationship requires a closer degree of trust than an ordinary business relationship." (internal quotations and citations omitted)).

Mr. Vekaria fails to allege the existence of any special relationship between himself and Mr. Chapman. Instead, Mr. Vekaria alleges that because Mr. Chapman had "superior knowledge regarding the affairs of MThree," he "had a particular duty to provide correct and accurate information to Mr. Vekaria with regard to MThree and Mr. Vekaria's MThree Stock." (FAC ¶ 80). But New York law is clear that "superior knowledge about the particulars of [a party's] own business practices is insufficient to sustain a negligent misrepresentation claim." *U.S. Bank. Nat'l Assoc. v. BFPRU I, LLC*, 230 F. Supp. 3d 253, 270 (S.D.N.Y. 2017) (internal citations and quotations omitted).

At best, Mr. Vekaria has attempted to allege something akin to an employer-employee relationship. That is a dead end as well, however, because an employment relationship is insufficient to make out the requisite special relationship. *Cohen v. Avanade*, 874 F. Supp. 2d 315, 327 (S.D.N.Y. 2012) (collecting cases) ("Courts have routinely held [] that the relationship between employer (or prospective employer) and employee is not fiduciary in nature and thus does not constitute a 'special relationship' for purposes of a negligent misrepresentation claim."). In a similar case decided by this Court, the plaintiff was offered a position at a company for a base salary as well as stock options. *Kwon v. Yun*, 606 F. Supp. 2d 344, 353 (S.D.N.Y. 2009). After accepting the offer, the plaintiff sued his new employer for negligent misrepresentation, alleging the company had misrepresented its and certain related entities' financial condition in order to

induce the plaintiff to take the job. *Id.* at 354. Judge Lynch dismissed the plaintiff's claims because "the thrust of the harm plaintiff alleges . . . is that defendants made various representations to induce him to accept their offers of employment and, those representations having been proven to be false, caused him to suffer certain employment-related harms." *Id.* at 356. This was insufficient to establish the requisite special relationship. The same reasoning applies in this matter: because the alleged misrepresentations by Mr. Chapman necessarily pertained to Mr. Vekaria's employment, they preclude finding the special relationship required for a negligent misrepresentation claim.

## IV. PLAINTIFF'S SECURITIES FRAUD CLAIM AGAINST MR. CHAPMAN IS TIME BARRED, MERITLESS, AND INADEQUATELY PLED

### A. The Securities Fraud Claim is Untimely

Mr. Vekaria's securities fraud claim (Count Seven) against Mr. Chapman should be dismissed because it is barred by the statute of limitations. A securities fraud claim must be brought within two years of the time that plaintiff discovers or could have discovered the facts constituting the fraud. *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 149 (2d Cir. 2012) (citing 28 U.S.C. § 1658(b)); *Gavin/Solmonese LLC v. D'Arnaud-Taylor*, 639 Fed. App'x 664, 666 (2d Cir. 2016). Here, Mr. Vekaria alleges that he was entitled to receive the Initial Stock "immediately upon the signing of the Employment Agreement." (FAC ¶ 50). Mr. Vekaria began his employment with MThree on January 7, 2019 and, by his own allegations was entitled to—but did not receive—MThree stock on that date. (*Id.* at ¶¶ 45, 50, 59.) Mr. Vekaria also alleges that he was entitled to 2% Additional Stock, either upon MThree's acquisition or 1% on each of his first two work anniversaries. (*Id.* ¶¶ 25, 50.) MThree was acquired by Wiley on January 1, 2020. (*Id.* ¶ 31.) Mr. Vekaria—who left MThree in April 2020—had his first work anniversary in January 2020. Mr. Vekaria knew at those times that he was not issued any stock. Yet, Mr. Vekaria did not

commence this action until April 19, 2022—over three years after he was supposedly due his Initial Stock, and over two years since he was supposedly due the Additional Stock.   The claim is therefore untimely.

### B.      Mr. Vekaria is Not A "Purchaser" of Stock

Even if Mr. Vekaria's claim were timely, it nonetheless fails because Mr. Vekaria is not a "purchaser" of MThree stock.   Mr. Vekaria brings this claim pursuant to the Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.   These provisions prohibit fraud "in connection with the purchase or sale of any security[.]"  15 U.S.C. § 78j; 17 C.F.R. § 240.10b-5.   Based on the text of both the statute and the rule, a securities fraud claim can only be brought when there was a purchase or sale of a security.   *See Levitin v. PaineWebber, Inc.*, 933 F. Supp. 325, 328 (S.D.N.Y. 1996) ("[A]lleged misrepresentation must be made 'in connection with the purchase or sale' of a security," and "must pertain to the securities themselves[.]").   Here, Mr. Vekaria did not purchase any security.   To the contrary, Mr. Vekaria repeatedly alleges he was promised MThree stock as an inducement to accept MThree's offer of employment.   (FAC ¶¶ 2, 28, 55, 73, 82.)

