UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X
                                                    :
JITENDRA VEKARIA,                                   :          Case No. 1:22-cv-03197-JPC
                                                    :
                 Plaintiff,                         :
                                                    :
       -against-                                    :
                                                    :
MTHREE CORPORATE CONSULTING, LTD.,                  :
JOHN WILEY & SONS, INC., ECI PARTNERS              :
LLP, ALEX HEADLEY, BENJAMIN TOWN,                   :
THOMAS SEYMOUR, and RICHARD                         :
CHAPMAN,                                            :
                                                    :
                 Defendants.                        :
--------------------------------------------------------------------X


**DEFENDANT THOMAS SEYMOUR'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**


Kevin H. Kim
John Wiley & Sons, Inc.
111 River Street
Hoboken, New Jersey 07030
Phone:  (201) 748-5809
Fax:  (201) 748-6500
kkim2@wiley.com

*Attorney for Defendants John Wiley & Sons, Inc.,
Mthree Corporate Consulting, Ltd., and Thomas
Seymour*

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................... ii

**PRELIMINARY STATEMENT** ............................................................ 1

**SUMMARY OF MOTION** ................................................................... 1

**STATEMENT OF FACTS** .................................................................... 3

**ARGUMENT** ........................................................................................ 4

    **I.    RULE 12(b)(6) MOTION TO DISMISS** ...................................... 4

      **A.  Standard** ............................................................................... 4

      **B.  Counts Three and Four – Seymour Is Not an Employer Under New York Labor Law** ......................................................................................... 5

      **C.  Count Five - Fraudulent Inducement** ...................................... 6

          *1.  Vekaria Fails to Plead Fraudulent Inducement with Particularity* ........................... 6

          *2.  Vekaria Fails to Allege a Misrepresentation of Fact* ................................. 7

      **D.  Count Six – Negligent Misrepresentation** ............................... 8

          *1.  Vekaria Fails to Plead Negligent Misrepresentation with Particularity* ................... 8

          *2.  Vekaria Does Not Allege a "Special or Privity-Like Relationship"* ........................... 8

      **E.  Count Seven – Securities Exchange Act Claim** ..................... 10

          *1.  Seymour Joins Mthree's Arguments for Dismissal of the Securities Claim* .............. 10

          *2.  Vekaria Fails to Plead Securities Fraud with Particularity* ........................... 10

          *3.  Vekaria Fails to Plead Scienter* ...................................... 10

      **F.  Count Eight - Tortious Interference** ..................................... 11

          *1.  Vekaria Fails to Allege Intentional Interference by Seymour* ......................... 11

          *2.  Vekaria Fails to Allege that Seymour Was a Third Party Acting Outside of Bounds of His Authority* ............................................................. 12

          *3.  Vekaria's Claim Against Seymour Is Duplicative of the Breach of Contract Claim* . 14

      **G.  Count Nine – Conversion** .................................................... 14

    **II.   RULE 12(b)(2) MOTION TO DISMISS** .................................. 14

      **A.  Standard** ............................................................................. 14

      **B.  No Personal Jurisdiction Under N.Y. CPLR 302(a)(1)** ........... 15

      **C.  No Personal Jurisdiction Under N.Y. CPLR 302(a)(3)** ........... 16

      **D.  Jurisdiction Over Seymour Does Not Comport with Due Process** ......................... 17

**CONCLUSION** ................................................................................... 19

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alley Sports Bar, LLC v. SimplexGrinnell, LP*,
  58 F. Supp. 3d 280 (W.D.N.Y. 2014) ....................................................................... 9

*Alpi USA, Inc. v. D & F Fashion International Gemelli*,
  No. 06 Civ.2091 (RJH), 2007 WL 942096 (S.D.N.Y. Mar. 29, 2007) ..................... 15

*Arch Specialty Insurance Co. v. Varanda Group, Inc.*,
  No. 18 Civ. 7971 (PAE), 2019 WL 1493660 (S.D.N.Y. Apr. 4, 2019) ..................... 15

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
  305 F.3d 120 (2d Cir. 2002) ........................................................................... 17, 18

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 5

*Bensusan Restaurant Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997) ................................................................................ 15

*Boehner v. Heise*,
  734 F. Supp. 2d 389 (S.D.N.Y. 2010) ................................................................. 11

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) .......................................................................................... 18

*Comolli v. Huntington Learning Centers, Inc.*,
  117 F. Supp. 3d 343 (S.D.N.Y. 2015) ................................................................... 6

*Coppelson v. Serhant*,
  No. 19-cv-8481 (LJL), 2021 WL 148088 (S.D.N.Y. Jan. 15, 2021) ........................ 6

*Falow v. Cucci*,
  No. 00 CV 4754 (GBD), 2003 WL 22999458 (S.D.N.Y. Dec. 19, 2003) ............... 18

*Family Internet, Inc. v. Cybernex, Inc.*,
  No. 98 Civ. 0637 (RWS), 1999 WL 796177 (S.D.N.Y. Oct. 6, 1999) ..................... 17

