UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
JITENDRA VEKARIA,                                                      :
                                                                       :
                           Plaintiff,                                  :
                                                                       :      22 Civ. 3197 (JPC) (JLC)
              -v-                                                      :
                                                                       :      OPINION AND ORDER
                                                                       :
MTHREE CORPORATE CONSULTING, LTD. *et al.*,                            :
                                                                       :
                           Defendants.                                 :
                                                                       :
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

In January 2019, at the conclusion of months of negotiations, Plaintiff Jitendra Vekaria entered into an employment agreement with Defendant Mthree Corporate Consulting Limited ("Mthree"). Vekaria alleges that, pursuant to that agreement, Mthree promised to grant Vekaria 1% equity in the company at the beginning of his employment and an additional 2% equity if Mthree was acquired by another company—an event that occurred roughly a year later when Mthree was acquired by John Wiley & Sons Limited, a subsidiary of Defendant John Wiley & Sons, Inc. ("Wiley"). According to Vekaria, these terms were critical to his decision to leave his then-current employer for Mthree. But when, upon his separation from Mthree in April 2020, Vekaria sought to clarify the status of his entitlement to this contracted-for equity, both Mthree and Wiley insisted that Vekaria was not a stockholder. Vekaria thus brought this action against Wiley, Mthree, various Mthree employees and agents, and Mthree's then majority shareholder, ECI Partners LLP ("ECI"), alleging breach of contract and other state law claims, as well as a violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5.

Before the Court are motions to dismiss filed by Defendants Mthree, Wiley, ECI, and Mthree employees Richard Chapman and Thomas Seymour (collectively, the "Moving Defendants"). As noted below, *see infra* I.B, two Defendants—Alex Headley and Benjamin Town (also alleged to be agents and/or employees of Mthree)—have not appeared in this action. For the reasons provided, the Moving Defendants' motions as to Count Seven, Vekaria's federal securities claim, are granted. Their motions are otherwise denied without prejudice in light of the Court's decision to decline supplemental jurisdiction over the remaining state law claims and determination that diversity jurisdiction has not been adequately pleaded to give this Court original jurisdiction over those claims. The Court further dismisses *sua sponte* Count Seven as against Headley and Town. Finally, the Court's dismissals are without prejudice, and the Court *sua sponte* grants Vekaria leave to amend to the extent he can cure the deficiencies discussed herein, including those deficiencies respecting his assertion of diversity jurisdiction.

## I. Background

**A.    Facts[1]**

Vekaria "resid[es] in Massachusetts." Am. Compl. ¶ 11. Mthree is "a Delaware corporation registered to do business in New York" with a service of process address in New York. *Id.* ¶ 12. Wiley is a "New York corporation" with a service of process address also in New York. *Id.* ¶ 13. ECI "is a limited liability partnership registered in England and Wales" with a New York

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Amended Complaint, Dkt. 63 ("Am. Compl."). *See Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (explaining that on a motion to dismiss pursuant to Rule 12(b)(6), the court must "assum[e] all facts alleged within the four corners of the complaint to be true, and draw[] all reasonable inferences in plaintiff's favor"). In addition, the Court "may consider any . . . statements or documents incorporated into the complaint by reference [and] legally required public disclosure documents filed with the SEC." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

"business address." *Id.* ¶ 14.  Alex Headley, Benjamin Town, Thomas Seymour, and Richard Chapman—all alleged to be former and/or current Mthree employees or agents—are "resident[s]" of England.  *Id.* ¶¶ 15-18.

In a Form 10-Q quarterly report filed by Wiley pursuant to the Exchange Act following its acquisition of Mthree, Wiley described Mthree as a "rapidly growing education services provider" that locates, trains, and places "job-ready technology talent in roles with leading corporations worldwide."  John Wiley & Sons, Quarterly Report (Form 10-Q), at 13 (Mar. 6, 2020), available at https://investors.wiley.com/financials/sec-filings/default.aspx (last accessed Sept. 28, 2023). Vekaria began working at Mthree in the company's sales department for North America on or about January 7, 2019, Am. Compl. ¶ 22, and before that was employed by J.P. Morgan, *id.* ¶ 27. At issue in this case are the terms of and the circumstances around the employment agreement (the "Employment Agreement") that Vekaria entered into with Mthree on or about January 7, 2019. *Id.* ¶ 23.