This Court faced factually similar circumstances in *Lankau v. Luxoft Holdings, Inc.*  There, the plaintiff alleged he was promised equity as an inducement to employment, but that defendants failed to provide the shares.   266 F. Supp. 3d 666, 679 (S.D.N.Y. 2017).   The Court concluded that the failure to grant the equity was neither the purchase nor the sale of a security.   *Id.*   The Court reasoned that the supposed misrepresentations about the intent to grant equity were not actionable "misrepresentations with respect to the value of a security," but rather non-actionable "misrepresentations with respect to a party's intention to comply with a particular agreement."  *Id.* (quoting *Dubin v. E.F. Hutton Grp., Inc.*, 695 F. Supp. 138, 144 (S.D.N.Y. 1988)).   Here too, Mr. Vekaria's securities fraud claim is based on the allegation that Mr. Chapman and the other MThree

Defendants misrepresented MThree's intent to issue stock as part of an employment agreement, not that there was a misrepresentation about the value of the stock in connection with a purchase or sale of securities.  *Levitin*, 933 F. Supp. at 328 ("[T]he misrepresentation or omission must pertain to the securities themselves; allegations of fraud merely involving securities are not sufficient.") (collecting cases dismissing securities fraud claims where misrepresentation did not involve value of security). Because there was no purchase or sale of securities, the securities fraud provisions do not apply.

### C.    Mr. Vekaria Fails to Plead Securities Fraud with Particularity

Finally, Mr. Vekaria's securities fraud claim fails because he has not pled the claim with sufficient particularity.  Claims for securities fraud "are subject to the strict pleadings standards of both Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA")[.]" *Lankau*, 266 F. Supp. 3d at 679.  Pursuant to the PSLRA, "a plaintiff must 'state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind.'"  *West Virginia Inv. Mgmt.  Bd. v. Doral Fin. Corp.*, 344 Fed App'x 717, 719 (2d Cir. 2009).  "Under Section 10(b) and Rule 10b-5, the required state of mind is 'scienter' or an intent 'to deceive, manipulate or defraud.'"  *Id.*  The necessity of a "strong inference" allows the court to consider "competing inferences" regarding whether the defendant acted with the required state of mind.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," which means that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Fed. R. Civ. P. 9(b).

Mr. Vekaria fails to plead any facts giving rise to any inference of scienter, let alone a strong inference.  Moreover, Mr. Vekaria does not specify what specific statements Mr. Chapman

made.   Rather, Mr. Vekaria generally alleges that the "MThree Defendants . . . materially participated in making untrue statements of material facts and omitting to state material facts" and that the "MThree Defendants knowingly or recklessly employed devices and schemes to make untrue statements and omit material facts."  (FAC ¶¶ 88-89.)  Mr. Vekaria does not allege a single misrepresentation that Mr. Chapman—as opposed to the "MThree Defendants"—made.  Nor has Mr. Vekeria alleged when and where the statements (or omissions) were made, as required by Rule 9(b).  The FAC's vague allegations are plainly insufficient, and Mr. Vekaria's securities fraud claim should be dismissed.

## V.   PLAINTIFF'S TORTIOUS INTERFERENCE CLAIM FAILS UNDER THE ECONOMIC INTEREST DOCTRINE

Mr. Vekaria's claim for tortious interference against ECI and Mr. Chapman (Count Eight) is barred by the economic interest doctrine, which necessarily applies based on Mr. Vekaria's own allegations.  "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract *without justification*, actual breach of the contract, and damages resulting therefrom."  *Kuhns v. Ledger*, 202 F. Supp. 3d 433, 441 (S.D.N.Y. 2016) (emphasis added) (internal citations and quotations omitted).  In response to a tortious interference claim, a defendant may raise the "economic interest defense—that it acted to protect its own legal or financial stake in the breaching party's business."  *Id.* (internal citations and quotations omitted).  "[E]conomic interest is a defense to an action for tortious interference with a contract unless there is a showing of malice or illegality."  *Foster v. Churchill*, 87 N.Y.2d 744, 750 (1996).  A court should dismiss a tortious interference claim pursuant to a Rule 12(b)(6) motion where the required elements of the defense are obvious from the face of the complaint. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Savage v. Galaxy Media*

& *Mktg. Corp.*, No. 11-cv-6791 (NRB), 2012 WL 2681423, at *10 (S.D.N.Y. July 5, 2012) (dismissing plaintiff's tortious interference claim where elements of economic interest defense were plead in complaint).