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
  957 F. Supp. 477 (S.D.N.Y. 1997) ...................................................................... 11

*Frankel v. U.S. Healthcare, Inc.*,
  No. 18 Civ. 06378 (ER), 2019 WL 4450640 (S.D.N.Y. Sept. 17, 2019)................. 14

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019) ............................................................................................ 10

*Green v. Covidien LP*,
    No. 18 Civ. 2939 (PGG), 2019 WL 4142480 (S.D.N.Y. Aug. 30, 2019) ................................. 8

*Gundlach v. IBM Japan, Ltd.*,
    983 F. Supp. 2d 389 (S.D.N.Y. 2013), *aff'd* 594 F. App'x 8 (2d Cir. 2014) ........................... 12

*Housing Works, Inc. v. Turner*,
    179 F. Supp. 2d 177 (S.D.N.Y. 2001), *aff'd sub nom. Housing Works, Inc. v. Giuliani*, 56 F.
    App'x 530 (2d Cir. 2003) .................................................................................................... 7

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
    227 F.3d 8 (2d Cir. 2000) .................................................................................................... 8

*In re Fyre Festival Litigation*,
    399 F. Supp. 3d 203 (S.D.N.Y. 2019) ................................................................................... 9

*Irizarry v. Catsimatidis*,
    722 F.3d 99 (2d Cir. 2013) .................................................................................................. 5

*Jazini v. Nissan Motor Co., Ltd.*,
    148 F.3d 181 (2d Cir. 1998) ............................................................................................... 15

*Komlossy v. Faruqi & Faruqi, LLP*,
    No. 15 Civ. 9316 (KPF), 2017 WL 722033 (S.D.N.Y. Feb. 23, 2017), *aff'd* 714 F. App'x 11
    (2d Cir. 2017) .................................................................................................................... 13

*Lampros v. Brasil*,
    No. 10 Civ. 9576 (DLC), 2012 WL 6021091 (S.D.N.Y. Dec. 4, 2012), *aff'd* 538 F. App'x 113
    (2d Cir. 2013) .................................................................................................................... 7

*Mahmud v. Kaufmann*,
    607 F. Supp. 2d 541 (S.D.N.Y. 2009), *aff'd* 358 F. App'x 229 (2d Cir. 2009) ...................... 13

*Manbro Energy Corp. v. Chatterjee Advisors, LLC*,
    No. 20 Civ. 3773 (LGS), 2021 WL 2037552 (S.D.N.Y. May 21, 2021) ................................. 12

*Mota v. Imperial Parking Systems*,
    No. 08 Civ. 9526, 2010 WL 3377497 (S.D.N.Y. Aug. 24, 2010) ........................................... 9

*Murtha v. Yonkers Child Care Ass'n, Inc.*,
    45 N.Y.2d 913 (1978) ......................................................................................................... 13

*Penguin Group (USA) Inc. v. American Buddha*,
    609 F.3d 30 (2d Cir. 2010)............................................................................... 14

*Pincione v. D'Alfonso*,
    506 F. App'x 22 (2d Cir. 2012)................................................................. 15, 16

*Sharma v. Skaarup Ship Management Corp.*,
    916 F.2d 820 (2d Cir. 1990).......................................................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................... 11

*Williams v. Epic Security Corp.*,
    358 F. Supp. 3d 284 (S.D.N.Y. 2019)............................................................ 5

**Statutes**

N.Y. CPLR 302(a)(3).............................................................................................. 16

## PRELIMINARY STATEMENT

Defendant Thomas Seymour ("Seymour") was the Director of Human Resources for Mthree Corporate Consulting Limited, based in London, England ("Mthree UK"). At the instruction of Mthree UK's CEO Alex Headley, Seymour prepared Plaintiff Jitendra Vekaria's employment agreement with Mthree Corporate Consulting Limited, a subsidiary of Mthree UK that was incorporated in Delaware ("Mthree US"). Just under a year later, Mthree UK (and its subsidiaries, which included Mthree US) was acquired by John Wiley & Sons Limited, a subsidiary of John Wiley & Sons, Inc. ("Wiley") that is incorporated in the United Kingdom.

After resigning from Mthree US in April 2020, Vekaria claimed that he was entitled to a percentage of the sale of Mthree because of a clause in his employment agreement that purportedly granted him equity in the company. Two years later, Vekaria filed a complaint that can only be described as an "everything but the kitchen sink" pleading, filled with duplicative and otherwise meritless causes of action asserted against Mthree US, Wiley, Headley, Seymour, and other defendants. Vekaria then filed an amended complaint on January 18, 2023, fixing errors regarding Defendant ECI Partners LLP and Defendant Alex Headley's place of residence.

As set forth below, Seymour now moves to dismiss all of Vekaria's claims against him under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, and under Rule 12(b)(2) for lack of personal jurisdiction.