Before leaving his position at J.P. Morgan to join Mthree, Vekaria engaged in "extensive pre-employment discussions and negotiations" with Headley, Town, Seymour, and Chapman.  *Id.* ¶ 27.  At the time of these negotiations, Headley was Mthree's Chief Executive Officer, Town was its founding partner and Global Sales Director, Seymour was its Director of Human Resources, and Chapman was a partner of ECI (then Mthree's majority shareholder) as well as a former member of Mthree's Board of Directors.  *Id.* ¶¶ 15-18.  Vekaria reiterated throughout these negotiations, which continued over the course of several months, (1) that he would lose a substantial amount of equity-based compensation from J.P. Morgan if he left his position there and (2) that he would thus join Mthree only if guaranteed a meaningful equity position.  *Id.* ¶ 28.

On January 2, 2019, Headley confirmed over email that Vekaria would receive a certain percentage of Mthree equity at the beginning of his employment. *Id.* ¶ 29. Headley further directed Seymour, who was copied on that same email, to prepare an agreement to that effect. *Id.* Vekaria continued these discussions directly with Seymour, negotiating the terms Vekaria required to join Mthree. *Id.* Under the Employment Agreement, which was executed on or around January 7, 2019, Mthree agreed to grant Vekaria 1% equity in the company at the beginning of his employment and either an additional 2% equity if Mthree was acquired by another company, or additional awards of 1% equity upon the first and second anniversaries of Vekaria's employment at Mthree. *Id.* ¶¶ 24-25. These terms, Vekaria maintains, were critical to his decision to leave J.P. Morgan and join Mthree. *Id.* ¶ 2.

Just under a year later, John Wiley & Sons Limited, a Wiley subsidiary, announced that it had acquired Mthree from ECI for a purchase price of $128.6 million dollars, securing "100% of the outstanding stock of Mthree." *Id.* ¶¶ 34-36. Vekaria, as well as other Mthree employees, then received a "transaction bonus" from Mthree purportedly in recognition of his support to the company and in making the acquisition a success. *Id.* ¶ 39. The letter from Mthree conveying this bonus made no mention of Vekaria's Mthree Stock. *Id.* Nor had Vekaria ever agreed to sell or transfer his equity in Mthree to Wiley in conjunction with this acquisition. *Id.* ¶ 40. Based on the approximate purchase price of Mthree disclosed in Wiley's March 6, 2020 10-Q Quarterly Report and subsequent reports, Vekaria maintains that his 3% ownership interest in Mthree considering the acquisition (*i.e.*, the "Mthree Stock") "is valued at approximately $3,858,000.00." *Id.* ¶ 36.

ECI profited substantially from the acquisition, touting on its website its "2.7x" return on its "sale to Wiley." *Id.* ¶ 37 (citing ECI Webpage, available at https://www.ecipartners.com/our-companies/mthree (last accessed Sept. 28, 2023)). Moreover, Headley, Town, Seymour, and

4

Chapman—as Vekaria alleges "upon information and belief"—all held stock or stock interest in Mthree and likewise received "compensation . . . in connection with" the acquisition. *Id.* ¶ 38.