Here, Mr. Vekaria alleges that "Mr. Chapman individually, and ECI corporately, [were] understood to be the majority shareholder[s] of MThree" at the time Mr. Vekaria was hired.  (FAC ¶ 2.)  Mr. Vekaria further alleges Mr. Chapman and ECI "profited" and "received compensation on account of their stock or stock interest" in connection with the sale of MThree to Wiley.  (*Id.* ¶¶ 37, 39.)  He also alleges that, as a result of the purported tortious interference, ECI and Mr. Chapman "have accrued additional value with regard to their individual stock interest without legitimate basis to the detriment of Mr. Vekaria," thereby demonstrating an economic motivation. (*Id*.  ¶ 101.)  Indeed, he alleges that ECI and Mr. Chapman tortiously interfered with his employment agreement "for [their] personal profit."  (*Id.*)  These allegations establish the economic interest defense.  *See Kuhns*, 202 F. Supp. 3d at 442 (recognizing ownership of shares in breaching company provides significant interest for purposes of economic interest defense).

Critically, Mr. Vekaria does not allege any fact suggesting that ECI or Mr. Chapman acted with malice, as required to overcome the economic interest defense.  He simply states in conclusory fashion that "[s]uch interference was performed with malice and impaired Plaintiff for the personal profit of each of Wiley, ECI and Messrs.  Headley, Town, Seymour and Chapman." (FAC ¶ 101.)  Such "bare allegations of malice do not suffice, particularly where such allegations are contradicted by plaintiff's own claims that defendants' actions were financially motivated." *Ruha v. Guior*, 277 A.D.2d 116, 116 (1st Dep't 2000) (citing *Strasser v.  Prudential Sec., Inc.*, 218 A.D.2d 526 (1st Dep't 1995)); *see also Rather v. CBS Corp.*, 68 A.D.3d 49, 60 (1st Dep't 2009) ("[B]are allegations of malice do not suffice to bring the claim under an exception to the economic

interest doctrine."). Here, Mr. Vekaria's allegation of malice is not only conclusory, but also immediately negated by his statement that defendants "impaired Plaintiff *for [their] personal profit*[.]" (FAC ¶ 101) (emphasis added). Because the economic interest defense plainly applies to ECI and Mr. Chapman based on Mr. Vekaria's own allegations, the tortious interference claim should be dismissed.

## VI.   PLAINTIFF IS NOT ENTITLED TO RESCISSION OF THE ACQUISITION OF MTHREE AS REQUESTED IN HIS CLAIM FOR DECLARATORY JUDGMENT

Mr. Vekaria's declaratory judgment claim (Count Ten) seeks recission of Wiley's acquisition of MThree. But Mr. Vekaria's own allegations make clear that he is not entitled to rescission. Under New York law, "the rescission of a contract is an extraordinary remedy" which is appropriate "only when there is lacking [a] complete and adequate remedy at law and where the status quo may be substantially restored." *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 340 (S.D.N.Y. 2012) (internal citations and quotations omitted). By the same token, the remedy of rescission is "unavailable where money damages are available and will make plaintiff whole." *Kachkovskiy v. Khlebopros*, 164 A.D.3d 568, 571 (2d Dep't 2018) (internal citations and quotations omitted). "In order to justify equitable rescission, . . . a party must allege fraud in the inducement of the contract; failure of consideration; an inability to perform the contract after it is made; or a breach in the contract which substantially defeats the purpose thereof." *Syncora Guarantee*, 874 F. Supp. 2d at 340.

Plaintiff's contractual and fraudulent inducement claims relate to his employment agreement with MThree, not Wiley's acquisition of MThree. Those claims cannot serve as justification for recission of a wholly separate agreement between MThree and Wiley. Moreover, rescission is unavailable to Mr. Vekaria because his alleged injury is fully compensable via money damages. The value of the portion of MThree equity Mr. Vekaria purports to own is readily

22

ascertainable.   Indeed, Mr. Vekaria himself has named a figure that would make him whole: $ 3,858,00.00.  (FAC ¶ 36.)  Because Mr. Vekaria has an adequate remedy at law, the Court should deny him the equitable remedy of rescission.

## CONCLUSION

For the foregoing reasons, the Court should dismiss all of Mr. Vekaria's causes of action against ECI and Mr. Chapman with prejudice.

Dated: February 3, 2023

Respectfully submitted,

**FAEGRE DRINKER BIDDLE & REATH LLP**

By:  */s/ Clay J. Pierce*
      Clay J.  Pierce
      Andrew L. Van Houter

1177 Avenue of the Americas, 41st Floor
New York, NY 10036
Tel: (212) 248-4309
clay.pierce@faegredrinker.com
andrew.vanhouter@faegredrinker.com

*Attorneys for ECI Partners LLP and Richard Chapman*