## SUMMARY OF MOTION

Vekaria asserts claims against Seymour in his individual capacity under New York Labor Law for unlawful withholding or deduction from "wages" (the "Labor Law Claims"). Seymour joins the Rule 12(b)(6) motion filed by Defendants Mthree US and Wiley (Dkt. Nos. 65 and 66, the motion hereinafter called the "Mthree US and Wiley Motion") to dismiss the Labor Law

claims (Counts Three and Four) and also moves to dismiss the Labor Law claims because he was not an "employer" under New York Labor Law.

In the alternative to his breach of contract claim against Mthree US, Vekaria claims that Seymour fraudulently induced him to enter into the employment agreement, and negligently misrepresented his entitlement to equity in Mthree US (Counts Five and Six).  Both of these claims fail because Vekaria has not pled that Seymour acted with fraudulent intent, or that Seymour made a misrepresentation of fact.

Vekaria further claims that Seymour, in his individual capacity, violated the Securities Exchange Act of 1934 and Rule 10b-5 by making untrue statements of material fact in connection with the offer of equity in Mthree US (the "Securities Claim") (Count Seven). Seymour joins the arguments for dismissal of this claim in the Mthree US and Wiley Motion, and also moves to dismiss this claim because Vekaria has failed to allege that Seymour knew of or participated in the fraud, or that he acted with fraudulent intent.

Seymour also moves to dismiss Vekaria's claim that Seymour tortiously interfered with the Employment Agreement (Count Eight).  Vekaria fails to allege with any specificity how Seymour, in his individual capacity, contributed to Mthree US' alleged breach of the Employment Agreement or otherwise intended for Mthree US to breach the Employment Agreement.

Seymour joins the Mthree US and Wiley Motion to Dismiss Vekaria's conversion claim, as it is entirely duplicative of the breach of contract claim alleged against Mthree US and would otherwise result in Vekaria doubling his recovery for the same allegations (Count Nine).

Finally, Seymour moves to dismiss the complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  As Vekaria acknowledges in the First Amended Complaint, Seymour

works and resides in London, England.  Vekaria fails to allege that Seymour was a "primary

actor" in the alleged conduct, or that he otherwise derived substantial revenue from international

or interstate commerce.  Moreover, the exercise of personal jurisdiction over Seymour would not

comport with due process.  Seymour plainly lacks minimum contacts with New York, such that

maintenance of the action would offend notions of fair play and substantial justice.

Seymour respectfully submits this memorandum setting forth the reasons the Court

should (i) pursuant to Federal Rule of Civil Procedure 12(b)(6), dismiss all counts in the First

Amended Complaint against him, Counts Three through Nine, and dismiss him from this action,

and (ii) pursuant to Federal Rule of Civil Procedure 12(b)(2), dismiss the First Amended

Complaint against him for lack of personal jurisdiction.

## STATEMENT OF FACTS

As alleged in the First Amended Complaint, Seymour spoke with Vekaria during the

negotiation of the Employment Agreement.  While Vekaria contends that he told Seymour (and

others) that he required equity in Mthree US as an inducement to signing the Employment

Agreement, he does not allege what representations, if any, Seymour made to him in response.

At most, Vekaria alleges that Seymour was copied on an email wherein Mthree UK's CEO Alex

Headley "confirmed and represented that Mr. Vekaria would receive the Mthree Stock . . . ."

First Am. Compl. ¶ 29.  Vekaria goes on to claim that he "communicated directly" with Seymour

"regarding the terms of the Employment Agreement, including specifically as to the equity that

Mr. Vekaria needed to receive in order to join Mthree."  *Id.*  But Vekaria does not allege in the

First Amended Complaint that Seymour himself made any representations independent of those

purportedly made by Headley.  The allegations in the First Amended Complaint at most support

the inference that Seymour was a conduit for the discussions between Vekaria and Headley, only

memorializing what each of the parties said in their negotiations with one another. Indeed, this is confirmed by Seymour's affidavit filed with his motion for dismissal pursuant to Rule 12(b)(2). Affidavit of Thomas Seymour in Support of His Motion to Dismiss Plaintiff's Complaint, dated February 1, 2023 ("Seymour Aff.") ¶ 7.

Vekaria contends that Seymour executed the Employment Agreement in his role as Mthree's Director of Human Resources and not in his individual capacity. First Am. Compl. ¶ 23. He further alleges (upon information and belief) that Seymour (and other Defendants) "authored, contributed to, and/or approved the terms of the Employment Agreement" and that Seymour (and the other Defendants) are each "responsible for . . . Mthree's representation that, as of the date of Mr. Vekaria's hiring, Mr. Vekaria was the owner of [equity in Mthree] and entitled to [additional equity], comprising a total of 3% of the fully diluted equity in Mthree." *Id.* ¶ 30. Again, Vekaria does not specify what role Seymour had in the Employment Agreement beyond executing it on behalf of the company. Nor does he make any specific allegations of a representation made by Seymour.

The only other mention of Seymour in the First Amended Complaint is his participation in discussions after Vekaria resigned from Mthree US in April 2020. *Id.* ¶ 42. Again, Vekaria does not specify Seymour's role in these discussions – as such, it is unclear if Seymour was merely copied on the communications or if he made any statements or representations.