Vekaria continued to work at Mthree until April 2020. *Id.* ¶ 41. After his separation from the company, he sought to clarify the status of his entitlement to the Mthree Stock as well as certain tax issues resulting from the Wiley acquisition. *Id.* ¶ 42. Vekaria's inquiries were escalated to senior members of Mthree's and Wiley's management team, including Town and Seymour, who remained at Mthree after the acquisition. *Id.* In these discussions, Wiley and Mthree maintained that Vekaria was not a stockholder, and that Vekaria was not entitled to any compensation from the Mthree Stock. *Id.* ¶ 43. ECI also "rejected any claims of liability whatsoever on account of" the Mthree Stock. *Id.*

**B.     Procedural History**

Vekaria filed his original Complaint on April 19, 2022. Dkt. 1. He served Mthree, Wiley, and ECI on May 17, 2022. Dkts. 18-20. On July 21, 2022, the Court ordered Vekaria to advise the Court whether he had served the summons and Complaint on Headley, Town, Seymour, and Chapman, given that they had not then appeared in the action. Dkt. 29. The Court granted Vekaria's subsequent requests for additional time to serve those Defendants. Dkts. 32-35. Although Vekaria eventually succeeded in serving Chapman, Dkt. 37, Vekaria continued to struggle to serve the other three individual Defendants, and thus moved for the Court's permission to serve them through alternative means. Dkt. 38. The Court partially granted Vekaria's motion as to the proposed alternative means of serving Town and Seymour and denied the motion as to the proposed means of serving Headley. Dkt. 46 ("These [alternative] methods of communication taken together are . . . likely to successfully inform Town and Seymour of this lawsuit, as constitutional notions of due process require. . . . The Court does not find, however, that the

5

methods of service Plaintiff has proposed would be reasonably calculated to appraise the third Remaining Defendant, Headley . . . ."). After the Court granted more extension requests, Vekaria successfully served Town and Seymour on November 9, 2022. Dkts. 56-57. To date, the docket does not reflect service on Headley, and neither Headley nor Town has appeared in this action.

Earlier, on July 22, 2022, Wiley and Mthree had moved to dismiss several counts of the original Complaint. Dkts. 30-31. But after Vekaria filed an Amended Complaint on January 18, 2023, Dkt. 63, after receiving leave to do so, Dkt. 59, the Court denied as moot Wiley and Mthree's July 22, 2022 motion, Dkt. 64. The Amended Complaint contains only minor changes from the original Complaint. *Compare* Dkt. 1 *with* Am. Compl.; *see also* Dkt. 58 (Vekaria's counsel explaining that the "First Amended Complaint contains minimal changes, primarily to reflect the named defendant as ECI Partners LLP, and there are no new substantive allegations or claims").

In the Amended Complaint, Vekaria invokes this Court's diversity jurisdiction and federal question jurisdiction (along with supplemental jurisdiction), Am. Compl. ¶¶ 19-20, and brings nine counts under state law and one under federal law. Specifically, against only Mthree, Vekaria asserts a breach of contract claim (Count One) and a claim for breach of the implied covenant of good faith and fair dealing (Count Two). *Id.* ¶¶ 47-57. Against Mthree, Headley, Town, Seymour, and Chapman (collectively, the "Mthree Defendants"), he brings fraudulent inducement (Count Five) and negligent misrepresentation (Count Six) claims, *id.* ¶¶ 72-85, and further alleges violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 (Count Seven), *id.* ¶¶ 86-94—the only claim arising under federal law. Against all Defendants, he asserts unpaid wages (Count Three) and unlawful deductions (Count Four) claims under the New York Labor Law ("NYLL"), *id.* ¶¶ 58-71, as well as a claim for conversion (Count Nine), *id.* ¶¶ 103-107. Against Wiley, ECI, Headley, Town, Seymour, and Chapman, Vekaria alleges interference with

contractual relations (Count Eight). *Id.* ¶¶ 95-102. Finally, Vekaria seeks a declaratory judgment under Section 3001 of the New York Civil Practice Law and Rules affirming his ownership interest in the Mthree Stock and ordering the rescission of any transactions associated with it (Count Ten). *Id.* ¶¶ 108-110.