## ARGUMENT

### I.   RULE 12(b)(6) MOTION TO DISMISS

#### A. Standard

In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a cause of action, a plaintiff's complaint must state a claim to relief that is plausible on its face. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 569 (2007).  The factual allegations in the complaint must be sufficient to raise a right to relief above the speculative level; it cannot otherwise rely on a formulaic recitation of the elements of a cause of action.  *Id.* at 555.

**B.  Counts Three and Four – Seymour Is Not an Employer Under New York Labor Law**

Seymour joins the Mthree US and Wiley Motion to dismiss Counts Three and Four, which allege that the defendants wrongfully withheld or made deductions from his "wages" by denying him equity in Mthree US.  As is true for those Defendants, the equity in Mthree US that Vekaria claims he was entitled to receive was not a "wage" under New York Labor Law.  Dkt. No. 66 at pp. 4-5.

The Labor Law Claims should also be dismissed with respect to Seymour because Seymour is not an "employer" under New York Labor Law.  Vekaria contends that because Seymour was purportedly "among the ten largest shareholders of Mthree during the period of [his] employment," he was necessarily an "employer" under New York Labor Law § 190.  First Am. Compl. ¶ 60.  Under New York law, this is wrong.[1]

> Evidence that an individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function, is insufficient to demonstrate "employer" status.  Instead, to be an "employer," an individual defendant must possess control over a company's actual "operations" in a manner that relates to a plaintiff's employment.

*Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).[2]

---

[1] In addition to being meritless under the law, this is also factually incorrect.  Seymour was not an owner or equity holder of Mthree US or Mthree UK and was not otherwise a party to sale of Mthree UK to Wiley.  Seymour Aff. ¶¶ 4-6.  Vekaria's assertions to the contrary are based on nothing more than speculation.  But as absurd as it is, Seymour will assume he was an owner of Mthree US for purposes of the motion to dismiss under Rule 12(b)(6).

[2] While the Second Circuit in *Irizarry* was writing regarding the Fair Labor Standards Act ("FLSA"), "district courts in this Circuit have consistently interpreted the definition of 'employer' under the New York Labor Law coextensively with the definition used by the FLSA." *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019).

Vekaria has failed to plead any other facts that would establish that Seymour was his "employer." Vekaria does not allege that he worked in human resources under the control or supervision of Seymour. Instead, he acknowledges that he worked in the sales department. First Am. Compl. ¶ 22.

### C. Count Five - Fraudulent Inducement

Under New York law, a plaintiff alleging fraud must establish 1) a misrepresentation or omission of a material fact; 2) which the defendant knew to be false; 3) which the defendant made with the intention of inducing reliance; 4) upon which the plaintiff reasonably relied; and 5) which caused injury to the plaintiff. A claim for fraudulent inducement must satisfy these same elements. *Comolli v. Huntington Learning Ctrs., Inc.*, 117 F. Supp. 3d 343, 349 (S.D.N.Y. 2015).

#### 1. *Vekaria Fails to Plead Fraudulent Inducement with Particularity*

Vekaria's alternative claim of fraudulent inducement must be dismissed because he fails to meet the heightened pleading standards under Federal Rule of Civil Procedure 9(b). A claim for fraudulent inducement is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *Coppelson v. Serhant*, No. 19-cv-8481 (LJL), 2021 WL 148088, at *6 (S.D.N.Y. Jan. 15, 2021). Rule 9(b) requires a plaintiff pleading fraud to do the following in the complaint: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Id.* (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004)).

Vekaria does not detail any fraudulent statements or omissions made by Seymour. At most, Vekaria alleges that Seymour (1) drafted the Employment Agreement, at the direction of

Defendant Alex Headley (First Am. Compl. ¶ 29); (2) communicated with Vekaria "regarding the terms of the Employment Agreement, including specifically as to the equity that Mr. Vekaria needed to receive in order to join Mthree" (*id.*) and (3) was "specifically involved" in negotiations (without offering any actual "specificity" regarding statements or representations that Seymour purportedly made to Vekaria) (*id.* ¶ 98).  The only alleged misrepresentation that Vekaria describes in the First Amended Complaint was from Headley, not Seymour.  ("Mr. Headley confirmed and represented that Mr. Vekaria would receive the Mthree Stock, inclusive of the Initial Stock vesting immediately and fully paid by Mthree upon Mr. Vekaria's hiring . . . .") (*Id.* ¶ 29).  At best, Vekaria's theory of liability against Seymour is based on Seymour's supposed proximity to Headley.  Vekaria otherwise fails to allege where or when Seymour allegedly made a fraudulent statement to him.