On February 3, 2023, Wiley and Mthree moved jointly under Federal Rule of Civil Procedure 12(b)(6) to dismiss the NYLL claims (Counts Three and Four), the Exchange Act claim (Count Seven), and the claims for interference with contractual relations and conversion (Counts Eight and Nine). Dkt. 66 ("Wiley & Mthree Br."). ECI and Chapman moved jointly under Rule 12(b)(6) to dismiss the NYLL claims (Counts Three and Four), the fraudulent inducement and negligent misrepresentation claims (Counts Five and Six), the Exchange Act claim (Count Seven), the tortious interference claim (Count Eight), and the declaratory judgment claim (Count Ten). Dkt. 68 ("ECI & Chapman Br."). And Seymour moved under Rule 12(b)(2) to dismiss the action as against him for lack of personal jurisdiction, and alternatively under Rule 12(b)(6) to dismiss the NYLL claims (Counts Three and Four), the Exchange Act claim (Count Seven), the fraudulent inducement claim (Count Five), the negligent misrepresentation claim (Count Six), the tortious interference claim (Count Eight), and the conversion claim (Count Nine). Dkt. 70 ("Seymour Br.").

On March 30, 2023, Vekaria filed his opposition to each of these motions. Dkts. 74, 75 ("Pl. Opp. to Wiley & Mthree"), 76. On April 28, 2023, the Moving Defendants filed their respective replies. Dkts. 81-83.

## II. Legal Standards

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

A plaintiff bringing securities fraud claims must satisfy heightened pleading standards under Federal Rule of Civil Procedure 9(b) to survive a motion to dismiss.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Specifically, the plaintiff's fraud allegations under Section 10(b) and Rule 10b-5 "must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Diesenhouse v. Soc. Learning & Payments, Inc.*, No. 20 Civ. 7436 (LJL), 2022 WL 3100562, at *4 (S.D.N.Y. Aug. 3, 2022) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).  Allegations that are conclusory or unsupported by factual assertions are insufficient.  *See ATSI Commc'ns*, 493 F.3d at 99; *see also Luce v. Edelstein*, 802 F.2d 49, 54 (2d Cir. 1986).

### III.  Discussion

**A.     Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction.  Accordingly, this Court must assure itself of its subject matter jurisdiction as a threshold matter before proceeding to the merits of this case. *See Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) (explaining that federal courts "have an

8

independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*"). Title 28, United States Code, Sections 1331 and 1332 provide for a federal district court's jurisdiction when a "federal question" is presented or when a plaintiff asserts claims under a court's diversity jurisdiction. A district court has diversity jurisdiction over a matter when the plaintiff(s) and the defendant(s) are citizens of different states and the amount in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). Section 1367 also allows a district court, when it has original jurisdiction over certain claim or claims, to exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367.

Vekaria asserts each of federal question, supplemental, and diversity jurisdiction. Invoking this Court's federal question jurisdiction, Vekaria alleges that the action "arises under the provisions of the Securities and Exchange Act of 1934" and its implementing rules and regulations, and further asserts that this Court "also has supplemental jurisdiction over the related claims" under Section 1367. Am. Compl. ¶ 20. Vekaria also invokes this Court's diversity jurisdiction as to all claims, by alleging that "this case is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." *Id.* ¶ 19.

The Court is satisfied that it has jurisdiction to hear Vekaria's federal securities claim under Section 10(b), and further that it has discretion to exercise supplemental jurisdiction to hear the nine other state law claims, provided that they "form part of the same case or controversy" as the federal law claim. 28 U.S.C. § 1367(a); *accord Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) ("A state law claim forms part of the same controversy if it and the

federal claim derive from a common nucleus of operative fact." (internal quotation marks omitted)); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right."). But upon review of the Amended Complaint, the Court is unable to find that it has diversity jurisdiction in this case because Vekaria has failed to properly allege the parties' citizenships.