### 2.   *Vekaria Fails to Allege a Misrepresentation of Fact*

Moreover, Vekaria's fraudulent inducement claim fails because the alleged misrepresentation was promissory and not factual.  "It is well-settled that allegations of mere promissory statements of future performance are not actionable for fraud."  *Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 210 (S.D.N.Y. 2001), *aff'd sub nom. Housing Works, Inc. v. Giuliani*, 56 F. App'x 530 (2d Cir. 2003); *Lampros v. Brasil*, No. 10 Civ. 9576 (DLC), 2012 WL 6021091, at *13 (S.D.N.Y. Dec. 4, 2012), *aff'd* 538 F. App'x 113 (2d Cir. 2013).  Vekaria attempts to characterize these as factual and not promissory representations through conclusory allegations.  "The MThree Defendants, for the purposes of inducing Mr. Vekaria to join MThree as an employee and retain Mr. Vekaria's employment after his hiring, made ***material misrepresentations of facts***, including representing that Mr. Vekaria was an equity holder in MThree and owned the MThree Stock upon his hiring."  First Am. Compl. ¶ 74 (emphasis

7

added).  But the only alleged misrepresentations (made by Mr. Headley) occurred ***prior to***

Vekaria's hiring.  The alleged representations were with respect to what would occur in the

future, i.e., after he became an Mthree US employee, and not what was a fact at that time.  As

such, they were promissory in nature and are not actionable for fraud.

### D.  Count Six – Negligent Misrepresentation

Under New York law, negligent misrepresentation occurs where:

> (1) the defendant had a duty, as a result of a special relationship, to give correct
> information; (2) the defendant made a false representation that he or she should
> have known was incorrect; (3) the information supplied in the representation was
> known by the defendant to be desired by the plaintiff for a serious purpose; (4) the
> plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied upon
> it to his or her detriment.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000).

#### 1.  *Vekaria Fails to Plead Negligent Misrepresentation with Particularity*

The same heightened pleading standard under Rule 9(b) applies to claims of negligent

misrepresentation that are based on the same set of facts as a fraud claim.  *Green v. Covidien LP*,

No. 18 Civ. 2939 (PGG), 2019 WL 4142480, at *7 (S.D.N.Y. Aug. 30, 2019).  Here, Vekaria's

negligent misrepresentation claims are based on the same (conclusory) allegations as his

fraudulent inducement claims, namely that Seymour and the other defendants "made false

representations and made material omissions of information to Mr. Vekaria . . . ."  First Am.

Compl. ¶ 81.  Similar to the fraudulent inducement claim, the negligent misrepresentation claim

fails because Vekaria has not described the substance of Seymour's alleged "false

representations" or "material omissions of information, or when or where he made them.

#### 2.  *Vekaria Does Not Allege a "Special or Privity-Like Relationship"*

Vekaria fails to allege a special relationship between Seymour and Vekaria such that

Seymour owed him a duty of disclosure.  Seymour did not have such a relationship with Vekaria

simply by being involved in negotiating the Employment Agreement. As set forth above, there was no employer-employee relationship at the time Vekaria alleges Seymour made a negligent misrepresentation. Even if there was one, it is not sufficient to establish a special or privity-like relationship sufficient to support a claim of negligent misrepresentation. "Courts have routinely held that the employer-employee relationship does not constitute a special relationship sufficient to support a claim for negligent misrepresentation." *Mota v. Imperial Parking Sys.*, No. 08 Civ. 9526, 2010 WL 3377497, at *13 n.34 (S.D.N.Y. Aug. 24, 2010) (quoting *Byong Y. Kwon v. Yun*, 606 F. Supp. 2d 344, 356-57 (S.D.N.Y. 2009).

Nor were Seymour and Vekaria party to any other contract that would give rise to a "special relationship" required for a negligent misrepresentation claim. Vekaria's allegations describe an arm's length negotiation leading up to the Employment Agreement. Without more, such a negotiation does not give rise to a special duty to speak with care. *See Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 293 (W.D.N.Y. 2014).

At most, Vekaria offers conclusory allegations that Seymour and the other defendants had "superior knowledge regarding the affairs of Mthree" based on their "management positions." First Am. Compl. ¶¶ 80-81. Vekaria fails to specify what "affairs of Mthree" Seymour or the other defendants were required to disclose to him. Regardless, "superior knowledge about a party's own business is insufficient to sustain a negligent misrepresentation claim." *In re Fyre Festival Litig.*, 399 F. Supp. 3d 203, 219-20 (S.D.N.Y. 2019) (internal quotation marks omitted).

### E.  Count Seven – Securities Exchange Act Claim

#### 1.  *Seymour Joins Mthree's Arguments for Dismissal of the Securities Claim*

Seymour joins the Mthree US and Wiley Motion's arguments for dismissal of Vekaria's claim brought under the Securities Exchange Act.  Mthree US' arguments that the claim is time-barred and that there was no "purchase or sale" of a security are as true for Seymour as they are for Mthree US.  Dkt. No. 66 at pp. 6-8.  The claim against Seymour purportedly arises out of the same "transaction" (or the lack thereof) as the claim against Mthree US, and Vekaria likewise failed to timely commence his claim thereafter.