First, it is well established that statements of a party's residence do not suffice to establish that party's citizenship. *See, e.g.*, *John Birch Soc'y v. Nat'l Broad. Co.*, 377 F.2d 194, 199 (2d Cir. 1967). Yet that is the only information Vekaria alleges as to every natural person involved in this lawsuit. *See* Am. Compl. ¶¶ 11 ("Vekaria is a natural person residing in Massachusetts"), 15 ("Alex Headley . . . is a resident of England."), 16 ("Benjamin Town . . . is currently a resident of London, England."), 17 ("Thomas Seymour . . . is a resident of London, England."), 19 ("Richard Chapman . . . is a resident of London, England.").

Vekaria's allegations as to the corporate defendants are similarly deficient. Vekaria has provided no information on either of Mthree's or Wiley's principal place of business or state of incorporation, instead only describing them as a corporation of a state with a service of process address in New York. *Id.* ¶¶ 12 (alleging that Mthree is a "Delaware corporation" with a New York service of process address), 13 (alleging that Wiley is a "New York corporation" with a New York service of process address); *see Jenkins v. Virgin Atlantic Airways, Ltd.*, 46 F. Supp. 2d 271, 273-74 (S.D.N.Y. 1999) ("Allegations as to the state of incorporation and the principal place of business must appear on the face of the complaint lest the court erroneously exercise jurisdiction where complete diversity is lacking."). Nor has Vekaria pleaded the citizenship of ECI's general and limited partners. Am. Compl. ¶ 14 (alleging only that "ECI Partners LLP is a limited liability partnership registered in England and Wales" with a New York business address); *see Handelsman*

10

*v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000) ("[F]or purposes of diversity jurisdiction, limited partnerships have the citizenship of each of its general and limited partners." (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990))).

These allegations fall short of pleading that each Defendant has citizenship that is diverse as to Vekaria. Indeed, as noted, Vekaria does not even sufficiently allege his own citizenship. Because the Amended Complaint has not sufficiently pleaded this Court's diversity jurisdiction, the Court first exercises its federal question jurisdiction over Vekaria's lone federal claim, Count Seven, and then considers whether to exercise its supplemental jurisdiction over his remaining state law claims.

**B.     Securities Fraud Claim (Count Seven)**

Under Section 10(b) of the Exchange Act, it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security[,] . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5, promulgated by the SEC, implements this provision and, *inter alia*, prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5(b). "To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Emps.' Ret. Sys. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting *ATSI Commc'ns*, 493 F.3d at 105).

Vekaria alleges that the Mthree Defendants violated Section 10(b) and Rule 10b-5 by making false statements of material facts—*i.e.*, Headley's representations in emails with Vekaria that Vekaria would be entitled to receive the Mthree Stock and "the very terms of the Employment Agreement confirming such understandings"—to induce Vekaria to "purchase" the Mthree Stock by leaving his previous employer and joining Mthree.  Am. Compl. ¶¶ 89-90.

In moving to dismiss Count Seven, Mthree argues that the claim is untimely and, in any event, fails because the allegedly fraudulent statements concerning Vekaria's entitlement to the Mthree Stock were not in connection with the purchase of a security.  Wiley & Mthree Br. at 6-8.  Chapman largely reiterates Mthree's timeliness argument but takes a slightly different approach in challenging the merits of Vekaria's securities claim: Chapman contends that Vekaria has failed to plead that "there was a purchase or sale of a security" at all, and further argues that Vekaria has failed to plead "any facts giving rise to any inference of scienter" as to Chapman or otherwise specify any misrepresentations that Chapman himself made.  ECI & Chapman Br. at 18-20.  Finally, Seymour joins Mthree's arguments for dismissal, Seymour Br. at 10, and—like Chapman—further argues that Vekaria has neither pleaded scienter as to Seymour nor otherwise specified any misrepresentations that Seymour made, *id.* at 10-11.

Because the alleged misrepresentations were not made "in connection" with the purchase or sale of a security, as contemplated by Section 10(b) and Rule 10b-5, the Court dismisses Vekaria's Exchange Act claim on that ground alone, without reaching the Mthree Defendants' alternative arguments concerning the timeliness of the claim, the particularity with which the claim was pleaded as to Chapman and Seymour, and the sufficiency of Vekaria's scienter allegations as to Chapman and Seymour.