#### 2.  *Vekaria Fails to Plead Securities Fraud with Particularity*

Vekaria's claim should also be dismissed because he has failed to plead with particularity his securities claims against Seymour.  Similar to the fraud claim, Vekaria's Securities Claim is subject to the Rule 9(b) pleading requirements.  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462-63 (2d Cir. 2019).  The purpose of this rule is "'to provide a defendant with fair notice of a plaintiff's claim'" and to "'safeguard his reputation from improvident charges of wrongdoing.'"  *Id.* at 463 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

Like the deficiencies with his claim of fraudulent inducement, Vekaria does not plead any specificity with respect to his Securities Claim against Seymour that would provide fair notice.  Again, Vekaria does not refer to any specific conversations with Seymour wherein Seymour purportedly made misrepresentations or omissions about the Mthree equity – neither the substance of any such conversation, nor the date or location of such conversation.

#### 3.  *Vekaria Fails to Plead Scienter*

Related to this, Vekaria also fails to allege that Seymour acted with scienter.  Vekaria must allege particularized facts to give rise to a strong inference of scienter.  *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  The "inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*  At best, Vekaria asks the court to infer scienter based on Seymour's supposed ownership of Mthree or his role as Director of Human Resources.

Vekaria fails to allege that Seymour knew or should have known that the alleged representations that Vekaria would be entitled to Mthree Equity were false.  At most, Vekaria alleges that Seymour drafted the Employment Agreement at the direction of Mthree UK's CEO Alex Headley.  First Am. Compl. ¶ 29.  This alone does not establish that Seymour knew at the time this was drafted that it was false.

## F.  Count Eight - Tortious Interference

### 1.  *Vekaria Fails to Allege Intentional Interference by Seymour*

To prevail on his tortious interference with contract claim against Seymour, Vekaria must show that "but for" Seymour's activities there would not have been a breach of the Employment Agreement.  *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990).  Vekaria's claim against Seymour must be dismissed because he does not allege what actions Seymour purportedly took to procure the breach.  He instead only offers conclusory allegations.  Lumping Seymour in with the other defendants, Vekaria broadly states that they each "acted intentionally to procure the breach."  First Am. Compl. ¶ 100.  Vekaria offers no facts suggesting that Seymour, individually, took any action whatsoever to induce Mthree US to breach its contract with him.  *Boehner v. Heise*, 734 F. Supp. 2d 389, 404 (S.D.N.Y. 2010) ("Plaintiffs must show Defendants' direct interference with a contract.  That is, Defendants must have directed some activities toward the customers whose contracts are alleged to have been breached."); *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 481 (S.D.N.Y. 1997) ("[I]n order to

11

establish a claim under the tort of interference with contractual relations, a third party must breach the contract after being induced to do so by the defendant."); *Manbro Energy Corp. v. Chatterjee Advisors, LLC*, No. 20 Civ. 3773 (LGS), 2021 WL 2037552, at *7 (S.D.N.Y. May 21, 2021) (dismissing tortious interference with contractual relations claim based on conclusory allegations).

Vekaria only alleges that Seymour was involved in the negotiation of the Employment Agreement (First Am. Compl. ¶ 27) and discussions with Vekaria after Mthree failed to give him his equity (*id.* ¶ 42). Critically, there are no allegations regarding what actions, if any, Seymour took to actually induce the breach. The mere facts that Seymour was employed at Mthree UK or that he was included in discussions before and after the alleged breach occurred are insufficient to allege that he intentionally interfered with the employment agreement. *See Gundlach v. IBM Japan, Ltd.*, 983 F. Supp. 2d 389, 399 (S.D.N.Y. 2013), *aff'd* 594 F. App'x 8 (2d Cir. 2014) ("There are no facts suggesting that [individual defendant] took any action whatsoever to induce [third party] to breach its contract with Plaintiff.")

### 2. Vekaria Fails to Allege that Seymour Was a Third Party Acting Outside of Bounds of His Authority

Vekaria's tortious interference with contractual relations claim against Seymour must be dismissed because he fails to adequately plead that Seymour was a "third party" to the Employment Agreement. Vekaria claims that Seymour was an employee of Mthree US. First Am. Compl. ¶ 17. Accordingly, under New York law, Vekaria cannot maintain a tortious interference claim against Seymour unless he establishes that Seymour acted outside of the scope of his authority in interfering with the Employment Agreement.

A director of a corporation is not personally liable to one who has contracted with the corporation on the theory of inducing a breach of contract, merely due to the

fact that, while acting for the corporation, he has made decisions and taken steps
that resulted in the corporation's promise being broken.

*Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 915 (1978) (internal quotation marks
omitted).  The only way in which a tortious interference claim may be brought against a fellow
employee is by showing that they "acted outside the scope of their duties and contrary to the
[employer]'s interests . . . ."  *Komlossy v. Faruqi & Faruqi, LLP*, No. 15 Civ. 9316 (KPF), 2017
WL 722033, at *11 (S.D.N.Y. Feb. 23, 2017), *aff'd* 714 F. App'x 11 (2d Cir. 2017).  As
discussed above, Vekaria has not made any allegations that Seymour did anything to induce
Mthree's breach, either within or outside of the scope of his authority as an Mthree employee.[3]

Vekaria only alleges that Seymour participated in the negotiation of the Employment
Agreement **prior to its execution**, which he claims amounted to fraudulent inducement or
negligent misrepresentation.  Setting aside the fact that participating in the negotiation of an
employment contract is within the scope of Seymour's responsibilities, such conduct is
nonetheless insufficient to allege tortious interference when it occurred before the Employment
Agreement was executed.  In order to prevail on the tortious interference with contract claim
against Seymour, Vekaria had to allege that Seymour engaged in such conduct in order to
procure Mthree's purported breach of the Employment Agreement **after its execution**.  Again,
Vekaria hasn't alleged in any detail that Seymour did anything, fraudulent or otherwise, to
induce Mthree US' actions towards Vekaria after the execution of the Employment Agreement.

---

[3] If the court finds that Seymour is an employer for purposes of New York Labor Law, then the tortious interference
claim necessarily fails.  "An employer cannot be liable for interfering with its own relationship with its employee."
*Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 561 (S.D.N.Y. 2009), *aff'd* 358 F. App'x 229 (2d Cir. 2009) (internal
quotation marks omitted).

> 3.  *Vekaria's Claim Against Seymour Is Duplicative of the Breach of Contract Claim*

Vekaria's claim of tortious interference against Seymour should be dismissed because it duplicates the breach of contract claim against Mthree.  "Under New York law, a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Frankel v. U.S. Healthcare, Inc.*, No. 18 Civ. 06378 (ER), 2019 WL 4450640, at *6-7 (S.D.N.Y. Sept. 17, 2019) (internal quotation marks omitted).  Here, Vekaria offers conclusory allegations that Seymour, in his role as an Mthree employee, induced Mthree US to breach the Employment Agreement.  Even in the absence of necessary details regarding his involvement in the alleged breach by Mthree US, Vekaria does not and cannot allege that Seymour owed him any duty independent of the Employment Agreement.  Any obligation Seymour owed to Vekaria was a result of the Employment Agreement, which Vekaria claims Mthree US breached.  Accordingly, the tortious interference claim against Seymour must be dismissed.

### G.  Count Nine – Conversion

Seymour joins Mthree US and Wiley's Motion to dismiss the Conversion claim.  Similar to the claims against those defendants, Vekaria's conversion claim against Seymour is duplicative of the breach of contract claim against Mthree US.  Dkt. No. 66 at p. 11.

## II.      RULE 12(b)(2) MOTION TO DISMISS

### A.  Standard

In order to survive a Rule 12(b)(2) motion to dismiss, the plaintiff must make a prima facie showing that personal jurisdiction exists over the defendant. *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010).  "On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint

14

and consider all pleadings and accompanying affidavits and declaration, while still resolving all doubts in plaintiff's favor." *Arch Specialty Ins. Co. v. Varanda Grp., Inc.*, No. 18 Civ. 7971 (PAE), 2019 WL 1493660, at *1 n.2 (S.D.N.Y. Apr. 4, 2019) (internal quotation marks omitted). The Court is not bound by conclusory statements offered without supporting facts. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998).

To determine if the Court has personal jurisdiction over a foreign defendant, it "must look first to the long-arm statute of the forum state, in this instance, New York.  If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997) (internal citations omitted).  Under New York law, the relevant long-arm statute is N.Y. CPLR 302(a).  *Id.*

**B.  No Personal Jurisdiction Under N.Y. CPLR 302(a)(1)**

Vekaria fails to establish in his pleadings that the court can exercise jurisdiction over Seymour under N.Y. CPLR 302(a)(1).  Under that provision, jurisdiction is only proper over a non-domiciliary defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state." *Alpi USA, Inc. v. D & F Fashion Int'l Gemelli*, No. 06 Civ.2091 (RJH), 2007 WL 942096, at *2 (S.D.N.Y. Mar. 29, 2007).  The court examines "not only isolated acts, but the totality of defendants' activities conducted within the forum." *Id.* This includes:

> whether he has an on-going contractual relationship with a New York corporation, whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant visited New York for the purpose of meeting with parties to the contract regarding the relationship.

*Pincione v. D'Alfonso*, 506 F. App'x 22, 25 (2d Cir. 2012) (internal quotation marks omitted).

Seymour's alleged conduct does not arise to the level of transacting any business within the state.  Vekaria does not (and cannot) allege that Seymour was physically present in New York during the negotiation of the Employment Agreement.  Vekaria acknowledges that Seymour works and resides in London, England.  First Am. Compl. ¶ 17.  Consistent with this, Seymour performed his responsibilities with respect to preparing the Employment Agreement (at Mr. Headley's direction) from London, England.  Seymour Aff. ¶ 7.