As a preliminary matter, it is well established under Second Circuit case law that "[e]mployment contracts promising shares as compensation are generally considered securities transactions within Rule 10b-5." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). That is so "even if the contract was never fully performed" and the stock was not actually sold. *Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 (2d Cir. 1985) (holding that stock offered as an inducement to accept employment qualifies as a purchase or sale of securities under the Exchange Act). Accordingly, Vekaria has adequately pleaded a securities transaction.

Fatal to Vekaria's securities claim as pleaded, however, is the nature of the alleged fraud. Both Section 10(b) and Rule 10b-5 prohibit manipulative or deceptive conduct "***in connection with*** the purchase or sale of any security." 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(b) (emphasis added). As the Second Circuit has explained, in articulating the meaning of the "in connection with" requirement:

> The purpose of § 10(b) and Rule 10b-5 is to protect persons who are deceived in securities transactions—to make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be.

*Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984); *id.* ("The Act and Rule impose liability for a proscribed act in connection with the purchase or sale of a security; it is not sufficient to allege that a defendant has committed a proscribed act in a transaction of which the pledge of a security is a part."); *cf. Yoder*, 751 F.2d at 560 ("We have also acknowledged that the Securities Exchange Act is for the protection of investors, and its provisions must be read accordingly." (internal quotation marks omitted)).

Accordingly, when the "alleged fraud concern[s] the fundamental nature of securities"—"namely, the characteristics and attributes that would induce an investor to buy or sell the particular

13

securities"—the requirement that the fraud be "in connection with the purchase or sale of any security" plainly is met. *Citibank, N.A. v. K-H Corp.*, 745 F. Supp. 899, 903 (S.D.N.Y. 1990) (internal quotation marks omitted); *see Yoder*, 751 F.2d at 556 (holding that a "complaint alleging that a company knowingly misrepresented its financial condition when it undertook to issue its stock to a person, who, in reliance thereon, became an employee and also transferred certain assets as a part of the transaction, stated a claim under the federal securities law"). Along a similar vein, "misrepresentations [that] directly involve the consideration for a securities transaction" may also be actionable under Section 10(b). *S.E.C. v. Drysdale Sec. Corp.*, 785 F.2d 38, 41 (2d Cir. 1986). And, to that end, "making a specific promise to perform a particular act in the future while secretly intending not to perform that act may violate Section 10(b) where the promise is part of the consideration for the transfer of securities," so long as that promise "encompass[es] particular actions and [is] more than a generalized promise to act as a faithful fiduciary." *Luce*, 802 F.2d at 55.

Excluded from the ambit of Section 10(b), however, are claims predicated on allegations of fraud related only to the defendant's refusal to transfer promised shares. *See Yoder*, 751 F.2d at 560-61 (distinguishing misrepresentations with respect to the value of a security from misrepresentations with respect to a defendant's "intention not to comply with a particular agreement"); *see also Mills*, 12 F.3d at 1176 ("The failure to carry out a promise made in connection with a securities transaction is normally a breach of contract."); *Hunt v. Robinson*, 852 F.2d 786, 787 (4th Cir. 1988) (explaining that where "[t]he alleged fraud lies, not in the actual sale of the stock, but rather in defendants' refusal to tender the shares as required by the terms of the contract," there is no "causal connection between the alleged fraud and the purchase or sale of stock" for purposes of Rule 10b-5); *Levitin v. PaineWebber, Inc.*, 933 F. Supp. 325, 328 (S.D.N.Y.

1996) ("To satisfy this ['in connection with the purchase or sale'] requirement, the misrepresentation or omission must pertain to the securities themselves; allegations of fraud merely involving securities are not sufficient." (citing *Chem. Bank*, 726 F.2d at 943)).