Nor does Vekaria plead that Seymour has a relationship with a New York corporation. Vekaria alleges that Seymour works for Mthree, a Delaware corporation.  This is incorrect, as Seymour in fact worked for a UK entity during the events described in the First Amended Complaint and resigned from his position on November 24, 2022.  Seymour Aff. ¶¶ 1-3.  But even if taken as true, it is still insufficient to establish personal jurisdiction.

And finally, Vekaria does not (and cannot) allege that Seymour ever set foot in New York for the purpose of meeting with him regarding his contractual agreement with Mthree US. *Pincione*, 506 F. App'x at 25.

### C.  No Personal Jurisdiction Under N.Y. CPLR 302(a)(3)

Vekaria likewise fails to establish that the court has jurisdiction over Seymour under N.Y. CPLR 302(a)(3).  Under that provision, a New York court may exercise jurisdiction over a non-domiciliary defendant who:

> commits a tortious act without the state causing injury to person or property within the state . . . if he: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. CPLR 302(a)(3).

16

Vekaria does not (and cannot) allege, in even a conclusory fashion, that Seymour "derives substantial revenue from goods used or consumed or services rendered [in New York]," or that he "derives substantial revenue from interstate or international commerce" in his role as the Director of Human Resources for Mthree UK. *Family Internet, Inc. v. Cybernex, Inc.*, No. 98 Civ. 0637 (RWS), 1999 WL 796177, at *7 (S.D.N.Y. Oct. 6, 1999) (employer's interstate revenue is not imputed to defendant employee for purposes of personal jurisdiction). Vekaria only alleges "upon information and belief" that Seymour was a "stockholder[] in Mthree [US]." First Am. Compl. ¶ 3. This is incorrect. During his time as an employee of Mthree UK, Seymour did not have any ownership interest in Mthree US, Mthree UK, or any other company that derived revenue from interstate or international commerce. Seymour Aff. ¶¶ 4-5. Accordingly, Vekaria does not and cannot allege that Seymour otherwise derived substantial revenue from interstate or international commerce.

### D.  Jurisdiction Over Seymour Does Not Comport with Due Process

Setting aside the fact that Vekaria has not made a prima facie showing that the exercise of jurisdiction would be appropriate under the New York long-arm statute, he has likewise failed to establish that it is also appropriate under the Due Process Clause of the Constitution. In order for the court's exercise of personal jurisdiction over a non-domiciliary defendant to comport with the Due Process Clause of the Constitution, the plaintiff must establish that the defendant purposefully established minimum contacts with the state, such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002) (internal quotation marks omitted). Where the claim arises out of the defendant's contacts with the forum, minimum contacts exist "where the defendant purposefully availed itself of the privilege of doing business

17

in the forum and could foresee being haled into court there."  *Id.* (internal quotation marks omitted).

Vekaria has not alleged that Seymour purposefully availed himself of doing business in New York, beyond his minimal involvement in the negotiation of the Employment Agreement. Vekaria does not make any claims at all about Seymour's contacts with New York, beyond a conclusory assertion that "the acts and occurrences that gave rise to this dispute occurred substantially in New York, New York."  First Am. Compl. ¶ 21.

The mere fact that Seymour signed the Employment Agreement is immaterial.  An individual's contract with an out-of-state party does not, by itself, "automatically establish sufficient minimum contacts."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  The unilateral activity of plaintiff executing a contract in New York is an insufficient basis upon which to acquire jurisdiction over a non-domiciliary defendant.  *Falow v. Cucci*, No. 00 CV 4754 (GBD), 2003 WL 22999458, at *4 (S.D.N.Y. Dec. 19, 2003).  And critically, Vekaria acknowledged that Seymour signed the Employment Agreement not on his own behalf, but on behalf of Mthree US (which did not dispute personal jurisdiction).  First Am. Compl. ¶ 23.

Moreover, during the events described in the First Amended Complaint, Seymour resided and worked in London, England.  Seymour Aff. ¶¶ 1-2.  As Mthree UK's Senior Director of Human Resources, he could not reasonably expect that he was subjecting himself to personal jurisdiction in his individual capacity in every state or country in which an Mthree employee resides.  As such, the exercise of personal jurisdiction over Seymour would plainly offend notions of fair play and substantial justice.

## <u>CONCLUSION</u>

For the foregoing reasons, Thomas Seymour requests that the Court (1) dismiss Counts Three through Nine of Mr. Vekaria's First Amended Complaint, and (2) dismiss Mr. Vekaria's First Amended Complaint against him for lack of personal jurisdiction.

Dated: Hoboken, New Jersey
       February 3, 2023

                    Respectfully submitted,

          By:  /s/ Kevin H. Kim
               Kevin H. Kim
               John Wiley & Sons, Inc.
               111 River Street
               Hoboken, New Jersey 07030
               Phone: (201) 748-5809
               Fax: (201) 748-6500
               kkim2@wiley.com

               *Attorney for Defendants John Wiley & Sons, Inc.,
               Mthree Corporate Consulting, Ltd., and Thomas
               Seymour*