For example, in *Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666 (S.D.N.Y. 2017), the plaintiff alleged that the defendant corporations induced the plaintiff to work for them by making "oral and written assurance that [his] compensation would include a stock options award." *Id.* at 671. The defendants continually represented that the plaintiff "would be awarded his equity compensation package at some future date," but ultimately terminated him without following through on those promises. *Id.* at 673. In that case, the court held that the plaintiff failed to state an actionable claim under federal securities law "because [the plaintiff's] allegations of fraud did not actually affect the value of [the subject] shares and, therefore, [were] not connected to the purchase or sale of a security." *Id.* at 678. Rather, the plaintiff had merely alleged that the defendants "failed to provide the shares in accordance with the contested Employment Agreement." *Id.* at 679.

Vekaria's federal securities fraud claim, too, fails as a matter of law. The gravamen of Vekaria's securities claim is that the Mthree Defendants have fraudulently refused to issue the Mthree Stock to him.[2] There is no allegation that the Mthree Defendants' conduct misrepresented

---

[2] Vekaria's Amended Complaint is not a model of clarity. At one point, Vekaria alleges that the Mthree Defendants' representations that Vekaria "would be entitled" to the Mthree Stock and indeed the terms of Employment Agreement itself constituted "untrue statements." Am. Compl. ¶ 89. But, as Mthree maintains in its motion to dismiss: "If Mr. Vekaria is actually entitled to the Mthree Equity, as he suggests in his breach of contract claim, then it cannot be the case that Mthree made a misrepresentation about this fact as well. Mr. Vekaria failed to plead the Securities Claim in the alternative to the breach of contract claim." Wiley & Mthree Br. at 7 n.3. If Vekaria is, in fact, arguing his securities claim in the alternative to his breach of contract claim—and thereby conceding for purposes of his securities claim that he was *not* in fact entitled to the Mthree Stock through the Employment Agreement—that would necessarily mean that a valid contract to

or affected the value of the company's stock or otherwise concerned the characteristics or attributes that would induce an investor to buy or sell that stock.  The alleged conduct of the Mthree Defendants therefore was not "in connection with the purchase or sale of" the Mthree Stock, and rather appears to sound in breach of contract, fraudulent inducement, or perhaps other state or common law causes of action.[3]

Accordingly, Vekaria has failed to allege fraud in connection with the purchase or sale of a security.  Mthree's, Seymour's, and Chapman's motions to dismiss Count Seven therefore are granted.  Because it is apparent that the same arguments warranting dismissal as to Count Seven against those Defendants also warrant dismissal against the two Defendants who have not yet appeared, and because Vekaria has had the full opportunity to address those arguments in opposing the Moving Defendants' motion, the Court also dismisses Count Seven as to Headley and Town. *Antidote Int'l Films, Inc. v. Bloomsbury Pub., PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) ("[W]hile dismissing a complaint as to a non-moving defendant is not an ordinary practice, a

---

transfer the stock did not exist.  This in turn would be problematic for Vekaria's threshold argument, as discussed *supra*, that his securities fraud claim is viable because "a contract for the issuance or transfer of a security may qualify as a sale under the securities laws even if the contract is never fully performed."  Pl. Opp. to Wiley & Mthree at 17 (quoting *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 144 (S.D.N.Y. 1988)).  Accordingly, the Court presumes Vekaria to allege that the Mthree Defendants fraudulently refused to issue the Mthree stock to him.  *See* Am. Compl. at 10 (including the heading "Defendants' Improper Denial of Mr. Vekaria's Mthree Stock); *id.* ¶¶ 44 (alleging that Defendants' "efforts in denying [Vekaria] his equity are a contrivance in order to avoid known liabilities"), 46 ("Defendants' improper refusal to acknowledge and/or issue the shares does not invalidate [Vekaria's] ownership.").

[3] Vekaria's attempt to align his case with *Dubin*, *see* Pl. Opp. to Wiley & Mthree at 16-17, is unavailing.  There, the plaintiff alleged that the defendant had misrepresented the conditions on which the security, which had been contracted for in an employment agreement, would vest. *Dubin*, 695 F. Supp. at 146.  Emphasizing that the misrepresentation as to the vesting conditions "substantially affected the *value of the security* to its holder," the court held that the alleged misrepresentations "constitute fraud in connection with the sale of a security." *Id.* at 147 (emphasis added).  Vekaria makes no such allegations here.

district court may dismiss claims *sua sponte* for failure to state a claim, at least so long as the plaintiff had notice and an opportunity to be heard on the issue." (alteration in original)).

**C.  State Law Claims**

Having dismissed Vekaria's only federal claim, the Court turns to Vekaria's claims under state law for breach of contract, breach of the implied covenant of good faith and fair dealing, unpaid and deducted wages in violation of the NYLL, fraudulent inducement, negligent misrepresentation, tortious interference with contractual relations, conversion, and declaratory judgment under the New York Civil Practice Law and Rules.  *See generally* Am. Compl.

A district court "may decline to exercise supplemental jurisdiction over [a pendent state law claim] if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).  The statute does not create a "mandatory rule to be applied inflexibly in all cases."  *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  Nevertheless, the Second Circuit has held that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Kelsey v. City of New York*, 306 F. App'x 700, 703 (2d Cir. 2009) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *see also Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) (reversing a district court decision to retain supplemental jurisdiction over state law claims after dismissal of the federal claim, citing "the absence of a clearly articulated federal interest"); *Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 147 (E.D.N.Y. 2015) ("In the interest of comity, the Second Circuit instructs that absent exceptional circumstances, where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should abstain from exercising pendent jurisdiction." (internal quotation marks omitted)).

Here, the case is still in the early stages of litigation, without discovery having yet commenced. *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 453 n.63 (S.D.N.Y. 2007) ("[A]t early stages in the proceedings, . . . little is to be gained by way of judicial economy from retaining jurisdiction."). Further, although federal courts are well equipped to examine common law breach of contract and related claims, comity dictates that these causes of action are predominantly issues of state law and accordingly better suited for resolution in state court. The Court thus concludes that the balance of factors to be considered—judicial economy, convenience, fairness, and comity—point toward declining to exercise supplemental jurisdiction now that the federal claim has been dismissed. Accordingly, Counts One through Six and Eight through Ten are dismissed without prejudice.

**D.     Leave to Amend**

Finally, the Court grants *sua sponte* Vekaria leave to amend his Amended Complaint. *See* Fed. R. Civ. P. 15(a) ("leave to amend shall be freely given when justice so requires."); *Khodeir v. Sayyed*, 323 F.R.D. 193, 197 (S.D.N.Y. 2017) ("[A] court has the discretion to grant leave to amend *sua sponte* even when the amending party has not moved for leave to amend the pleading." (internal quotation marks omitted)). In addition to repleading any of the Amended Complaint's causes of action, including Count Seven, Vekaria may amend his Complaint to show diversity of citizenship, provided that Vekaria has a good faith belief that such diversity in fact exists. With respect to Count Seven, Vekaria is cautioned that he should only replead his claim if he is able to remedy the deficiencies identified herein.

### IV.     Conclusion

For all the reasons given, the Court grants Mthree's, Seymour's, and Chapman's motions to dismiss as to Count Seven, dismisses Count Seven as against Headley and Town *sua sponte*,

and dismisses the Complaint's state law causes of action (Counts One through Six and Eight through Ten). The dismissals are each without prejudice.

If Vekaria chooses to amend his Complaint, he must do so within thirty days of the issuance of this Opinion and Order. Failure to file a Second Amended Complaint within thirty days, and without showing good cause to excuse such failure in advance of that deadline, will result in the dismissal of Count Seven with prejudice. The Clerk of Court is respectfully directed to close the motions pending at Docket Numbers 65, 67, and 69.

SO ORDERED.

Dated: September 30, 2023
      New York, New York

_____
JOHN P. CRONAN
United States District Judge